# Exhibit N

| | |
|---|---|
| **To:** | Blue Mineral Corporation(barry@dartsp.com) |
| **Subject:** | U.S. Trademark Application Serial No. 98209553 - BLUE FIRE SNOW AND ICE MELTER |
| **Sent:** | June 05, 2024 09:21:32 AM EDT |
| **Sent As:** | tmng.notices@uspto.gov |

**Attachments**

5000400

## United States Patent and Trademark Office (USPTO)
### Office Action (Official Letter) About Applicant's Trademark Application

**U.S. Application Serial No.** 98209553

**Mark:** BLUE FIRE SNOW AND ICE MELTER

**Correspondence Address:**
Blue Mineral Corporation
100 Cedarhurst Ave - Suite 203
100 Cedarhurst Ave - Suite 203
Cedarhurst NY 11516
UNITED STATES

**Applicant:** Blue Mineral Corporation

**Reference/Docket No.** N/A

**Correspondence Email Address:** barry@dartsp.com

# NONFINAL OFFICE ACTION

**Response deadline.** File a response to this nonfinal Office action within three months of the "Issue date" below to avoid abandonment of the application. Review the Office action and respond using one of the links to the appropriate electronic forms in the "How to respond" section below.

**Request an extension.** For a fee, applicant may request one three-month extension of the response deadline prior to filing a response. The request must be filed within three months of the "Issue date" below. If the extension request is granted, the USPTO must receive applicant's response to this letter within six months of the "Issue date" to avoid abandonment of the application.

**Issue date:** June 5, 2024

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a),

2.65(a); TMEP §§711, 718.03.

**SUMMARY OF ISSUES:**

- Section 2(d) Refusal: Likelihood of Confusion
- Specimen Required
- Disclaimer Required
- Trademark Counsel Representation Advisory

**SECTION 2(D) REFUSAL: LIKELIHOOD OF CONFUSION**

The applicant applied for the mark "BLUE FIRE SNOW AND ICE MELTER" for use in connection with "chemical preparations for melting snow and ice."

Registration of the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 5000400 ("BLUE HEAT SNOW AND ICE MELTER" for "Chemical preparations for melting snow and ice.") Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the attached registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

### Similarity of the Marks

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *In re Charger Ventures LLC*, 64 F.4th 1375, 1380, 2023 USPQ2d 451, at *3 (Fed. Cir. 2023) (citing *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1720 (Fed. Cir. 2012); *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371-72, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re*

*Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

When comparing marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in terms of their commercial impression such that [consumers] who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Ox Paperboard, LLC*, 2020 USPQ2d 10878, at *4 (TTAB 2020) (citing *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016)); *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018); TMEP §1207.01(b); *see In re St. Helena Hosp.*, 774 F.3d 747, 750-51, 113 USPQ2d 1082, 1085 (Fed. Cir. 2014).

Where the goods and/or services of an applicant and registrant are identical or virtually identical, as is the case here, the degree of similarity between the marks required to support a finding that confusion is likely declines. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(b).

Marks may be confusingly similar in appearance where similar terms or similar parts of terms appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Com.*, 228 USPQ 689, 690-91 (TTAB 1986) (holding COMMCASH and COMMUNICASH confusingly similar), *aff'd sub nom. Canadian Imperial Bank of Com. v. Wells Fargo Bank, N.A.*, 811 F.2d 1490, 1492, 1495, 1 USPQ2d 1813, 1814-15, 1817 (Fed. Cir. 1987); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (holding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (holding MILTRON and MILLTRONICS confusingly similar); *Sun Elec. Corp. v. Sun Oil Co.*, 196 USPQ 450, 452 (TTAB 1977) (holding SUNELECT and SUN ELECTRIC confusingly similar); *In re BASF Aktiengesellschaft*, 189 USPQ 424, 424 (TTAB 1976) (holding LUTEX and LUTEXAL confusingly similar); TMEP §1207.01(b)(ii)-(iii). In this instance, the words "BLUE" and "SNOW AND ICE MELTER" are common to both marks, occurring in the same positions in each.

