**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEATHER BRANDS LLC,<br><br>*Plaintiff,*<br><br>ALL SEASON POWER LLC,<br><br>*Plaintiff-Intervenor*,<br><br>v.<br><br>BLUE MINERAL CORPORATION, BARRY WACHSLER and JOHN DOES 1-10,<br><br>*Defendants.* | **Civil Action No. 25-cv-2423-DLC-SLC** |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF WEATHER
BRANDS LLC'S FIRST MOTION FOR DISCOVERY SANCTIONS</u>**

PRACTUS LLP

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff Weather Brands LLC*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.....................................................................................................i

TABLE OF AUTHORITIES .............................................................................................ii

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND............................................... 1

    A.  Identification of the Specific Discovery Requests at Issue Pursuant to
       L. Civ. R. 37.1....................................................................................................... 1

    B.  The May 15 Order and the Discovery Rulings It Incorporates.................................... 3

    C.  Defendants Conceded They Did Not Produce Text Messages by the
       Court-Ordered Deadline....................................................................................... 3

    D.  Defendants Falsely Stated That No Responsive Text Messages Exist........................ 4

    E.  Weather Brands Satisfied All Pre-Motion Requirements ............................................ 6

III.  LEGAL AND PROECURAL STANDARDS........................................................... 6

    A.  Fed. R. Civ. P. 37(b) Sanctions Are Awarded Against a Party That
       Violates a Discovery Order.................................................................................... 6

    B.  Fed. R. Civ. P. 26(g) Sanctions Are Awarded Against Counsel That
       Makes False Statements Concerning Discovery........................................................ 7

IV.  ARGUMENT............................................................................................................ 8

    A.  Sanctions Are Warranted because Defendants Violated the Court's
       Discovery Orders and Made False Statements to the Court. ..................................... 8

    B.  Defendants' Discovery Violations Warrant Significant Sanctions................................ 9

    C.  The Required Sanctions Are Appropriate under the Circumstances. ........................ 11

V.    REQUESTED RELIEF............................................................................................ 15

VI.   CONCLUSION....................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Agiwal v. Mid Island Mortg. Corp.*
  555 F.3d 298 (2d Cir. 2009)..................................................................... 7, 11

*Daval Steel Prods. v. M/V Fakredine*
  951 F.2d 1357 (2d Cir. 1991)................................................................. 12, 14

*e360 Insight, Inc. v. Spamhaus Project*
  658 F.3d 637 (7th Cir. 2011) ...................................................................... 14

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*
  143 F.4th 51 (2d Cir. 2025) ...................................................................... 7, 9

*Icon Int'l, Inc. v. Elevation Health LLC*
  347 F.R.D. 274 (S.D.N.Y. 2024) ............................................................... 12

*J.C. v. Zimmerman*
  150 F.4th 136 (2d Cir. 2025) ............................................................... 11, 14

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union,*
  212 F.R.D. 178 (S.D.N.Y. 2003) ............................................................ 7, 9

*Southern New England Telephone Co. v. Global NAPs Inc.*
  624 F.3d 123 (2d Cir. 2010)....................................................................... 13


**Statutes and Rules**                                                             **Page(s)**

Fed. R. Civ. P. 26............................................................................................ 1

Fed. R. Civ. P. 26(g) ............................................................................... 7, 8, 9

Fed. R. Civ. P. 26(g)(1)................................................................................... 7

Fed. R. Civ. P. 26(g)(3)............................................................................... 7, 9

Fed. R. Civ. P. 34............................................................................................ 1

Fed. R. Civ. P. 37............................................................................................ 1

Fed. R. Civ. P. 37(b) ............................................................................... 6, 7, 11

Fed. R. Civ. P. 37(b)(2)(A) ................................................................................................ 6, 8, 10

Fed. R. Civ. P. 37(b)(2)(C) .......................................................................................... 6, 8, 11, 16

L. Civ. R. 26.3 ................................................................................................................................. 3

L. Civ. R. 37.1 ................................................................................................................................. 1

L. Civ. R. 37.2 ................................................................................................................................. 6

Plaintiff Weather Brands LLC ("Weather Brands") respectfully submits this memorandum of law in support of its First Motion[1] for Discovery Sanctions against Defendants Blue Mineral Corporation ("BMC") and Barry Wachsler (together, "Defendants") under Federal Rules of Civil Procedure 26 and 37.

