IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WEATHER BRANDS LLC,**<br>**and ALL SEASON POWER LLC,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**BLUE MINERAL CORPORATION,**<br>**BARRY WACHSLER and JOHN DOES 1-**<br>**10**,<br><br>Defendants. | **Civil Action No. 25-cv-2423-DLC**<br><br>**DEMAND FOR JURY TRIAL** |

### SECOND AMENDED COMPLAINT*

Plaintiffs Weather Brands LLC (hereinafter, including the prior owners of the trademarks, trade dress and other legal rights asserted herein, collectively referred to as "Weather Brands" or "WB" or "Plaintiff") and its licensee All Season Power LLC (hereinafter referred to as "All Season Power" or "ASP" and, together with Weather Brands, "Plaintiffs"), by and through their undersigned counsel, Practus LLP, hereby assert their Second Amended Complaint against Defendants Blue Mineral Corporation ("BMC"), Barry Wachsler, and John Does 1-10 (individually and collectively, "Defendants"), and hereby allege as follows:

### NATURE OF THE ACTION

1.      This case arises out of Defendants' unauthorized use and infringement of multiple federally-registered and common law trademarks and trade dress owned by Weather Brands, and currently licensed by All Seasons Power, in violation of both federal and state law.  Plaintiffs' present claims for infringement of Weather Brands' federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under

---

* On May 11, 2026, the Court granted leave for the filing of this Second Amended Complaint (*see* Dkt. 84).

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), for trade dress infringement under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), and for substantial and related claims of trademark infringement, dilution and unfair competition under the statutory and common laws of the State of New York, arise from the Defendants' unauthorized use of Plaintiffs' trademarks and trade dress in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendants' so-called "**BLUE FIRE**" and "**FLAKES OF FIRE**" lines of snow and ice melt products.[1]

2.      For approximately twenty (20) years, millions of packages of snow melt products have been manufactured, promoted and sold, bearing Weather Brands' valuable "**BLUE HEAT"** and/or "**PELLETS OF FIRE"** and related trademarks, which are protected by statute, common law and/or trademark registrations at the Federal and state level.

3.      Consumers throughout the U.S. recognize Plaintiff Weather Brands' **BLUE HEAT** and **PELLETS OF FIRE** trademarks and know Plaintiffs' products as genuine, high-quality goods available for purchase throughout the U.S., both in retail stores and in numerous online marketplaces—including many large and well-known national retailers such as Home Depot, Lowes, Tractor Supply, Amazon and Woot.

4.      As further detailed herein, Defendants' "**BLUE FIRE**" and "**FLAKES OF FIRE"** designations, which they use in commerce in the United States, in the State of New York and within this judicial district, in connection with their "copycat" lines of snow melt products, are confusingly similar to Weather Brands' **BLUE HEAT** and **PELLETS OF FIRE** trademarks and related trademarks and trade dress, and Defendants' commercial use of those designations and similar designations to promote and sell snow melt products causes harm to Plaintiffs, including in the State

---

[1] Herein, "snow melt" and "ice melt" are used interchangeably to refer to commercial products comprising chemical compounds used to melt snow and/or ice.

of New York and within this judicial district.

5.    Among other relief, through this action, Weather Brands seeks damages, an order compelling the disgorgement of profits obtained by Defendants through their infringement and other misconduct, and entry of injunctive relief to prevent further misconduct by Defendants.  Weather Brands also seeks an order directing the U.S. Patent and Trademark Office (the "PTO") to cancel Defendants' registered trademarks, if any, and to not grant and to mandate abandonment of any pending trademark applications filed by Defendants.

6.    Plaintiffs bring this action so as to protect the value and substantial goodwill that has been developed in Weather Brands' trademarks and trade dress, to stop Defendants' current infringement of Weather Brands' trademarks and trade dress and to prevent further infringement, and to recoup the damages caused by Defendants' misconduct.

## THE PARTIES AND RELATED COMPANIES

7.    Plaintiff Weather Brands LLC is a Texas limited liability company with business operations and activities throughout the United States, and a business office within this judicial district, located at 134 W. 29th Street, New York, NY 10001.

8.    Weather Brands is the owner of registered, well-known, valid and subsisting trademarks used in connection with the marketing and sales of the **BLUE HEAT** and **PELLETS OF FIRE** branded snow melt products sold to consumers throughout the United States and around the world.

9.    Weather Brands' famous trademarks include, but are not limited to, the **BLUE HEAT** and **PELLETS OF FIRE** registered trademarks, which are used in connection with certain of Plaintiffs' snow melt products and which are sold throughout the United States, in the State of New York and in this judicial district.

10.       Plaintiff All Season Power LLC is a Texas limited liability company with its principal business address at 794 School House Road, New Castle, Delaware 19720.

11.       Weather Brands and All Season Power entered into a written License Agreement effective as of February 6 2024 (the "License Agreement"), pursuant to which Weather Brands, as owner of the relevant trademarks and other intellectual property, granted All Season Power an exclusive license to use the **WB Asserted Trademarks** in the Territory (as defined in the License Agreement) and a non-exclusive license to use certain patents, in each case in connection with the manufacture, production, distribution, marketing, and sale of licensed products. The license remains in effect.

12.       Under the License Agreement, All Season Power has rights and obligations tied to the commercial exploitation of the licensed products and brand, and it has suffered and continues to suffer its own recoverable damages from Defendants' infringing conduct alleged herein, including but not limited to lost sales and lost profits on its licensed product business, injury to customer and retailer relationships, disruption of distribution channels, and harm to the goodwill associated with the licensed products in the marketplace.

13.       To the extent proper, All Season Power joins in the claims for relief asserted herein and seeks recovery of its own damages and other relief arising from the conduct alleged in this Complaint.

14.       On information and belief, Defendant Blue Mineral Corporation ("Blue Mineral" or "BMC") is a New Jersey corporation headquartered in New York.

15.       On information and belief, BMC is controlled by and is an alter ego of Defendant Barry Wachsler.

16.       On information and belief, Defendant Barry Wachsler is an individual with an address at 100 Cedarhurst Ave, Suite 203, Cedarhurst, New York 11516.  As recited in more detail below, on information and belief, Defendant Wachsler is the owner of a controlling interest in Defendant BMC.

17.    As recited in more detail below, on information and belief, Defendant Wachsler was the Owner and Chief Executive Officer of Dart Seasonal Products, Inc. ("Dart"), which previously owned Plaintiffs' **BLUE HEAT** and **PELLETS OF FIRE** trademarks.

18.    As recited in more detail below, on information and belief, in or around December 2020, Northrock Minerals LLC ("Northrock") acquired the assets of Dart, including the **BLUE HEAT** and **PELLETS OF FIRE** trademarks.