Furthermore, both marks begin with the wording "BLUE". Consumers are generally more inclined to focus on the first word, prefix, or syllable in any trademark or service mark. *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372, 73 USPQ2d 1689, 1692 (Fed. Cir. 2005) (finding similarity between VEUVE ROYALE and two VEUVE CLICQUOT marks in part because "VEUVE . . . remains a 'prominent feature' as the first word in the mark and the first word to appear on the label"); *Century 21 Real Estate Corp. v. Century Life of Am.*, 970 F.2d 874, 876, 23 USPQ2d 1698, 1700 (Fed Cir. 1992) (finding similarity between CENTURY 21 and CENTURY LIFE OF AMERICA in part because "consumers must first notice th[e] identical lead word"); *see also In re Detroit Athletic Co.*, 903 F.3d 1297, 1303, 128 USPQ2d 1047, 1049 (Fed. Cir. 2018) (finding "the identity of the marks' two initial words is particularly significant because consumers typically notice those words first").

In addition to the above considerations, these marks are confusingly similar because they convey the same commercial impression. Consumer confusion has been held likely even for marks that do not

physically sound or look alike but that convey the same idea, stimulate the same mental reaction, or may have the same overall meaning. *Proctor & Gamble Co. v. Conway*, 419 F.2d 1332, 1336, 164 USPQ 301, 304 (C.C.P.A. 1970) (holding MISTER STAIN likely to be confused with MR. CLEAN on competing cleaning products); *see In re M. Serman & Co.*, 223 USPQ 52, 53 (TTAB 1984) (holding CITY WOMAN for ladies' blouses likely to be confused with CITY GIRL for a variety of female clothing); *H. Sichel Sohne, GmbH v. John Gross & Co.*, 204 USPQ 257, 260-61 (TTAB 1979) (holding BLUE NUN for wines likely to be confused with BLUE CHAPEL for the same goods); *Ralston Purina Co. v. Old Ranchers Canning Co.*, 199 USPQ 125, 128 (TTAB 1978) (holding TUNA O' THE FARM for canned chicken likely to be confused with CHICKEN OF THE SEA for canned tuna); *Downtowner Corp. v. Uptowner Inns, Inc.*, 178 USPQ 105, 109 (TTAB 1973) (holding UPTOWNER for motor inn and restaurant services likely to be confused with DOWNTOWNER for the same services); TMEP §1207.01(b).

In this case, while the marks are not identically the same, they do look and sound alike and have similar meaning. Applicant's mark is BLUE FIRE SNOW AND ICE MELTER and the registered mark is BLUE HEAT SNOW AND ICE MELTER. These marks are identical except for their second words: "FIRE" in the applied-for mark versus "HEAT" in the registered mark. Of course, it is well known that "fire" is a source of "heat", and that heat melts snow and ice. Given their similarity in appearance, sound, and meaning, they are apt to be confused with one another as to source of the goods in question, especially since these goods are identical.

Therefore, and for all of the foregoing reasons, the marks are considered similar for likelihood of confusion purposes.

### Relatedness of the Goods

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

When analyzing an applicant's and registrant's goods and/or services for similarity and relatedness, that determination is based on the description of the goods and/or services in the application and registration at issue, not on extrinsic evidence of actual use. *See Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1323, 110 USPQ2d 1157, 1162 (Fed. Cir. 2014) (quoting *Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990)).

In this case, the goods and/or services in the application and registration(s) are identical. Therefore, it is presumed that the channels of trade and class(es) of purchasers are the same for these goods and/or services. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1372, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)). Thus, applicant's and registrant's goods and/or services are related.

Considering all of the above, the applied-for mark is refused registration under Trademark Act Section 2(d).

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration. However, if applicant responds to the refusal(s), applicant must also respond to the requirement(s) set forth below.