## I.      INTRODUCTION

During the Court's July 10, 2026 hearing, Weather Brands confirmed for the Court that Defendants have not produced previously ordered text messages. The Court then invited Weather Brands to move for sanctions, noting, "You made a clear request. They were required to be produced. The defendant has chosen a path here." Colvin Decl.,[2] Ex. L at 31:4-6.

Weather Brands therefore brings this motion for discovery sanctions against Defendants for repeatedly disobeying a direct order of the Court by failing to produce highly relevant evidence of Defendants' culpability and the non-applicability of their asserted defenses that should have been discovered from the text messages withheld from production. Defendants' misconduct more than justifies the application of significant sanctions under Fed. R. Civ. P. 26 and 37, and Weather Brands respectfully requests the Court grant the specific relief set forth below.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      Identification of the Specific Discovery Requests and Responses at Issue Pursuant to L. Civ. R. 37.1

Weather Brands propounded several Rule 34 requests for production calling for Defendants' production of documents evidencing communications relevant to the claims and defenses at issue in this litigation. Knowing that Defendant Barry Wachsler conducted business

---

[1] This motion focuses specifically on Defendants' failure to search for and produce Court-ordered text messages, along with Defendants' false statements to the Court regarding those text messages. Due to Defendants' extensive and ongoing discovery failures and misconduct, Weather Brands anticipates filing additional motions for discovery-related sanctions.

[2] "Colvin Decl." refers to the concurrently filed Declaration of Christopher A. Colvin, Esq. in Support of Plaintiff Weather Brands LLC's First Motion for Discovery Sanctions, and exhibits attached thereto.

primarily through text messages, Weather Brands made several requests for production of communications on January 30, including, for example:

> Request for Production No. 21: All communications with third any third party or parties, including without limitation with Blue Mineral LLC, Northrock Minerals LLC, Northrock Management LLC and Moshe Wechsler, relating to the BLUE FIRE Mark and/or FLAKES OF FIRE Mark themselves.

> Request for Production No. 41: All Communications, including but not limited to with merchants, retailers, vendors, and manufacturers, relating to present or past use in the United States of the BLUE FIRE Mark and/or FLAKES OF FIRE Mark with permission or approval of Defendant(s).

> Request for Production No. 128: All Communications and Documents mentioning or referring to, directly or indirectly, Plaintiff and/or its ice melt products and/or its BLUE HEAT Mark and/or it PELLETS OF FIRE Mark, including without limitation all emails, text messages, voice mails, direct messages ("DMs"), social media messages, social media posts, word processing documents (such as Microsoft Word or Google Docs), presentation files (such as Microsoft Powerpoint or Canva files), PDF files and/or spreadsheets (such as Microsoft Excel or Google Sheets).

> Request for Production No. 129: All Communications to or from Moshe Weshsler, relating to the ice melt business, including without limitation all emails, text messages, voice mails, direct messages ("DMs") and social media messages.

> Request for Production No. 130: All Communications to or from any buyer and/or purchasing agent for any customer, reseller and/or retailer (e.g. Home Depot, Lowes, Tractor Supply, Amazon, Woot, New York City government, New York State government), relating to the purchase or potential purchase of Defendants' ice melt products.

Colvin Decl., Exs. M, N, O, P.[3] Defendants initially interposed several objections to those requests but agreed to produce responsive communications. Colvin Decl., ¶¶ 15, 16 & Exs. N, P.

---

[3] As shown in the highlighted exhibits, communications are specifically requested in Requests for Production Nos. 21, 33, 41, 42, 55, 56, 128, 129, 130. *See* Colvin Decl., Exs. M, N, O, P. Furthermore, Weather Brands defined "Document" and "Communications" consistent with Local Civil Rule 26.3, which broadly encompasses text messages and email messages, thus other Requests for Production may be fairly implicated in Defendants' failure to produce text messages required by the Court's Order.

**B.      The May 15 Order and the Discovery Rulings It Incorporates**

The Court's May 15, 2026 Order (the "May 15 Order") states that "defendants shall complete document production, with the exception of emails and texts, by May 19, 2026; defendants' email and text production must be completed by June 5, 2026." Colvin Decl., Ex. A at 1-2. The date range for text message production was between January 1, 2023 and December 31, 2025.  Colvin Decl, ¶ 2.