19.    Following the sale of Dart's assets, Defendant Wachsler served as the Vice President and Director of Sales for Northrock.

20.    On information and belief, through his prior ownership of and work for Dart and his work for Northrock, Defendant Wachsler had intimate knowledge of Weather Brands' trademarks, as well as long-term relationships with the wholesale purchasers of the **BLUE HEAT** and **PELLETS OF FIRE** ice melt products.  On information and belief, it was Defendant Wachsler's knowledge and those relationships that enabled Wachsler and his company, Defendant BMC, to infringe upon the **Asserted WB Trademarks** and to intentionally and tortiously misappropriate customers for Plaintiffs' ice melt products.

21.    On information and belief, Defendants have business operations targeting customers throughout the United States, including in the State of New York and within this judicial district.

**JURISDICTION AND VENUE**

22.    This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.  As set forth in 15 U.S.C. § 1121, for example, "[t]he district and territorial courts of the United States shall have original jurisdiction ... of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the

parties."

23.    This Court also has pendent jurisdiction over all remaining claims in accordance with 28 U.S.C. § 1367, as they arise out of the same set of underlying factual allegations.

24.    This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have directed marketing and sales efforts into the State of New York and, in particular, into this judicial district.

25.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and/or 1400(a) because Defendants have committed acts of infringement within, and do business within, this judicial district.

## **GENERAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

**A.    Plaintiffs' Ice Melt Brands and Relevant Trademarks**

26.    For many years, industry-leading snow melt products bearing the **BLUE HEAT** and/or **PELLETS OF FIRE** trademarks and trade dress have been manufactured, promoted and sold in the United States.  Plaintiffs' ice melt products bearing these marks continue to be sold throughout the United States, in the State of New York, and in this judicial district.

27.    In connection with its ice melt business, Plaintiff Weather Brands owns multiple federally-registered trademarks (individually and collectively, the "**WB Registered Trademarks**"), as well as trademarks protected by New York statute and common law (all of the foregoing, individually and collectively, the "**WB Asserted Trademarks**"), including without limitation: (i) its United States federal trademark registration for the word mark BLUE HEAT SNOW AND ICE MELTER, U.S. Reg. No. 5,000,400 (the "'400 Registration" or the "**BLUE HEAT** Registration") and (ii) its United States federal trademark registration for the word mark **PELLETS OF FIRE**, U.S. Reg. No. 5,580,215 (the "'215 Registration" or the "**PELLETS OF FIRE** Registration").

28.     Plaintiff Weather Brands' **BLUE HEAT** Registration is directed to a standard character mark that was registered with the United States Patent and Trademark Office on July 12, 2016.  The **BLUE HEAT** Registration (which includes a disclaimer of "SNOW AND ICE MELTER" under Section 6 of the Trademark Act), was issued in International Class 001 for "Chemical preparations for melting snow and ice", and states that the trademark registered therein was first used in commerce at least as early as October 2, 2005.  A true and accurate copy of Plaintiff Weather Brands' **BLUE HEAT** Registration is attached hereto as **Exhibit A**.  Application Serial No. 86/834981 (the '981 Application"), which led to the issuance of the **BLUE HEAT** Registration, is attached hereto as **Exhibit B**.

29.     Notwithstanding the fact that the **BLUE HEAT** Registration was issued on the Supplemental Register, it is protected under Section 23 of the Trademark Act, 15 U.S.C. §1091 and based on Plaintiffs' long use of the mark in commerce, may ultimately be registered on the Principal Register at a later time.

30.     Plaintiffs' **BLUE HEAT** trademark, owned by Plaintiff Weather Brands, is properly considered to be suggestive (and thus distinctive), notwithstanding its registration on the Supplemental Register.  **BLUE HEAT** is a suggestive mark, because it combines two terms, BLUE and HEAT, which would be considered incongruous by the average consumer.  "BLUE" implies cold, which stands in contrast to the connotation of the word "HEAT," which states the opposite. That incongruity causes a consumer to consider the mark more closely, as it does not directly convey information about the nature of the goods.  *See* TMEP §1209.01(a) ("Incongruity is a strong indication that a mark is suggestive rather than merely descriptive").

31.     Plaintiffs' **BLUE HEAT** trademark was considered suggestive, and thus inherently distinctive, by the USPTO in prior Application Serial No. 77/365517 (the '517 Application") filed

7

by Plaintiff Weather Brands' predecessor-in-interest Dart) which issued as Registration No. 3,605,010 (the "'010 Registration") in 2009.  The '010 Registration is attached hereto as **Exhibit C**. The '517 Application is attached hereto as **Exhibit D**.

32.    Even if the **BLUE HEAT** trademark were not considered suggestive (and thus inherently distinctive) at the time of filing of the '981 Application (which matured into the **BLUE HEAT** Registration), the **BLUE HEAT** trademark is nonetheless protectable.  The registration of the **BLUE HEAT** trademark on the Supplemental Register did not constitute an admission by Plaintiffs that the mark has not acquired distinctiveness.  *See* TMEP §815.03.  Based on decades of extensive use of the **BLUE HEAT** trademark by Plaintiff and its predecessors-in-interest, the **BLUE HEAT** trademark has indeed acquired distinctiveness.

33.    Notably, Defendant Barry Wachsler was an officer of Dart at the time of the '517 Application, and ***personally*** (not through an attorney) signed the Declaration submitted in support of that application on January 1, 2008.  Wachsler submitted that Declaration under penalty of perjury, asserting a date of first use of the **BLUE HEAT** trademark at least as early as October 2, 2005, and asserting that Dart owned the trademark at the time of filing and had the right to exclude all others: "The signatory believes that to the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce."  *See* **Exh. D**, at 5.

34.    Additionally, Wachsler filed for registration of the **BLUE HEAT** trademark on the ***Principal Register***, under Section 1(a) of the Lanham Act.  By so doing, Defendant Wachsler provided a sworn declaration to the PTO that the **BLUE HEAT** trademark was inherently distinctive (or, at a minimum, had acquired distinctiveness as of the filing date of January 1, 2008) and therefore was entitled to registration on the ***Principal Register***.  Accordingly, Defendants cannot now plausibly

assert, contrary to Wachsler's sworn declaration, that the **BLUE HEAT** trademark—applied to the same goods at issue in this action (ice melt products)—has no distinctiveness, inherent or otherwise. In fact, over seventeen (17) ***additional years*** of continuous use of the **BLUE HEAT** trademark in commerce has occurred, since the date of Wachsler's sworn declaration, which continuous use has significantly further increased the distinctiveness of the trademark from the perspective of customers in the market for ice melt products.