## SPECIMEN REQUIRED

**Specimen not submitted.** Registration is refused because the application does not include the required specimen showing the applied-for mark as actually used in commerce in International Class(es) 1. Trademark Act Sections 1 and 45, 15 U.S.C. §§1051, 1127; 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a), 1301.04(g)(i). An application based on Trademark Act Section 1(a) must include a specimen showing the applied-for mark as actually used in commerce for each international class of goods and/or services identified in the application. 15 U.S.C. §1051(a)(1); 37 C.F.R. §§2.34(a)(1)(iv), 2.56(a); TMEP §§904, 904.07(a).

**Examples of specimens.** Specimens for goods include a photograph of (1) the actual goods bearing the mark; (2) an actual container, packaging, tag or label for the goods bearing the mark; or (3) a point-of-sale display showing the mark directly associated with the goods. *See* 37 C.F.R. §2.56(b)(1), (c); TMEP §904.03(a)-(m). A webpage specimen submitted as a display associated with the goods must show the mark in association with a picture or textual description of the goods and include information necessary for ordering the goods. TMEP §904.03(i); *see* 37 C.F.R. §2.56(b)(1), (c).

Specimens for services must show a direct association between the mark and the services and include: (1) copies of advertising and marketing material, (2) a photograph of business signage or billboards, or (3) materials showing the mark in the sale, rendering, or advertising of the services. *See* 37 C.F.R. §2.56(b)(2), (c); TMEP §1301.04(a), (h)(iv)(C).

Any webpage printout or screenshot submitted as a specimen must include the webpage's URL and the date it was accessed or printed on the specimen itself, within the TEAS form that submits the specimen, or in a verified statement under 37 C.F.R. §2.20 or 28 U.S.C. §1746 in a later-filed response. *See* 37 C.F.R. §2.56(c); TMEP §§904.03(i), 1301.04(a).

**Response options.** Applicant may respond to this refusal by satisfying one of the following for each applicable international class:

> (1)   Submit a verified specimen that (a) was in actual use in commerce at least as early as the filing date of the application and (b) shows the mark in actual use in commerce for the goods and/or services identified in the application. A "verified specimen" is a specimen that is accompanied by the following statement made in a signed affidavit or supported by a declaration under 37 C.F.R. §2.20: "The substitute (or new, or originally submitted, if appropriate) specimen(s) was/were in use in commerce at least as early as the filing date of the application." The specimen cannot be accepted without this statement.

> (2)   Amend the filing basis to intent to use under Section 1(b) (which includes withdrawing an amendment to allege use, if one was filed), as no specimen is required before publication. This option will later necessitate additional fee(s) and filing requirements, including a specimen.

For an overview of the response options referenced above and instructions on how to satisfy these

options using the online Trademark Electronic Application System (TEAS) form, see the Specimen webpage.

**DISCLAIMER REQUIRED**

NOTE: A disclaimer of unregistrable matter does not affect the appearance of the mark; that is, a disclaimer does not physically remove the disclaimed matter from the mark.

Applicant must disclaim the wording "SNOW AND ICE MELTER" because it is merely descriptive of an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods, which are "chemical preparations for melting snow and ice" -- i.e., chemical preparations that act as a "snow and ice melter." *See* 15 U.S.C. §§1052(e)(1), 1056(a); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012); TMEP §§1213, 1213.03(a).

Applicant may respond to this issue by submitting a disclaimer in the following format:

> **No claim is made to the exclusive right to use "SNOW AND ICE MELTER" apart from the mark as shown.**

For an overview of disclaimers and instructions on how to provide one using the Trademark Electronic Application System (TEAS), see the Disclaimer webpage.

**TRADEMARK COUNSEL REPRESENTATION ADVISORY**

Because of the legal technicalities and strict deadlines of the trademark application process, applicant is encouraged to hire a private attorney who specializes in trademark matters to assist in this process. The assigned trademark examining attorney can provide only limited assistance explaining the content of an Office action and the application process. USPTO staff cannot provide legal advice or statements about an applicant's legal rights. TMEP §§705.02, 709.06. See Hiring a U.S.-licensed trademark attorney for more information.