At the follow-up conference with counsel on May 20, 2026, the Court ordered Defendants to run all twenty keyword terms across their email and text message accounts and produce the results by June 5, 2026 per the earlier-set production schedule. Colvin Decl., ¶ 11 & Ex. J at 18:5-17; *id.*, ¶ 3, Ex. B.

**C.      Defendants Conceded They Did Not Produce Text Messages by the Court-Ordered Deadlines**

Defendants did not produce text messages on June 5, 2026, as ordered.  Colvin Decl, ¶ 2. During the June 11 telephone conference with the Court, Defendants conceded they missed the June 5 deadline and admitted they did not seek an extension of time from the Court or from Plaintiff's counsel beforehand. Colvin Decl., ¶ 12 & Ex. K at 11:16-19. Defendants also asked for and received additional time to produce text messages in compliance with the Order, until June 25, 2026. *Id.*, Ex. K at 12:20-13:9. On the evening of June 25, Defendants produced over 1,100,000 pages of documents, but not a single page of that production was a text message. Colvin Decl., ¶ 12.

Weather Brands informed the Court of Defendants' failure to produce text messages in its June 29, 2026 letter. Colvin Decl., Ex. D at 1-2. In their June 30, 2026 response, Defendants represented that he had "no reason to believe" that responsive text messages exist.  Colvin Decl., ¶ 6 & Ex. E.  Weather Brands alerted the Court to this and other false statements in a July 7, 2026 letter to the Court (the "July 7 Letter"). Colvin Decl., ¶ 7 & Ex. F.   In response, Defendants did

3

not deny they failed to even search Defendants' text messages with keywords. Colvin Decl., ¶ 8 & Ex. G.

> **D.      Defendants Falsely Stated That No Responsive Text Messages Exist**

During the June 11 teleconference, the Court specifically asked counsel for Defendants about their search for text messages:

> THE COURT: . . . So, Mr. Steinmetz, with respect to these emails and texts, have all the searchs (*sic*) been completed?
>
> MR. STEINMETZ:  I believe they were.

Colvin Decl., ¶ 12 & Ex. K at 12:13-15.  In their June 30, 2026 letter to the Court, under the heading "Defendants' Production Is Complete," Defendants asserted they "cannot produce ***responsive*** text messages or emails that it has no reason to believe actually exist."  Colvin Decl., at ¶ 6 & Ex. E (emphasis in original). At the July 10 in-person hearing, Mr. Steinmetz told the Court that he provided his client with clear instructions to produce responsive files, stating: "That's the best as I can do as an attorney, your Honor. I can't look over his shoulder."  Colvin Decl., ¶ 13 & Ex. L at 15:13-14.

In making those representations, however, Defendants apparently failed to consider that individuals affiliated with the co-Plaintiffs in this action are among Defendants Wachsler's text message correspondents. To investigate further, and as Mr. Colvin explained in the July 7 Letter, Weather Brands searched the WhatsApp text message accounts of its managing member (Benjy Goldstein) and Plaintiff-Intervenor All Season Power's CEO (Joe Cohen) for the same 20 keywords that Defendants had been ordered to use in their text message search.  Colvin Decl, ¶ 7 & Ex. F (attached as Exs. B and C therein).  While only a few messages found in that search were

4

communications with Defendant Wachsler, they were significant to this action, as those messages contained *38 hits* from *8 out of the 20* ordered search terms.[4] *Id.*

If Defendants had performed a search of Mr. Wachsler's WhatsApp account, as it represented to the Court had been done, one reasonable conclusion is the messages Weather Brands found had existed in the past and must have been deleted from Mr. Wachsler's account. But given the large number of hits on a small number of text messages, and the knowledge that Mr. Wachsler frequently conducts business by text message with many other people, the more likely conclusion is that Defendants failed to conduct the search at all. Either way, Defendants' failure to produce responsive text messages is sanctionable.