35.    The PTO accepted the **BLUE HEAT** trademark for registration on the ***Principal Register***.  *See* **Exh. C**., at 2.  In the sole Office Action issued on April 15, 2008, attached hereto as **Exhibit E**, the PTO did not dispute the distinctiveness of the **BLUE HEAT** trademark—and did not request any proof of acquired distinctiveness nor did the applicant submit any such proof—strongly implying that the PTO accepted the trademark as ***inherently*** distinctive.  *See* **Exh. E**, at 2-4.  The positions taken by both the PTO and Defendant Wachsler during the prosecution of the '517 Application (i.e., that the **BLUE HEAT** trademark is distinctive and, most likely, inherently distinctive), and is entirely consistent with and supportive of the allegations in Paragraph 26, above.

36.    The distinctiveness of the **BLUE HEAT** trademark has further developed over time, based on the sales success and long period of exclusivity of the associated products in the marketplace.  Plaintiff and its predecessors have used this mark consistently and exclusively for nearly twenty (20) years (as alleged above, Defendant Wachsler swore to a date of first use at least as early as October 2, 2005), and the product associated with the mark was among the top selling products in this category in the U.S., sold through well-known retailers such as Home Depot, Lowes, Tractor Supply, Amazon and Woot.  Plaintiffs' **BLUE HEAT** ice melt line has grown to achieve millions of dollars in annual sales each year, further enhancing the distinctiveness of the **BLUE HEAT** trademark within the market for ice melt products.

37.     The inherent (or at a minimum acquired) distinctiveness of the **BLUE HEAT** trademark was established many years prior to the attempted adoption of the designation "**BLUE FIRE"** by Defendants.  Defendant Wachsler submitted a sworn declaration in the application leading to the '010 Registration (under his own signature) and presumably authorized Dart's submission of a declaration in the application that led to the '400 Registration (via Dart's attorney), both swearing to a date of first use at least as early as October 2, 2005. *See* **Exh. B**; **Exh. D**.  Accordingly, Plaintiffs' **BLUE HEAT** trademark had approximately eighteen (18) years (i.e. between October 2005 and October 2023) to develop distinctiveness, before Defendants even began their sales efforts with respect to the **BLUE FIRE** designation.

38.     After eighteen (18) years of continuous and exclusive use of the **BLUE HEAT** trademark by Plaintiff and its predecessors—supported by the sworn statements and declaration of Defendant Barry Wachsler and others acting under Wachsler's direction (*i.e.*, Dart and its attorney)— it is clear that the **BLUE HEAT** trademark has priority over Defendants' **BLUE FIRE** designation. As recited in greater detail below, the marks are confusingly similar, as evidenced by the USPTO's Office Action in Application Serial No. 98/209,553 (*see* **Exh. X**), holding that Defendants' **BLUE FIRE** designation could not be registered, because it was likely to be confused with Plaintiffs' **BLUE HEAT** trademark.  Under a standard likelihood-of-confusion analysis, the marks are sufficiently similar in their appearance (two four-letter words with an identical first word BLUE) and connotation (as discussed in paragraph 26 above), such that confusion is likely.

39.     After 18 years of encountering Plaintiffs' snow melt products in national retailers and websites, consumers came to know **BLUE HEAT** as a distinctive and notable trademark for this specific snow melt product and to purchase it for their home,  business and government needs.  This long-term, consistent use of the **BLUE HEAT** trademark caused consumers to recognize it as such.

10

40.	Plaintiffs' **PELLETS OF FIRE** Registration is directed to a standard character mark that was registered on the Principal Register with the United States Patent and Trademark Office on October 9, 2018.  The **PELLETS OF FIRE** Registration was issued in International Class 001 for "Chemical preparations for melting snow and ice", and states that the trademark registered therein was first used in commerce at least as early as December 1, 2009.  A true and accurate copy of Plaintiffs' **PELLETS OF FIRE** Registration is attached hereto as **Exhibit F**.

41.	The PELLETS OF FIRE Registration is protectable under Section §33 of the Lanham Act (15 U.S.C. § 1115).  The PELLETS OF FIRE registration provides *prima facie* evidence of the validity of the mark and, the registration of the mark, Plaintiff Weather Brands' ownership of the mark, and of its exclusive right to use the registered mark in commerce.

42.	The **WB Asserted Trademarks** have been used continuously, in connection with Plaintiffs' highly successful lines of snow melt products, since at least as early as December 2009 and, in the case of the **BLUE HEAT** trademark, since at least as early as October 2005.  Plaintiff Weather Brands and its predecessors-in-interest were the first to use the **BLUE HEAT** trademark in commerce, and it has been in continuous use in commerce for that entire period up to the present day. That use has been continuous and commercially appropriate for cold-weather products, and has not been sporadic, casual or transitory.

43.	Through extensive advertising, marketing, promotional and sales efforts, a significant amount of goodwill and consumer recognition has been generated in Plaintiffs' **WB Asserted Trademarks** throughout the United States.

44.	The established and continuous use of the **BLUE HEAT** and **PELLETS OF FIRE** branded ice melt products, over a period of many years up to and including the present day, and bearing Weather Brands' **WB Asserted Trademarks,** has been successful and extraordinary.  These

branded products have been among the top-selling ice melt products in the United States for many years, achieving millions of dollars in U.S. sales annually.

**B.** **The Ownership History of the WB Asserted Trademarks; Defendants' Intimate Knowledge of the Trademarks and the Customers for the Trademarked Products**

45. On April 4, 2009, the '010 Registration issued to Dart, a company then owned and controlled by Defendant Wachsler, based on the '981 Application *personally filed* by Wachsler and supported by a sworn declaration *personally signed* by Wachsler. *See* **Exh C**; **Exh. D**.

46. On July 12, 2016, the **BLUE HEAT** Registration issued to Dart, a company owned and controlled by Defendant Wachsler. *See* **Exh. A**.

47. On October 9, 2018, the **PELLETS OF FIRE** Registration issued to Dart. *See* **Exh. F**. The address listed for Dart on the **PELLETS OF FIRE** Registration is the same as the current address for Defendant Wachsler: 100 Cedarhurst Ave, Suite 203, Cedarhurst, New York 11516. *See* **Exh. F** at 2 and ¶ 12, above.

48. On information and belief, Defendant Wachsler served as both Owner and Executive Officer of Dart. For example, Defendant Wachsler's LinkedIn profile, attached hereto as **Exhibit G**, identifies him as the "Owner" of Dart. *See* **Exh. G**, at 2. A January 10, 2018 Form D filing with the U.S. Securities and Exchange Commission, attached hereto as **Exhibit H**, identifies Wachsler as the "CEO" and the "Executive Officer" of Dart. *See* **Exh. H**, at 3, 7. The address for Dart listed on the SEC Form D filing is the same as the address for Defendant Wachsler: 100 Cedarhurst Ave, Suite 203, Cedarhurst, New York 11516. *See* **Exh. H** at 2-3 and ¶ 12, above.