**Trademark Assistance Center Advisory**

The Trademark Assistance Center (TAC) is the main support center for all customers, from first-time filers to legal professionals and experienced trademark applicants. They can answer your questions on a variety of trademark topics.

Contact TAC at **1-800-786-9199 (press 1)** for:

- General information about registering a trademark
- Trademark literature and publications
- Updates on the status of trademark applications and registrations
- Answers to case-specific questions about an application or registration
- Help navigating electronic forms and systems
- Help finding information on our website about the meaning of trademark terms and concepts, how to start the application process, application and registration timelines, and more.

TAC cannot give legal advice. This includes:
- Advising applicants on proper responses to USPTO office actions

- Conducting pre-filing searches for potentially conflicting trademarks
- Analyzing or pre-approving documents before filing
- Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services.

Please call or email the assigned trademark examining attorney with questions about this Office action. Although an examining attorney cannot provide legal advice, the examining attorney can provide additional explanation about the refusal(s) and/or requirement(s) in this Office action. *See* TMEP §§705.02, 709.06.

The USPTO does not accept emails as responses to Office actions; however, emails can be used for informal communications and are included in the application record. *See* 37 C.F.R. §§2.62(c), 2.191; TMEP §§304.01-.02, 709.04-.05.

**RESPONSE GUIDELINES**

For this application to proceed, applicant must explicitly address each refusal and/or requirement in this Office action. For a refusal, applicant may provide written arguments and evidence against the refusal, and may have other response options if specified above. For a requirement, applicant should set forth the changes or statements. Please see the Responding to Office Actions webpage for more information and tips on responding.

**How to respond.** File a **response form to this nonfinal Office action** or file a **request form for an extension of time to file a response**.

/James Prizant/
James Prizant
Examining Attorney
LO128--LAW OFFICE 128
(571) 270-3068
James.Prizant@USPTO.GOV

**RESPONSE GUIDANCE**

- **Missing the deadline for responding to this letter will cause the application to abandon.** A response or extension request must be received by the USPTO before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Trademark Electronic Application System (TEAS)

system availability could affect an applicant's ability to timely respond. For help resolving technical issues with TEAS, email TEAS@uspto.gov.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon**. If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

5000400

# BLUE HEAT SNOW AND ICE MELTER

| | |
|---|---|
| **Word Mark** | BLUE HEAT SNOW AND ICE MELTER |
| **Goods/Services** | IC 001 US 001 005 006 010 026 046<br>Chemical preparations for melting snow and ice. |
| **Register** | SUPPLEMENTAL |
| **Serial Number** | 86834981 |
| **Filing Date** | 2015-12-01T00:00:00 |
| **Original Filing Basis** | 1a |
| **Current Filing Basis** | 1a |
| **Registration Number** | 5000400 |
| **Date Registered** | 2016-07-12 |
| **Owner** | • (REGISTRANT) Dart Seasonal Products Inc (CORPORATION; NEW YORK, USA); 2 Basile Court, Woodmere, NEW YORK 11598, UNITED STATES<br>• (LAST LISTED OWNER) WEATHER BRANDS LLC (LIMITED LIABILITY COMPANY; TEXAS, USA); 134 WEST 29TH STREET, 4TH FLOOR, NEW YORK, NEW YORK 10001, UNITED STATES |
| **Type of Mark** | TRADEMARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Disclaimer** | "SNOW AND ICE MELTER" |
| **Live Dead Indicator** | LIVE |
| **Status** | SECTION 8-ACCEPTED |

**Attorney of Record**        Brian L. Michaelis

**Print:** June 4, 2024 9:28 PM

United States Patent and Trademark Office (USPTO)

# USPTO OFFICIAL NOTICE

Office Action (Official Letter) has issued
on June 5, 2024 for
**U.S. Trademark Application Serial No. 98209553**

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action**.  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response, or extension request, must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response deadline.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

- **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

- **Beware of trademark-related scams**.  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  Verify the correspondence originated from us by using your serial number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

- **Hiring a U.S.-licensed attorney.**  If you do not have an attorney and are not required to

have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.