Indeed, in an April 22, 2026 "voice memo" recorded by Defendant Barry Wachsler from his WhatsApp account, and sent to Weather Brands' managing member, Benjy Goldstein, Wachsler admitted that he had WhatsApp text messages on his phone. Defendant Wachsler stated, "if it ever interests you [Mr. Goldstein], to go through my phone with my original text and WhatsApp . . . it's on an older phone which I can download, WhatsApp and show it to you." Colvin Decl., Ex. Q at 2.  In another January 12, 2026 voice memo to Mr. Goldstein, Defendant Wachsler stated "I told you my books and my texts and WhatsApps or whatever it is, are open at

---

[4] The agreed-upon search protocol not only required Defendants to search for Wachsler's text messages, but much more broadly required Defendants to search the text messages of others sent or received by Ilana Lent and any others on behalf of either Defendants, including the following:

> *Search all text messages sent to or received by Barry Wachsler, Ilana Lent or any others on behalf of either Defendant (including without limitation SMS, iMessages, direct messages and/ or private messages), in connection with any mobile phone number(s) used by or on behalf of either Defendant (including without limitation the mobile numbers 845-222-6222 and/or 845-304-0924);*
>
> *Search all other electronic communications tools or applications (such as WhatsApp, FaceBook Messenger, LinkedIn messaging, etc) used by or on behalf of either Defendant (including without limitation the WhatsApp accounts associated with the mobile numbers 845-222-6222 and/or 845-304-0924).*

Colvin Decl., Ex. F.

any time, whenever you want. I'm willing to show." *Id.* at 1.[5]  When it came time to produce those text messages responsive to the 20 court-ordered search terms, however, Defendants failed to produce a single text message, and then falsely stated to the Court that no such text messages exist.

### E.    Weather Brands Satisfied All Pre-Motion Requirements

Weather Brands and Defendants held a two-hour meet-and-confer on June 9, 2026 addressing Defendants' discovery deficiencies, and Weather Brands conferred with defense counsel again thereafter. Colvin Decl, ¶ 4 & Ex. C at 1. Those issues were the subject of extended discussion with the Court across the May 14, May 20, and June 11 conferences, and at the July 10 conference, the Court expressly permitted this motion to proceed based on Defendants' repeated failures to comply with multiple orders issued by the Court. Colvin Decl., ¶ 13 & Ex. L at 31:3-16.  The requirements of Local Civil Rule 37.2 and the Court's Individual Practices are therefore satisfied.

## III.    LEGAL AND PROCEDURAL STANDARDS

### A.    Fed. R. Civ. P. 37(b) Sanctions Are Awarded Against a Party That Violates a Discovery Order.

Rule 37(b)(2)(A) authorizes sanctions where a party fails to obey a discovery order, including orders deeming facts established, striking pleadings, preclusion, and default judgment. Rule 37(b)(2)(C) mandates an award of reasonable expenses, including attorney's fees, unless the failure was substantially justified or other circumstances make an award unjust.

---

[5] If the Court is interested in listening to the actual voice memo recordings, they can be downloaded at the following links (Colvin Decl., ¶¶ 19-20):
https://app.box.com/s/3muc2sb2dlfbol79db9gx8rbn7cvr50q
https://app.box.com/s/ku3c39eia4m8ewwtfx3fllx7uvcjolxa

The Second Circuit has articulated four factors that guide a district court's exercise of discretion in imposing particular Rule 37(b) sanctions: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

### B.      Fed. R. Civ. P. 26(g) Sanctions Are Awarded Against Counsel That Makes False Statements Concerning Discovery.

Rule 26(g)(1) requires every discovery response or objection to be signed by counsel, certifying that, to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry, it is consistent with the Federal Rules, not interposed for an improper purpose, and neither unreasonable nor unduly burdensome or expensive. Rule 26(g)(3) mandates an appropriate sanction on the signer, the party on whose behalf the signer acted, or both, if the certification violates the Rule without substantial justification.

This Court has held that Rule 26(g) applies to false statements in letters and representations to the Court concerning the completeness of discovery, as well as formal discovery responses. Counsel has an affirmative duty to make a reasonable inquiry into the basis of discovery responses, and repeated representations that all responsive documents have been produced, made without an adequate search or reasonable basis, warrant mandatory sanctions. *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219, 224–25 (S.D.N.Y. 2003). The Second Circuit has likewise affirmed Rule 26(g) sanctions against parties and counsel who falsely represented on numerous occasions that all responsive documents had been produced. *See Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 143 F.4th 51 (2d Cir. 2025).

7

## IV.    ARGUMENT

### A.    Sanctions Are Warranted because Defendants Violated the Court's Discovery Orders and Made False Statements to the Court.

Defendants violated two express discovery orders of this Court relating specifically to the text messages. First, Defendants admitted they violated the May 15 Order by failing to complete its email and text production by June 5, 2026. Second, Defendants violated the Court's subsequent Order to produce text messages by June 25, 2026, when no text messages were produced. Both violations warrant sanctions under Rule 37(b)(2)(A). In addition, the Court

> must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C). There is no reasonable justification or other circumstances that would exempt Defendants from sanction because, as the Court has recognized, Defendants have "chosen a path" to not produce the court-ordered text messages despite numerous chances to do so in the two months since the May 15 Order.