49. Defendant Wachsler is also identified as the responsible party for Dart in connection with New York State government contracts. For example, in a "Contact Award Notification" issued on October 13, 2020 by the New York State Office of General Services, attached hereto as **Exhibit**

**I**, Wachsler is identified as the "Vice President" and "Emergency" contact for Dart, and the email address "barry@dartsp.com" and phone number "845-222-6222" are provided for him. *See* **Exh. I**, at 6. In a "Contract Award Notification Update" issued by that same Office on February 6, 2020, attached hereto as **Exhibit J**, Wachsler is identified as the "Person(s) To Contact For Placing New York State Contract Orders and for General Vendor Information" and the email address barry@dartsp.com, telephone number "516-569-7669" and mobile phone number "845-222-6222" are provided for him. *See* **Exh. J**, at 5. The address listed on these publications for Dart is the same as that for Defendant Wachsler: 100 Cedarhurst Ave, Suite 203, Cedarhurst, New York 11516. *See* **Exh. I** at 6; **Exh. J** at 7; and ¶ 12, above.

50.    A collection of pages from Dart's www.dartsp.com website from 2020 is attached hereto as **Exhibit K**. At the top of each page of the website, Defendant Wachsler's telephone number ("516.569.SNOW (7669)") is provided, and on the "Contact Us" page of the Dart website, that telephone number and Wachsler's email address ("Barry@dartsp.com") are provided as Dart's "Customer Support" contact information. *See* **Exh. K**, at 8. The address listed on Dart website is the same as that for Defendant Wachsler: 100 Cedarhurst Ave, Suite 203, Cedarhurst, New York 11516. *See* **Exh. K** at 8 and ¶ 12, above.

51.    On information and belief, in or around December 2020, Northrock Minerals LLC ("Northrock") acquired the assets of Dart, including the **BLUE HEAT** and **PELLETS OF FIRE** trademarks.

52.    On December 28, 2020, Dart assigned the **BLUE HEAT** trademark to Northrock, the company which Defendant Wachsler served as Vice President and Director of Sales. That assignment (the "12/28/20 BLUE HEAT Assignment"), as recorded in the records of the PTO, is attached hereto as **Exhibit L**. The 12/28/20 BLUE HEAT Assignment was signed by Defendant

13

Wachsler, who identified himself as the "Vice President" of the assignor Dart.  *See* **Exh. L**, at 3.

53.      Also on December 28, 2020, Dart assigned the **PELLETS OF FIRE** trademark to Northrock.  That assignment (the "12/28/20 PELLETS OF FIRE Assignment"), as recorded in the records of the PTO, is attached hereto as **Exhibit M**.  The 12/28/20 PELLETS OF FIRE Assignment was signed by Defendant Wachsler, who identified himself as the "Vice President" of the assignor Dart (a former owner of Weather Brands' trademarks).  *See* **Exh. M**, at 4.  The "correspondence" address listed for Dart on the 12/28/20 PELLETS OF FIRE Assignment is the same as that for Defendant Wachsler: 100 Cedarhurst Ave, Suite 203, Cedarhurst, New York 11516.  *See* **Exh. M** at 4 and ¶ 12, above.

54.      On information and belief, after the 12/28/20 **BLUE HEAT** Assignment and the 12/28/20 **PELLETS OF FIRE** Assignment, Defendant Wachsler served as Vice President and Director of Sales for the assignee Northrock.  For example, Defendant Wachsler is identified as the Vice President of Northrock on a (Revised) Contact Award Notification issued on November 15, 2021 by the New York State Office of General Services, with a contact phone number "845-222-6222" and an email address "barry@northrm.com".  *See* attached **Exhibit N**, at 8.  Defendant is identified with the same title and contact information in a Contract Award Notification Update issued by that same Office on November 15, 2021.  *See* attached **Exhibit O**, at 2.

55.      A collection of pages from Northrock's www.northrockmineral.com website from 2021 is attached hereto as **Exhibit P**.  Under the "Talk or Meet with Us" heading on Northrock's website, Defendant Wachsler's telephone number ("516.569.SNOW (7669)") is provided under the "Call Us" subheading.  *See* **Exh. P**, at 4.

56.      As discussed in greater detail below, the prior ownership by both Northrock ( of which Defendant Wachsler served as Vice President and Director of Sales) and Dart (which Wachsler

14

owned and served as Chief Executive Officer) of the *very same trademark registrations* at issue in this action, and which are now owned by Plaintiff, strongly supports a finding that Defendants' infringement is knowing and willful.

57.     As such, Defendant Barry Wachsler was intimately involved in two different companies that previously owned the trademarks at issue in this case:  Dart, which Wachsler owned and served as Chief Executive; and Northrock, which Wachsler served as Vice President and Director of Sales.

58.     In light of Defendant Wachsler's intimate involvement with the history of the **WB Asserted Trademarks** and with the marketing and sale of the ice melt products associated with those trademarks, there is no doubt that Defendants' infringement of those trademarks was and is knowing, willful and intentional.

59.     On August 24, 2022, Northrock assigned both the **BLUE HEAT** trademark and the **PELLETS OF FIRE** trademark to Snow Joe LLC.  The assignment conveying those trademarks is attached hereto as **Exhibit Q**.

60.      Plaintiff acquired the **WB Asserted Trademarks** (including both the **BLUE HEAT** trademark and the **PELLETS OF FIRE** trademark) by assignment from Snow Joe LLC on or about February 6, 2024, and Plaintiff has owned the **WB Asserted Trademarks** since that date. A copy of that trademark assignment (the "WB Trademark Assignment") is attached hereto as **Exhibit R**.  The WB Trademark Assignment was recorded in the United States Patent and Trademark Office at Reel 8411 Frame 0363.

61.     On or after February 6, 2024 Weather Brands and All Season Power entered into a written License Agreement  (the "License Agreement"), pursuant to which Weather Brands, as owner of the relevant trademarks and other intellectual property, granted All Season Power an exclusive

license to use the Trademarks in the Territory (as defined in the License Agreement) and a non-exclusive license to use certain patents, in each case in connection with the manufacture, production, distribution, marketing, and sale of licensed products. The license remains in effect.