Defendants' counsel also violated Rule 26(g) by representing to the Court, without a reasonable factual basis, that Defendants had completed their search and that no responsive text messages existed. When the Court asked on June 11 whether all email and text-message searches had been completed, Mr. Steinmetz responded, "I believe they were." Colvin Decl., ¶ 12 & Ex. K at 12:13–15.

Defendants then asserted in their June 30 letter, under the heading "Defendants' Production Is Complete," that they "cannot produce *responsive* text messages or emails that [they have] no reason to believe actually exist." Colvin Decl., at ¶ 6 & Ex. E (emphasis in original). Those representations were provably false, because when Weather Brands searched the WhatsApp accounts of only two individuals using the same 20 court-ordered search terms, it found communications with Defendant Wachsler containing 38 hits across eight of those terms. Colvin

8

Decl, ¶ 7 & Ex. F (attached as Exs. B and C therein).  More text messages must exist, but they were never searched for, contrary to the representations of counsel.

Defendant Wachsler's recorded WhatsApp voice messages confirm that WhatsApp messages remained available on an older phone and could be downloaded and reviewed. Colvin Decl., Ex. Q at 2. Thus, either Defendants failed to search the account they represented had been searched, or responsive messages were deleted before they could be produced. Under either scenario, counsel lacked a reasonable basis to represent that Defendants' search was complete and that responsive messages did not exist.

Rule 26(g) requires counsel to conduct a reasonable inquiry and does not permit counsel simply to accept a client's unsupported assurances concerning the completeness of discovery. *See Metro. Opera Ass'n,* 212 F.R.D. at 219, 224–25; *Gardner-Alfred*, 143 F.4th at 56. Because those false certifications were made without substantial justification, Rule 26(g)(3) requires the Court to impose an appropriate sanction on counsel, Defendants, or both, including the reasonable expenses and attorney's fees caused by the violation.

**B.      Defendants' Discovery Violations Warrant Significant Sanctions.**

The withheld (or deleted) text messages concern issues at the heart of Plaintiffs' claims and Defendants' defenses. The responsive communications relate to the asserted trademarks, the accused infringing product, marks purportedly covering that product, Defendants' ice-melt business, communications with purchasers of the accused product, and actual or potential customer confusion arising from the similarity of the parties' products. Those subjects bear directly on whether Defendants' product names were likely to cause confusion, whether Defendants made false or misleading statements concerning their goods, whether consumers were deceived, whether Plaintiffs' marks were diluted, and whether Defendants independently developed.

Defendants have placed each of those issues in dispute through their Second, Third, Fourth, Seventh, and Eighth Affirmative Defenses. Defendants' complete failure to produce court-ordered

communications bearing on those very defenses has deprived Plaintiffs of evidence uniquely within Defendants' possession and has prevented Plaintiffs from testing Defendants' factual assertions through discovery.

The Court may prohibit Defendants from supporting designated defenses, preclude them from introducing designated evidence, deem relevant facts established, or strike pleadings in whole or in part. Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii). At a minimum, Defendants should be precluded from relying on undisclosed text messages or testimony concerning communications that should have been identified through the court-ordered search. The Court should also preclude Defendants from offering evidence that their product names and marketing were independently developed, that their conduct was unlikely to cause confusion or deceive consumers, or that no relevant purchaser communications existed. Permitting Defendants to advance those positions after withholding the most probative contemporaneous evidence would reward the discovery violation and leave Plaintiffs to litigate against an evidentiary record shaped entirely by Defendants' noncompliance.

The Court would also be justified in striking Defendants' Second, Third, Fourth, Seventh, and Eighth Affirmative Defenses. Each defense depends substantially on evidence concerning Defendants' intent, product development, marketing representations, customer communications, and knowledge of confusion. These are the same subjects likely to have been addressed in the withheld text messages. Defendants should not be permitted to preserve defenses while withholding evidence necessary to disprove them. Alternatively, the Court may deem established that the unproduced communications would not support Defendants' assertions of independent development, absence of deception, absence of confusion, or absence of dilution, and may instruct the jury that it may infer the withheld communications were unfavorable to Defendants on those issues. These targeted sanctions would restore, as nearly as possible, the evidentiary position

10

Plaintiffs would have occupied had Defendants complied with the Court's orders, while reserving default judgment for continued noncompliance or the discovery of additional misconduct.