## C.    Plaintiffs' Discovery of Defendants' Infringement

62.    In the course of conducting its ice melt business, Plaintiff Weather Brands discovered that a company calling itself "Blue Mineral" had been selling snow melt products to Home Depot and other of Plaintiffs' customers, bearing designations that are confusingly similar to the **WB Asserted Trademarks**. Defendants' infringing products are still currently available at numerous stores and online platforms. For example, attached hereto as **Exhibit S** are results of an online search of the homedepot.com website for "snow melt," in which both Plaintiffs' and Defendants' snow melt products appear prominently. *See* **Exh. S** at 4, 6.[2] On information and belief, Defendant Wachsler personally drove Defendants' concerted and intentional attempts to sell infringing products to Home Depot and other customers of Plaintiff.

63.    A review of the various snow melt products shown in **Exhibit S** illustrates the great variety of trade dress that is used on *other* producers' ice melt products and, by contrast, the great similarity of Defendants' trade dress to Plaintiffs' trade dress. *Id.* This similarity both demonstrates a heightened likelihood of confusion between Defendants' and Plaintiffs' trademarks and strongly suggests that Defendants were acting willfully by choosing a trade dress so similar to Plaintiffs' trade dress, given the many other trade dress options available to producers of ice melt products.

64.    As shown in **Exhibit T**, attached hereto, a potential customer who searches Home Depot's website for "blue heat" in an attempt to purchase *Plaintiffs'* product is presented not only

---

[2] References to pages within exhibits are to the PDF page number for each exhibit as a whole and not, for example, to numbered pages for a document within an exhibit.

with Plaintiffs' **BLUE HEAT** product, but also *Defendants'* copycat **BLUE FIRE** product. The parties' respective products are displayed, side-by-side, in the first page of search results, are priced identically, to the penny, at $17.97 per bag and even bear the *identical* product number "BH50". The "BH50" product number is a clear reference to a **B**lue **H**eat **50** pound bag of snow melt, and it is significant that Defendants did not even change the price or change the product number of their copycat ice melt product to "BF50" (for "Blue Fire"). *See* **Exhibit T**. These circumstances create an even higher likelihood of confusion between Defendants' and Plaintiffs' snow melt products which, almost inevitably, has resulted in sales that were intended for Plaintiff, being diverted to Defendants' infringing products.

65.    Upon information and belief, the "Blue Mineral" entity that Plaintiff discovered was selling snow melt products at Home Depot stores was, and is, in fact, Defendants acting in concert to infringe the **WB Asserted Trademarks**.

66.    A search of New Jersey's online corporate records database[3] for "Blue Mineral" identifies Defendant Blue Mineral Corporation as a New Jersey Corporation located in Spotswood, NJ with an Entity ID of 0450413049. A copy of those online records is attached hereto as **Exhibit U**.

67.    A search of the United States Patent and Trademark Office's ("PTO's") online trademark database[4] for "Blue Mineral" identifies a trademark application, Serial No. 97/602519, now abandoned, for the infringing "FLAKES OF FIRE" mark filed by Defendant Barry Wachsler on behalf of Defendant Blue Mineral Corporation (the New Jersey entity). A copy of that USPTO record is attached hereto as **Exhibit V**.

---

[3] *See* https://www.njportal.com/DOR/BusinessNameSearch/

[4] *See* https://tmsearch.uspto.gov/search/search-information

68.     A further search of the PTO's online trademark database for an owner with a business name including "Blue Mineral" identifies a trademark application, Serial No. 98/209553, now abandoned, for the infringing "BLUE FIRE SNOW AND ICE MELTER" mark, filed by Defendant Barry Wachsler on behalf of Defendant Blue Mineral Corporation.  A copy of that USPTO record is attached hereto as **Exhibit W**.

69.     As discussed in greater detail below, such (ultimately abandoned and unsuccessful) attempts by Defendants to secure federal trademark registrations for marks confusingly similar to the **WB Asserted Trademarks** demonstrate that Defendants' infringing conduct was knowing and willful, and also demonstrates the highly personal and intimate involvement of individual defendant Barry Wachsler in the misconduct by Defendants that gave rise to Plaintiffs' claims herein.

70.     As recited below, Defendants have been selling, and continue to sell, ice melt products to Home Depot and other retailers using product names, including without limitation the **BLUE FIRE** and **FLAKES OF FIRE** marks (the "**Infringing Marks**"), which are confusingly similar to Plaintiffs' **WB Asserted Trademarks**.

**D.     Defendants' Ongoing Infringement and Their Unsuccessful Attempts to Procure PTO Registrations for the Infringing and Confusingly Similar Marks**

71.     Upon information and belief, beginning at least as early as October 2023, Defendants began actively commercializing ice melt products which infringed, and continue to infringe, the **WB Asserted Trademarks**.

72.     A side-by-side comparison of the parties' respective ice melt products demonstrates that the trade dress chosen by Defendants for their "copycat" snow melt products creates an even greater likelihood of confusion among relevant consumers than the—already high—likelihood of

confusion caused by the nearly identical names:

**PLAINTIFFS' "BLUE HEAT"
SNOW MELT PACKAGING**

**DEFENDANTS' "BLUE FIRE"
SNOW MELT PACKAGING**





**PLAINTIFFS' "PELLETS OF FIRE"
SNOW MELT PACKAGING**

**DEFENDANTS' "FLAKES OF FIRE"
SNOW MELT PACKAGING**





73.    With regard to Defendants' **FLAKES OF FIRE** product, the "copycat" nature of the product is made glaringly obvious by numerous uncanny similarities in the packaging shown above including, but not limited to: (a) a virtually identical package layout, down to such details as nearly identical thermometers showing the temperature as negative 25 degrees and a graphic of burning pellets/flakes; (b) a virtually identical black, orange, yellow, red and light blue color scheme; (c) virtually identical fonts and font sizes; (d) text bubbles at the same package locations, with identical declarations, including  "Generates Heat Upon Contact!", "Accelerated Melting Power!", "Use Less, Melt More!" and "Snow & Ice Melter!"; and (e) identical package weights of "50 lb. (22.6 kg)".

74.    Similarly, Defendants' **BLUE FIRE** product includes identical, or virtually identical, elements as Plaintiffs' **BLUE HEAT** packaging, including without limitation: (a) identical thermometers showing the temperature as negative 25 degrees; (b) text bubbles at the same package locations declaring identically "Superior Melting Power" "Environmentally Responsible"; and (c) identical package weights of "50 lb. (22.6 kg)".

75.    Despite the obvious copycat nature of Defendants' **BLUE FIRE** designation on its snow melt product, Defendants attempted (without success), to secure their own U.S. trademark registration for the infringing product's name.