Finally, the Court should also award Plaintiffs reasonable expenses and attorneys' fees as required by Rule 37(b)(2)(C). This award should expressly include the costs and fees associated with enforcement of the reasonable discovery requests made leading up to the May 15 Order that Defendants violated twice.

**C.    The Requested Sanctions Are Appropriate under the Circumstances.**

In determining the appropriate sanction under Rule 37(b), courts in the Second Circuit consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal*, 555 F.3d at 302. These factors are nonexclusive, and each need not be resolved against the noncompliant party for sanctions to fall within the Court's discretion. *J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025). Once a party violates a clearly articulated discovery order, the Court may consider the party's entire course of discovery conduct in determining the appropriate sanction. *Id.* Here, the full record and each of the relevant factors support the applied-for sanctions directed to the claims and defenses implicated by Defendants' withholding of the court-ordered text messages.

**1.    Defendants' Noncompliance Was Willful.**

This was not an isolated oversight or a brief delay. Defendants failed to meet the Court's original June 5 deadline without seeking an extension from the Court or Weather Brands. After admitting that violation, Defendants received another opportunity to comply by June 25. On that date, Defendants produced more than 1.1 million pages of documents, but not a single text message. Colvin Decl., ¶ 12. Defendants then represented that their searches had been completed and that they had no reason to believe responsive text messages existed. Those representations are contradicted by Weather Brands' search of only two WhatsApp accounts, which located

11

communications with Defendant Wachsler containing 38 hits across eight of the twenty court-ordered search terms. Colvin Decl, ¶ 7 & Ex. F (attached as Exs. B and C therein). Defendants' representations are further contradicted by Wachsler's recorded statements that his original text and WhatsApp messages remained on an older phone, could be downloaded, and were available for Plaintiff's review. Colvin Decl., Ex. Q at 2.

The record therefore supports the conclusion that Defendants either failed to perform the court-ordered search or failed to produce responsive messages identified by that search. Either explanation reflects willful noncompliance, or at least the culpable indifference to discovery obligations that the Second Circuit has found sufficient to warrant sanctions. *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (holding that the repeated failure to produce documents was evidence of "a willful frustration of [plaintiffs'] efforts to discover the true facts").

For more than two months, the Parties and the Court have endured far too many letters, conferences, and hearings that, all of which have collectively failed to convince Defendants to perform as ordered by the Court and as required by the Federal Rules. *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 288 (S.D.N.Y. 2024) (noting that willfulness is "typically inferred from the violation of multiple court orders" and that "a persistent refusal to comply with discovery orders is by itself sufficient evidence of willfulness and bad faith") (internal quotations and citations omitted). And tellingly, even hearing the Court's warning about sanctions one week ago at the July 10 hearing, Defendants *still* have not produced any text messages. Colvin Decl., ¶ 12. The record at bar firmly establishes Defendants' willful non-compliance.

### 2. Lesser Measures Have Already Proven Ineffective.

After Defendants violated June 5 deadline to comply with the May 15 Order, the Court extended the time for compliance until June 25. That enlargement of time did not produce a single text message. Another instruction to perform the same search would merely give Defendants yet another opportunity to comply with obligations that were clearly established months ago, while

permitting them to retain the benefit of their noncompliance. Nor would an award of expenses alone restore the text-message evidence that Weather Brands had hoped to use to challenge Defendants' positions about the selection and development of the accused product names, their marketing representations to customers, business communications with purchasers, and evidence of actual or anticipated customer confusion. *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010) (stating that "district courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record").

If a businessperson is known to conduct their business primarily by text message, then Defendants' failure to produce text messages deprives Weather Brands of the best evidence available to support its claims of infringement and to refute Defendants' defenses. On that point, Sanctions precluding Defendants from supporting those positions, deeming related facts established, and striking the Second, Third, Fourth, Seventh, and Eighth Affirmative Defenses are appropriately tailored to the subjects of the withheld discovery. Those sanctions are, in fact, less severe than default, correspond directly to the evidence Defendants withheld, and ensure that Defendants do not benefit from violating the Court's Orders.

### 3. Defendants' Noncompliance Has Persisted for More Than Two Months, and Document Discovery Closes in Less than Six Weeks.