76.    On October 4, 2023, Defendant Blue Mineral Corporation filed U.S. Trademark Application No. 98/209,553 (the "'553 Application" or the "**BLUE FIRE** Application") a trademark application purportedly on behalf of a New York Corporation "Blue Mineral Corporation" for the mark "BLUE FIRE SNOW AND ICE MELTER".  *See* **Exhibit W**.  The **BLUE FIRE** Application was *personally signed* (not through an attorney) on October 4, 2023 by Defendant Barry Wachsler, who identifies himself as the "Owner" of Defendant Blue Mineral Corporation and provides his email address as barry@dartsp.com (the email address associated with Wachsler's former ice melt

company, Dart).  *See* **Exh. W**, at 3, 5.

6.      In the '553 Application, Defendants represented that the BLUE FIRE trademark was first used in commerce "at least as early as 10/01/2023".  *See* **Exh. W,** at 4.

77.      The only difference between the names of Plaintiffs' and Defendants' products is Defendants' replacement of the word "HEAT" with the word "FIRE."    Indeed, the names are so similar that, on June 5, 2024, the United States Patent and Trademark Office ("PTO") issued a Nonfinal Office Action denying registration under Section 2(d) of the Lanham Act of Defendants' **BLUE FIRE** Application, because of the likelihood of confusion with Weather Brands' **BLUE HEAT** registered trademark.  A copy of that Office Action is attached hereto as **Exhibit X**.

78.      That Office Action was emailed directly to Defendant Wachsler on behalf of Defendant Blue Mineral Corporation (using the email address Wachsler had provided to the PTO, barry@dartsp.com, which was associated with Wachsler's former ice melt company, Dart).  *See* **Exh. X**, at 2.  The Office Action attached Weather Brands' **BLUE HEAT** Registration and specifically identified Plaintiff Weather Brands LLC as the "Last Listed Owner" of the **BLUE HEAT** Registration.  *See* **Exh. X**, at 10.

79.      The PTO's conclusion that there is a likelihood of confusion between the Parties' respective marks is supported by the PTO's detailed and cogent analysis.  For example, the PTO office action states, in relevant part:

> *Registration of the applied-for mark ["BLUE HEAT SNOW AND ICE MELTER"] is refused because of a likelihood of confusion with the mark in U.S. Registration No. 5000400 ("BLUE HEAT SNOW AND ICE MELTER" for "Chemical preparations for melting snow and ice.") Trademark Act Section 2(d), 15 U.S.C. §1052(d); see TMEP §§1207.01 et seq. See the attached registration.*

> *\* \* \**

> *In addition to the above considerations, these marks are confusingly*

21

*similar because they convey the same commercial impression.*

\* \* \*

*In this case, while the marks are not identically the same, they do look and sound alike and have similar meaning. Applicant's mark is BLUE FIRE SNOW AND ICE MELTER and the registered mark is BLUE HEAT SNOW AND ICE MELTER. These marks are identical except for their second words: "FIRE" in the applied-for mark versus "HEAT" in the registered mark. Of course, it is well known that "fire" is a source of "heat", and that heat melts snow and ice. Given their similarity in appearance, sound, and meaning, they are apt to be confused with one another as to source of the goods in question, especially since these goods are identical.*

*Therefore, and for all of the foregoing reasons, the marks are considered similar for likelihood of confusion purposes.*

*See* **Exh. X**, at 3-5.

80.     Despite the PTO's express recommendation that Defendants employ trademark counsel for the application, Defendant Wachsler made the decision to ***personally*** represent Defendants in the **BLUE FIRE** Application.  *See* **Exh. X**, at 7 ("Because of the legal technicalities and strict deadlines of the trademark application process, applicant is encouraged to hire a private attorney who specializes in trademark matters to assist in this process.").

81.     Considering Blue Mineral Corporation's receipt in June 2024 of the PTO's determination of a likelihood of confusion between Defendants' **BLUE FIRE** proposed mark and Weather Brands' **BLUE HEAT** Registered Trademark—and Defendant Wachsler's direct and personal involvement in the failed trademark prosecution process—Defendants' infringement of Weather Brands' **BLUE HEAT** Registered Trademark was and is, almost certainly, knowing and willful.  Defendants were directly and personally informed by the sole federal agency charged with registering trademarks that their applied-for trademark was likely to be confused with Weather Brands' registered trademark, and that Defendants could not lawfully obtain a registration for their infringing **BLUE FIRE** mark.

22

82.     Indeed, after Defendants received that Office Action from the PTO, they did not make any attempt to overcome the PTO's strong showing of a likelihood of confusion. Instead, they abandoned the '553 Application. A copy of the January 13, 2025 Notice of Abandonment of the '553 Application is attached hereto as **Exhibit Y**. As with the PTO's Office Action (**Exh. N**), the Notice of Abandonment was emailed directly to Defendant Wachsler, using the email address (barry@dartsp.com) that he had provided to the PTO. *See* **Exh. Y**, at 2.

83.     Similarly, as discussed above, on September 22, 2022, Defendant Blue Mineral Corporation filed U.S. Trademark Application No. 97/602,519 (the "'519 Application" or the "**FLAKES OF FIRE** Application") a trademark application purportedly on behalf of a New York Corporation "Blue Mineral Corporation" for the mark "FLAKES OF FIRE". *See* **Exh. V**. The **FLAKES OF FIRE** Application was *personally signed* on September 22, 2022 by Defendant Wachsler, who identifies himself as the "Owner" of Defendant Blue Mineral Corporation and provides his email address as "BARRY@DARTSP.COM" (the email address associated with Wachsler's former ice melt company, Dart). *See* **Exh. V**, at 3, 5.

84.     Just as Defendants abandoned their **BLUE FIRE** Application, they also abandoned their **FLAKES OF FIRE** Application. A copy of the October 25, 2023 Notice of Abandonment of the **FLAKES OF FIRE** Application is attached hereto as **Exhibit Z**.

85.     Defendants' improper use of marks which are identical or nearly identical to Weather Brands' **WB Asserted Trademarks**, as well as packaging which is visually very similar, is highly likely both to generate confusion among potential customers for Plaintiffs' ice melt products, and to cause severe harm to Plaintiffs' reputation and the value of the **WB Asserted Trademarks**, as well as the value of Plaintiffs' distinctive trade dress, as Plaintiffs' products are likely to become mistakenly associated with Defendants' inferior products. Moreover, the copycat products are of

unknown and potentially inferior quality, which could well tarnish Plaintiffs' efforts to market and sell quality snow melt products, by causing consumers to inadvertently purchase Defendants' inferior products which would damage sidewalks and driveways where it is applied.

86.    There are numerous bases on which to find that Defendants' infringement is willful, including without limitation: their prior ownership of the **WB Registered Trademarks**; and their unsuccessful attempts to register the **BLUE FIRE** and **FLAKES OF FIRE** marks, which the PTO rejected due to the likelihood of confusion with the **WB Registered Trademark**.  As such, on information and belief, Defendants' ongoing use of the **WB Asserted Trademarks**—including Weather Brands' registered Federal **BLUE HEAT** and **PELLETS OF FIRE** trademarks—is knowing and willful.