Weather Brands served its requests for communications on January 30, 2026. The Court then entered its May 15 Order requiring completion of Defendants' text-message production by June 5 and, on May 20, specifically directed Defendants to run the twenty agreed search terms across their email and text-message accounts. Defendants missed the June 5 deadline and then failed to comply with the extended June 25 deadline. As of the July 10 hearing, 35 days after the original deadline and 15 days after the extended deadline, Defendants still had not produced a single text message. Defendants' noncompliance thus persisted through two court-ordered

13

deadlines, several conferences, multiple rounds of letters, and repeated written notices identifying the same specific deficiency. This continuing failure cannot reasonably be characterized as a minor or technical delay. *Zimmerman*, 150 F.4th at 147 (recognizing that duration is not measured by the calendar alone, and a court may "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit") (quoting *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011)).

### 4.    The Court Has Warned Defendants of the Consequences of Continued Noncompliance.

Defendants were amply, and multiply, warned of the likely consequences of their continued discovery failures and blatant misrepresentations to the Court. The monthslong discovery disputes did not arise inadvertently or fortuitously: it was the culmination of multiple meet and confer sessions, multiple letter motions to compel, multiple discovery conferences before the Court, and express, on-the-record rulings defining precisely what Defendants were required to produce and by when.

The record shows that Defendants indisputably understood their obligations and the stakes of ignoring them and nonetheless proceeded with their numerous violations and material misrepresentations concerning the text messages and other discovery deficiencies. That Defendants nonetheless represented to the Court on June 30 that their production was "complete" knowing that no text messages were produced confirms Defendants' deliberate choice to continue to violate an order of the Court. In any event, formal warnings are not a condition precedent to serious sanctions, as parties "have no absolute entitlement to be 'warned' that they disobey court orders at their peril." *Daval Steel*, 951 F.2d at 1366.

14

## V.     **REQUESTED RELIEF**

In light of Defendants' significant and willful misconduct around their non-production (or destruction) of relevant, responsive and court-ordered text messages, Weather Brands respectfully requests that the Court enter an order granting some or all of the following relief:

1.     Striking Defendants' affirmative defenses including, at a minimum, the Second Affirmative Defense (purported lack of confusion between parties' respective marks), Third Affirmative Defense (Defendants' purported lack of any false, misleading or deceptive statements about their goods), Fourth Affirmative Defense (purported lack of customer confusion), Seventh Affirmative Defense (Defendants' purported lack of conduct likely to dilute distinctive quality of Plaintiff's trademarks) and Eights Affirmative Defense (Defendants' purported independent development of their marks);

2.     Precluding Defendants from making arguments, and from introducing evidence (at trial or in pre-trial motions), about any of the following: (a) a purported lack of actual confusion or customer confusion, (b) a purported lack of false, misleading or deceptive statements by Defendants, (c) a purported lack of conduct likely to dilute Plaintiff's trademarks, and (d) a purported independent development of Defendants' marks;

3.     Instructing the trier of fact that it may presume that text messages withheld (or destroyed) by Defendants are unfavorable to Defendants, including without limitation by finding that the withheld text messages were likely to contain substantial evidence that support Plaintiff's claims and refute Defendants' defenses, including evidence of: actual confusion, false, misleading or deceptive statements by Defendants, conduct likely to dilute Plaintiff's trademarks, copying by Defendants of Plaintiff's trademarks, and a failure by Defendants to independently develop their marks;

15

4.    Awarding Weather Brands its reasonable expenses, including attorneys' fees, under Rule 37(b)(2)(C), incurred in bringing and arguing its multiple letter motions to compel as well as the instant motion for sanctions; and

5.    Granting such further relief as the Court deems just and proper.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Weather Brands respectfully requests that the Court grant its motion for sanctions and enter the accompanying proposed order and such further relief as the Court deems just and proper.

Dated:  New York, New York
        July 17, 2026

Respectfully submitted,

PRACTUS LLP

_____ */s/ Christopher A. Colvin* _____
Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff Weather Brands LLC*

16

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum complies with the applicable word limit. Excluding the caption, signature block, and this certificate, this memorandum contains approximately 5,323 words, as counted by the word-processing software used to prepare it, which does not exceed the 8,750-word limit for a memorandum in support of a motion.

*/s/ Christopher A. Colvin*
Christopher A. Colvin