## COUNT I: VIOLATION OF 15 U.S.C. § 1114 – INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS
### (Weather Brands Against All Defendants)

87.    Plaintiff Weather Brands hereby realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

88.    Defendants' continued usage of the **Infringing Marks** in commerce in connection with the offering for sale of ice melt products is likely to cause, and has in fact caused confusion, mistake, or deception.

89.    Defendants have and are continuing to make, use, sell and offer for sale products bearing the **Infringing Marks**, which infringe the **WB Registered Trademarks** and are intended to be used in commerce, and are used in commerce, in connection with the offering for sale of goods in a way that is likely to cause confusion, mistake, or deception.

90.    Defendants do not have permission to use the **Infringing Marks**.

91.    The actions alleged in this Complaint were committed with knowledge that such use

of the **Infringing Marks** by Defendants does, and was intended to cause confusion, to cause mistake, or to deceive.

92.    Defendants' use of the **Infringing Marks** is willful.

93.    As a result of the unlawful conduct of Defendants, including the use of the **Infringing Marks**, Plaintiff has been damaged, has suffered irreparable harm, and is likely to continue to suffer irreparable harm unless Defendants' actions are enjoined by this Court.

94.    With regard to Defendant Wachsler, he was clearly the moving, active, conscious force behind Defendants' infringing activity,[5] as exemplified by the allegations above, including without limitation allegations regarding the following personal conduct and involvement by Wachsler in Defendants' infringement and in the events leading up to that infringement:

   a.    Wachsler was the Owner and Chief Executive Officer of Dart, the former owner of the **WB Asserted Trademarks** and, as such, had intimate knowledge of the trademarks now owned by Plaintiff, and the customers now served by Plaintiff (*see infra*, at ¶¶ 41-49);

   b.    Wachsler was named as the responsible party for Dart's ice melt contracts with the New York State government (*see infra*, at ¶ 45);

   c.    Wachsler was named as the customer contact on Dart's website (*see infra*, at ¶ 46 );

   d.    Wachsler personally executed the assignment of the **BLUE HEAT** Trademark and the **PELLETS OF FIRE** Trademark from Dart to Northrock (*see infra*, at ¶¶ 48-49);

   e.    Wachsler was the Vice President and Director of Sales for Northrock, another previous owner of the **WB Asserted Trademarks** (*see infra*, at ¶¶ 50-53);

   f.    Wachsler was named as the responsible party for Northrock's ice melt contracts with the New York State government (*see infra*, at ¶ 50);

---

[5] *See Int'l Diamond Importers v. Oriental Gemco*, 64 F.Supp.3d 494, 515 (S.D.N.Y. 2014) ("It is well-established in the Second Circuit that 'under the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active[,] conscious force behind [the defendant corporation's] infringement.' A showing that an officer 'authorized and approved the acts of unfair competition which are the basis of [the] ... corporation's liability ... is sufficient participation in the wrongful acts to make [the officer] individually liable.'"). *See also Canon U.S.A. v. F & E Trading LLC*, 2017 WL 112515, *4 (E.D.N.Y. 2017) (rejecting individual defendant's "contention that [Plaintiff] needs to pierce [the corporate defendant's] corporate veil in order to hold [individual defendant] liable for the alleged Lanham Act misconduct….").

g.  Wachsler's *personal* phone number was provided on Northrock's website for customer inquiries regarding ice melt products (*see infra*, at ¶ 51);

h.  On information and belief, Wachsler *personally* drove Defendants' efforts to sell infringing ice melt products to Home Depot and other of Plaintiffs' customers (*see infra*, at ¶ 57); and

i.  Despite the PTO's recommendation that Defendants hire trademark counsel, Wachsler instead chose to *personally* handle Defendants' (ultimately unsuccessful) efforts to secure from the PTO registrations for the infringing **BLUE FIRE** and **FLAKES OF FIRE** designations, efforts that Wachsler and BMC abandoned after the PTO rejected Defendants' trademark applications, in light of the PTO's compelling findings that there was a likelihood of confusion between Defendants' infringing marks and Weather Brands' **WB Asserted Trademarks** (*see infra*, at ¶¶ 70-80).

95.  Plaintiff Weather Brands is entitled to, among other relief, injunctive relief and both Plaintiffs are entitled to an award of their actual damages (or in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(c)), Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

## COUNT II: VIOLATION OF 15 U.S.C. § 1125(a) – FALSE DESIGNATION OF ORIGIN AND FALSE OR MISLEADING DESCRIPTION OF FACT
### (Against All Defendants)

96.  Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

97.  Defendants' actions as set forth in this Complaint and Defendants' unlawful use of the **Infringing Marks**, individually and in combination, violate 15 U.S.C. § 1125(a).

98.  Defendants have used and are continuing to use the **Infringing Marks** without approval and in a manner that is likely to cause confusion.

99.  Defendants used and are continuing to use the **Infringing Marks** without Plaintiff Weather Brands' approval and in a manner that is deceptive as to the affiliation, connection, or association of Defendants with Plaintiff.

100.    Defendants' unauthorized use in commerce of the **Infringing Marks** as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

101.    Defendants used and are continuing to use words, terms, and names which are likely to confuse or deceive individuals into believing that the goods Defendants are selling come from Plaintiffs, or that Plaintiffs sponsor or approve of the goods.

102.    Upon information and belief, Defendants' conduct is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Plaintiffs with Defendants.

103.    As a result of Defendants' conduct, Plaintiffs have incurred losses to their business and to the value of their marks, lost sales, loss of goodwill, and other losses for which Plaintiffs are entitled to money damages pursuant to 15 U.S.C. § 1125.

104.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of their actual damages, Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

## COUNT III:  INFRINGEMENT OF TRADE DRESS UNDER 15 U.S.C. § 1125(a)(1)
### (Against All Defendants)

105.    Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

106.    Plaintiff owns the distinctive presentation of specific design elements, as described in detail above, including without limitation in Paragraphs 58 and 67-70 of this Complaint of this Complaint, shown on the packaging of Plaintiffs' snow melt products, as trade dress.

107.    The packaging of Plaintiffs' snow melt products is distinctive, as described in detail

above, including without limitation in Paragraphs 58 and 67-70 of this Complaint, because it displays a unique visual presentation of strong graphic elements (none of which are functional) that helps consumers to recognize Plaintiffs' products on a retailer's shelves.

108.    That trade dress, that is, the packaging of Defendants' snow melt products, is nearly identical to the packaging of Plaintiffs' snow melt products without the consent of the Plaintiffs in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the parties' respective goods.

109.    Defendants' actions are intentional and willful, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiffs, which have no adequate remedy at law.

110.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of their actual damages, Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

### COUNT IV: TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW
**(Against All Defendants)**

111.    Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

112.    Through their actions described above, Defendants have engaged in trademark infringement in violation of the common law of the State of New York.

113.    As a result of Defendants' illegal conduct, Plaintiffs have been damaged, have suffered irreparable harm, and are likely to continue to suffer irreparable harm unless Defendants' actions are enjoined by this Court.

114.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of their actual damages, Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

## COUNT V: TRADEMARK DILUTION UNDER
## N.Y. GEN. BUS. LAW § 360-L
### (Against All Defendants)

115.    Plaintiffs hereby reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

116.    Plaintiffs possess strong marks, the **WB Asserted Trademarks**, some or all of which have a distinctive quality and/or have acquired a secondary meaning such that the trade names **BLUE HEAT** and **PELLETS OF FIRE** have become so associated in the public's mind with Plaintiff that those trademarks identify goods sold by Plaintiff, as distinguished from goods sold by others.

117.    As a result of Defendants' misconduct, there is a likelihood of dilution by blurring and/or tarnishment of some or all of Plaintiffs' **WB Asserted Trademarks**.

118.    Defendants used the **Infringing Marks** to promote their own ice melt products, including the "**BLUE FIRE**" and "**FLAKES OF FIRE**" ice melt products, and to obtain revenue through the use of the substantially similar and/or confusing "**BLUE FIRE**" and "**FLAKES OF FIRE**" marks.

119.    By their conduct, Defendants denigrate and demean the quality of Plaintiffs' products with which the **WB Asserted Trademarks** are associated, confuse consumers, and divert consumers from their intended purchase of Plaintiffs' products.

120.    Through their use of the **Infringing Marks**, Defendants have improperly created and continue to create a false impression regarding the quality and source of the products associated with the **WB Asserted Trademarks** by using a substantially similar and/or confusing name to identify goods within the market for ice melt products.  This false impression is likely to cause dilution of the strong goodwill that Plaintiffs have built in the **WB Asserted Trademarks**, in violation of New York

29

law.

121.    Defendants' actions have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiffs' famous **WB Asserted Trademarks**.

122.    Defendants' actions are intentional and willful, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiffs, which ha no adequate remedy at law.

123.    Through their actions described above, Defendants have violated N.Y. Gen. Bus. Law § 360-L (Injury to business reputation; dilution).

124.    As a result of Defendants' illegal conduct, Plaintiffs have been damaged, have suffered irreparable harm, and are likely to continue to suffer irreparable harm unless Defendants' actions are enjoined by this Court.

125.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of their actual damages, Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

## COUNT VI: UNFAIR COMPETITION UNDER
## NEW YORK COMMON LAW
### (Against All Defendants)

126.    Plaintiffs  hereby reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

127.    Through their actions described above, Defendants have engaged in unfair competition in violation of the common law of the State of New York.

128.    As a result of Defendants' illegal conduct, Plaintiffs haves been damaged, haves suffered irreparable harm, and areis likely to continue to suffer irreparable harm unless Defendants' actions are enjoined by this Court.

129.     Plaintiffs are isentitled to, among other relief, injunctive relief and an award of their actual damages, Defendants' profits, enhanced damages and profits, costs, and attorneys' fees.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court:

A.     Enter judgment against Defendants finding:

    i.     Defendants have engaged in willful and intentional trademark infringement in violation of 15 U.S.C. § 1114;

    ii.    Defendants have engaged in willful and intentional acts of false designation of origin and false or misleading description of fact in violation of 15 U.S.C. § 1125;

    iii.   Defendants have engaged in willful and intentional infringement of Plaintiffs' trade dress in violation of §15 U.S.C. § 1125(a)(1);

    iv.    Defendants have engaged in willful and intentional acts of trademark dilution in violation of N.Y. Gen. Bus. Law § 360-L;

    v.     Defendants have engaged in willful and intentional trademark infringement and unfair competition in violation of New York common law;

B.     Issue preliminary and permanent injunctions prohibiting Defendants and each of their agents, servants, employees, attorneys, and any other persons who are in active concert or participation with Defendants from:

    i.     Infringing upon Plaintiffs's **WB Asserted Trademarks**, by using the identical mark or any variation thereof;

    ii.    Engaging in further actions to interfere with Plaintiffs' rights in its their **WB Asserted Trademarks**;

    iii.   Infringing upon Plaintiffs's trade dress;

iv.    Continuing to sell and offer for sale the infringing "**BLUE FIRE**" and "**FLAKES OF FIRE**" products; and

v.    Continuing to sell and offer for sale products using trade dress that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the parties' respective goods.

C.    Order Defendants to disclose any manufacturer(s) and other partner(s) involved in the production, distribution, or marketing of the infringing "**BLUE FIRE**" and "**FLAKES OF FIRE**" products;

D.    Require Defendants to account for their profits;

E.    Award Plaintiffs their its actual damages, or in the alternative, statutory damages pursuant to 15 U.S.C. §1117(c) and (d);

F.    Award Plaintiffs the costs associated with bringing this action;

G.    Award Plaintiffs interest and reasonable attorneys' fees;

H.    Order the U.S. Patent and Trademark Office to (i) cancel all trademark registrations procured by Defendants; and (ii) to not grant and to abandon all pending trademark applications filed by Defendants, for any marks confusingly similar to Weather Brands' registered and unregistered trademarks, including without limitation U.S. Trademark Registration Nos. 5,000,400 and 5,580,215; and

I.    Award Plaintiffs such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Weather Brands LLC

and All Season Power LLC hereby demand a trial by jury for all issues so triable in this case.


Dated:  July 24 , 2026                          Respectfully submitted,

                                                **PRACTUS LLP**


                                                By: ___/s/ Christopher A. Colvin___

                                                Christopher A. Colvin, Partner
                                                543 E. 17th Street
                                                Brooklyn, NY  11226
                                                Phone:  (917) 722-8601
                                                Email:  chris.colvin@practus.com
                                                Diane B. Melnick, Partner
                                                Email:  diane.melnick@practus.com

                                                *Attorneys for Plaintiff Weather Brands LLC*


                                                By: ___/s/ Matthew McFarlane___
                                                Matthew McFarlane, Partner
                                                1014 W 36 St., Ste. 103
                                                Baltimore, MD 21211
                                                (410) 657-8633 Tel.
                                                Email: matthew.mcfarlane@practus.com

                                                *Attorney for Plaintiff All Season Power
                                                LLC*