**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

WEATHER BRANDS LLC,

        *Plaintiff,*

ALL SEASON POWER LLC,

        *Intervenor,*

      v.

BLUE MINERAL CORPORATION, BARRY
WACHSLER and JOHN DOES 1-10,

        *Defendants.*

**Civil Action No. 25-cv-2423-DLC-SLC**

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF WEATHER BRANDS LLC'S SECOND MOTION FOR DISCOVERY SANCTIONS

PRACTUS LLP

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff Weather Brands LLC*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES …............................................................................................ ii

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ..................................................................................................... 1

    A. Identification of the Specific Discovery Requests and Responses at Issue Pursuant to L. Civ. R. 37.1 ....................................................................................................... 3

    B. The May 15 Order and the Discovery Rulings It Incorporates ............................................ 4

    C. Timeline:  A Disturbing Monthslong Saga of Withholding Discovery, Violating Court Orders, Knowing Dishonesty and Spoliation ....................................................................... 4

III.   GOVERNING LEGAL STANDARDS ................................................................. 13

    A. Rule 37(b) Sanctions Are Awarded Against Parties Who Violate Discovery Orders ...... 13

    B. Rule 26(g) and 37(c)(1) Sanctions Are Awarded Against Parties Who Make False Statements in Discovery ............................................................................................. 13

    C. Sanctions Are Awarded Against Parties Who Dispose of Relevant Physical Evidence, Including Accused Infringing Products ............................................................................ 14

IV.    ARGUMENT .......................................................................................................... 16

    A. The Most Significant Available Sanctions Are Warranted Under Rules 37 and 26 and the Inherent Power of the Court ........................................................................................ 16

        1. Rule 37 Sanctions are Needed to Address Defendants' Willful Violations of the Court's Discovery Rulings ..................................................................................... 16

        2. Rule 26 and 37 Sanctions are Warranted by Defendants' False Statements to the Court and in Their Interrogatory Responses ........................................................... 16

        3. Sanctions are Warranted under the Inherent Power of the Court For Defendants' Knowing Spoliation of Physical Evidence ............................................................. 18

    B. Defendants' Extensive and Serious Misconduct Warrants the Strictest Available Sanctions, Including Entry of Default Judgment ................................................................. 20

        1. Entry of Default Judgment is Warranted, Followed by a Damages Inquest Applying Appropriate Presumptions and Exclusions .................................................. 20

        2. Award of Attorney Fees and Costs for Discovery and Sanctions Motions .................. 23

        3. Defendants' Motion to Amend Answer Should be Held in Abeyance ........................ 23

V.     CONCLUSION ....................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Agiwal v. Mid Island Mortg. Corp.*
    555 F.3d 298 (2d Cir. 2009) .......................................................................................... 13, 16

*In re Anderson*
    641 B.R. 1 (Bankr. S.D.N.Y. 2022) ................................................................................20-21

*Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*
    655 F. Supp. 2d 177 (E.D.N.Y. 2009) ................................................................................ 21

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*
    602 F.2d 1062 (2d Cir. 1979) ............................................................................................ 21

*Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*
    143 F.4th 51 (2d Cir. 2025) .............................................................................................. 18

*Guggenheim Cap., LLC v. Birnbaum*
    722 F.3d 444 (2d Cir. 2013) .............................................................................................. 21

*Hoffer v. Tellone*
    128 F.4th 433 (2d Cir. 2025) ............................................................................................ 15

*J.C. v. Zimmerman*
    150 F.4th 136 (2d Cir. 2025) ............................................................................................ 14

*Jianjun Chen v. 2425 Broadway Chao Rest., LLC*
    331 F.R.D. 568 (S.D.N.Y. 2019) ...................................................................................17-18

*Karsch v. Blink Health Ltd.*
    2019 WL 2708125 (S.D.N.Y. June 20, 2019) ................................................................... 18

*Kronisch v. United States*
    150 F.3d 112 (2d Cir. 1998) .............................................................................................. 14

*Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*
    212 F.R.D. 178 (S.D.N.Y. 2003) .................................................................14, 17-18, 20-21

*Oakley v. MSG Networks, Inc.*
    792 F.Supp.3d 394 (S.D.N.Y 2025) ................................................................................. 15

*Residential Funding Corp. v. DeGeorge Financial Corp.*
  306 F.3d 99 (2d Cir. 2002) ...................................................................15-16, 18-19

*R.F.M.A.S., Inc. v. So*
  271 F.R.D. 13 (S.D.N.Y. 2010) ................................................................15-16, 19

*Sara Lee Corp. v. Bags of New York, Inc.*
  36 F. Supp. 2d 161 (S.D.N.Y. 1999) ................................................................. 17

*Southern New England Telephone Co. v. Global NAPs Inc.*
  624 F.3d 123 (2d Cir. 2010)............................................................................ 20, 21

*Travel Sentry, Inc. v. Tropp*
  2008 WL 2097613 (E.D.N.Y. May 15, 2008) ................................................... 18

*West v. Goodyear Tire & Rubber Co.*
  167 F.3d 776 (2d Cir. 1999) ............................................................................. 15

*Zubulake v. UBS Warburg LLC*
  220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................. 14-15

## Statutes and Rules                                                     Page(s)

Trademark Modernization Act of 2020
  15 U.S.C. § 1116(a) ......................................................................................... 22

Fed. R. Civ. P. 26................................................................................... 1, 16-18

Fed. R. Civ. P. 33........................................................................................... 3

Fed. R. Civ. P. 34........................................................................................... 3

Fed. R. Civ. P. 37.................................................................... 1, 13-16, 18, 20, 23

L. Civ. R. 37.1................................................................................................ 3

Plaintiff Weather Brands LLC ("Weather Brands") respectfully submits this memorandum of law in support of its second motion for discovery sanctions against Defendants Blue Mineral Corporation ("BMC") and Barry Wachsler (together, "Defendants") under Federal Rules of Civil Procedure 26 and 37 and the Court's inherent authority. This motion addresses Defendants' significant misconduct in connection with discovery into its accused BLUE FIRE product.[1]

## I.    <u>INTRODUCTION</u>

Defendants have engaged in a lengthy and egregious pattern of discovery abuse that strikes at the heart of the claims and defenses in this action, including multiple violations of court orders, materially false statements regarding the duration and quantum of BLUE FIRE sales, and the spoliation—during the pendency of this action—of all existing BLUE FIRE product specimens. Defendants' misconduct more than justifies the application of the most significant available sanctions, up to and including the entry of a default judgment, pursuant to Fed. R. Civ. P. 26 and 37, as well as the inherent power of the Court.

## II.    <u>BACKGROUND</u>

Defendants' discovery misconduct has been extensive and longstanding, starting with Defendants' very first discovery responses, and extending over the entire written discovery process to the present date. Since March 2026, Defendants have: (a) lied to the Court about the ***duration*** of BLUE FIRE sales (stating in open court that it stopped sales in January 2025 when those sales continued for ***at least*** another year); (b) falsely swore under oath regarding the ***quantum*** of their BLUE FIRE sales (producing interrogatory responses claiming a total of 275,000 unit sales, while its belated, court-ordered QuickBooks production showed unit sales at least ***two and a half times***

---

[1] Plaintiff notes at the outset that the form of relief sought herein—entry of default judgment—would moot the relief sought in Defendants' recently filed Motion for Leave to File Amended Answer ("Motion to Amend", Dkts. 130-132). As such, Plaintiff requests that the Court immediately hold in abeyance Defendants' Motion to Amend, pending resolution of the instant sanctions motion.

*larger*); (c) violated the Court's order to produce BLUE FIRE sales data and a BLUE FIRE specimen by May 19 (ultimately serving the sales figures late on the evening of the extended June 25 deadline); (d) violated the subsequent court order to produce the specimen by June 25; (e) lied to the Court on June 30 by asserting that they already had produced the specimen (a statement whose falsity Defendants were later forced to concede); and (f) despoiled all BLUE FIRE specimens (either by destruction or sale) sometime after December 2025, long after being put on notice by the March 2025 Complaint of their duty to preserve those specimens.

The withheld or destroyed evidence goes to the heart of Plaintiff's liability case (*e.g.*, the packaging and commercial use of the primary accused product) and its damages case (*e.g.*, the level and duration of sales of that accused product). Defendants' foregoing misconduct came to a head at the July 10 Hearing, which was convened to address, *inter alia*, Defendants' failure to produce text messages (the subject of the first sanctions motion) and the BLUE HEAT specimen. At the conclusion of that hearing, the Court invited Weather Brands to move for sanctions, noting: "The defendant has chosen a path here." Colvin Decl.,[2] ¶ 2, Ex. A (highlighted transcript excerpts), at 31:4-6.

Lying to a federal court, and repeatedly violating its orders, should and must have serious consequences. Plaintiff respectfully requests that the Court exercise its discretion to award the most significant available sanctions against Defendants, to ensure that they do not benefit from their misconduct, to ensure that Plaintiff is not prejudiced by that misconduct, and to deter both Defendants and future litigants from repeating such outrageous behavior, which is unworthy of federal court litigants and officers of the Court.

---

[2] "Colvin Decl." refers to the concurrently filed Declaration of Christopher A. Colvin, Esq. in Support of Plaintiff Weather Brands LLC's Second Motion for Discovery Sanctions, and exhibits attached thereto.

**A.    Identification of the Specific Discovery Requests and Responses at Issue Pursuant to L. Civ. R. 37.1**

In January 2026, Weather Brands propounded Rule 34 requests for production ("RFPs") and Rule 33 interrogatories, seeking BLUE FIRE specimens and sales data:

Request for Production No. 4:  "Specimens showing all Your Uses in Commerce of the BLUE FIRE Mark and/or FLAKES OF FIRE Mark, including product packaging, labels, advertisements, and promotional materials."

Request for Production No. 9: Documents sufficient to show the unit sales, on a monthly and annual basis, of the products of Defendant(s) bearing the BLUE FIRE Mark, for each month and year in which Defendant(s) did business in the United States, up to and including the present date, broken out by customer, reseller and/or retailer (e.g., Home Depot, Lowes, Tractor Supply, Amazon, Woot, New York City government, New York State government), SKU and product weight/size/form factor (e.g., 50 lb. bags or plastic buckets) from the time Defendant(s) first used the BLUE FIRE Mark in the United States.

Interrogatory No. 12: "Separately for the BLUE FIRE Mark and the FLAKES OF FIRE Mark, provide the unit sales, on a monthly and annual basis, of the products of Defendant(s) bearing the mark, for each month and year in which Defendant(s) did business in the United States, up to and including the present date, broken out by customer, reseller and/or retailer (e.g., Home Depot, Lowes, Tractor Supply, Amazon, Woot, New York City government, New York State government), SKU and product weight/size/form factor (e.g., 50 lb. bags or plastic buckets) from the time Defendant(s) first used mark in the United States."

Colvin Decl., ¶¶ 3-8; Exs. B, C, D, E, F and G (excerpts of Plaintiff's RFPs and interrogatories and Defendants' responses thereto).

Defendants initially interposed objections but then agreed to produce responsive documents and things. Defendants failed to do so, resulting in Plaintiff's motions to compel and the Court's orders to produce specimens and QuickBooks sales data. Colvin Decl., ¶ 9.  As detailed below, Defendants failed to produce either the BLUE FIRE specimen or the QuickBooks sales data on May 19 as ordered; produced (incomplete) QuickBooks sales data late in the evening on June 25; failed to produce the BLUE FIRE specimen by the extended deadline of June 25; falsely stated to the Court on June 30 that they *had produced* the specimen; and, finally, admitted at the

3

July 10 Hearing that they no longer possessed any BLUE FIRE specimens.  Colvin Decl., ¶ 10

In response to Interrogatory 12, Defendants swore under oath that, as of March 2026, "Responding Party has sold approximately 275,000 bags of product bearing the BLUE FIRE label." Colvin Decl., ¶ 8, Ex. G, at PDF pp. 3, 6 (PDF pages are given as Defendants did not paginate the original interrogatory responses). After extensive motion practice and court orders, Defendants ultimately produced sales data showing that 663,416 bags of BLUE FIRE were sold (*2.5 times greater* than the interrogatory figure).[3]  Colvin Decl., ¶ 11, Ex. H.

**B.      The May 15 Order and the Discovery Rulings It Incorporates**

The Court's May 15, 2026 Order (the "May 15 Order") states that "defendants shall complete document production, with the exception of emails and texts, by May 19, 2026 …." Colvin Decl., Ex. I (highlighted order, Dkt. 87), at 1-2. The court-ordered date range for product specimens and QuickBooks sales data (including for the accused BLUE FIRE product) runs from January 1, 2023 to December 31, 2025. Colvin Decl., ¶ 13.

**C.      <u>Timeline</u>:  A Disturbing Monthslong Saga of Withholding Discovery, Violating Court Orders, Knowing Dishonesty and Spoliation**

The duration, multiplicity and brazenness of Defendants' misconduct leaves little, if any, doubt that the conduct proceeded from bad faith rather than mere negligence.  The following timeline documents that conduct with specific regard to Defendants' BLUE FIRE product.[4]

---

[3] The disparity is likely greater than a factor of 2.5, as the interrogatory figure represented purported sales through March 2026 (including three additional winter months in 2026 during a record snow season), whereas the QuickBooks data ended at December 2025, near the beginning of that record snow season. Colvin Decl., ¶ 12. Moreover, Defendants have admitted that they have customers other than Home Depot, but chose to produce only the Home Depot sales data in response to the Court's discovery orders. *Id.* Thus, the QuickBooks data that was (belatedly) produced is incomplete by Defendants' own admission.

[4] Additional significant misconduct is recited in Plaintiff's July 17, 2026 First Motion for Sanctions (Dkts. 124-127). Weather Brands respectfully requests that the Court take that conduct into account when crafting appropriate sanctions commensurate with the full scope of Defendants' culpability during fact discovery in this action.

**March 2025:**  **Weather Brands' Original Complaint Put Defendants on Clear Notice of Their Infringing BLUE FIRE Sales and Their Duty to Preserve Evidence**

On March 24, 2025, Weather Brands filed its Complaint, putting Defendants on notice that their BLUE FIRE product was accused of infringing Weather Brands' BLUE HEAT trademarks and distinctive trade dress. The Complaint displayed the parties' competing products:





Complaint (Dkt. 1), ¶ 47.

Below these images, the Complaint recites numerous similarities between the parties' respective trade dress. Complaint (Dkt. 1), ¶¶ 48-49. A quantitative analysis of the words printed on the parties' competing packaging confirms that Defendants closely copied Plaintiff's trade dress. Out of the 418 words[5] on the BLUE HEAT packaging (front and back), only 27 words[6] (6.5%) from the BLUE HEAT package (front and back) were changed on the infringing BLUE FIRE package. A 93.5% commonality of wording is no coincidence, especially considering that Defendant Barry Wachsler's former company, Dart Seasonal Products, Inc. ("Dart"), previously owned the BLUE HEAT trademarks, and that the same package designer and manufacturer

---

[5] Word count was conducted using Microsoft Word's "word count" feature.  Colvin Decl., ¶ 20.

[6] Even that small number of word changes are merely the result of changing "HEAT" to "FIRE" along with other relatively minor changes (*e.g.*, changing the company name and minor tweaks to ingredient descriptions) that do not affect the overall commercial impression of the trademarks or the trade dress featured on the competing products. Colvin Decl., ¶ 20, Ex. O.

(Ecoplast), created both the BLUE HEAT and BLUE FIRE package designs. Colvin Decl., ¶ 20.

Defendants' packages even copied wholesale a BLUE HEAT thermometer graphic:

| **BLUE HEAT Detail** | **BLUE FIRE Detail** |
|:---:|:---:|
|  |  |

Colvin Decl., ¶ 20, Exs. M and N.

The March 2025 Complaint further recited that a search for Plaintiff's BLUE HEAT

trademark on Home Depot's website results in a customer being presented with the opportunity to

purchase Defendants' accused BLUE FIRE product:



Complaint Ex. E (Dkt. 1-5), at p. 2. As recited in the Complaint, the parties' competing products are displayed, side-by-side, in the first page of search results, are priced identically at $17.97 per bag and even bear the same product number ("B**H**50" – in a clear reference to a Blue **H**eat 50 lb bag of snow melt). Complaint, ¶ 32. These circumstances directly induce purchasers seeking to purchase Plaintiff's BLUE HEAT product, to instead purchase Defendants' accused BLUE FIRE product, creating a high likelihood of confusion between Defendants' and Plaintiff's snow melt products and, almost inevitably, diverting sales that were intended for Plaintiff, to Defendants.

**July 2025:**     **Weather Brands' First Amended Complaint Reinforced the Notice to Defendants for Willfulness and Duty-to-Preserve Purposes**

While the March 2025 Complaint provided Defendants' ample notice for the purposes of willful infringement and duty to preserve evidence, Weather Brands' July 21, 2025 First Amended Complaint ("FAC", Dkt. 39) reinforced that notice and duty. Indeed, as recited in the FAC, Defendants' actual knowledge of the BLUE HEAT trademarks and trade dress—and Plaintiff's rights therein—long predated the filing of this action in March 2025. Both the BLUE HEAT '891 Application and the BLUE HEAT '517 Application were filed by Defendant Barry Wachsler's former company, Dart Seasonal Products, Inc. ("Dart"), and both assert continuous use in commerce of the BLUE HEAT trademark since October 2005 (nearly 21 years ago). FAC, Ex. B, pp. 2-6; Ex. D, pp. 2-6; Colvin Decl., ¶ 21.

Defendant Wachsler *personally signed* the sworn oath accompanying the '517 Application and attaching the specimens of the BLUE HEAT trademarks, attesting to their long use in commerce and the inherent right of the trademark owner to exclude all others from their use in the U.S. *Id.* at Ex. D, pp. 3-5. Dart subsequently sold the IP rights to BLUE HEAT, which were later sold to Weather Brands, a history of which Mr. Wachsler was well aware at all times, and which

7

places Defendants in a unique position of clearly understanding the great value of those longstanding IP rights. Colvin Decl., ¶ 22.

**Dec. 2025:    BLUE FIRE and BLUE HEAT Products Sold Side-By-Side at Home Depot**

In December 2025, months after both complaints were filed, Plaintiff discovered that Defendants' BLUE FIRE product was being sold side-by-side (indeed on the very same pallet) at a Home Depot in New Jersey:

**December 2025 Home Depot Photos**
(three views of same pallet from 12/13/2025)

  

Colvin Decl., ¶¶ 14-16 and Exs. J, K and L (Plaintiff's BLUE FIRE packages are blue at the bottom, and Defendants' BLUE HEAT packages are orange at the bottom).

These December 2025 photographs closely match the BLUE FIRE packaging designs from designer and manufacturer Ecoplast that Defendants produced in discovery:



Colvin Decl., ¶ 23, Ex. P. As such, the best available evidence (given Defendants' spoliation of the actual BLUE FIRE specimens) shows that the infringing BLUE FIRE packaging did not materially change for at least six years (November 2019 to December 2025). Colvin Decl., ¶ 23. Accordingly, among other sanctions, Defendants should be precluded from arguing or submitting evidence that they sold any other form of BLUE FIRE from November 2019 through at least December 2025, other than the forms shown above and in the attached Colvin Declaration.

**Jan. 2026:** **Weather Brands Serves Defendant with RFPs for BLUE FIRE Sales Data and Specimens Which Defendants Agreed to Produce, But Then Failed to Produce**

Defendants (belatedly) responded to Weather Brands' RFPs On March 3, 2026. Colvin Decl., ¶¶ 3-8. However, Defendants failed to produce a single page at that time. *Id.* at ¶ 9. After being reminded of their discovery obligations, Defendants belatedly produced 44 pages on March 12 (mostly a handful of emails). Colvin Decl., ¶¶ 9, 24, Ex. Q. It was not until after multiple communications from Plaintiff's counsel and a lengthy April 16 meet and confer, that Defendants finally produced 229 additional pages over a month and a half later. *Id.* As Plaintiff pointed out in its May 6, 2026 letter motion to compel (Dkt. 78) this production remained gravely deficient. *Id.*

Defendants did not produce a single additional page in discovery until after the May 14 Hearing and the May 15 Order. *Id.* Defendants' pattern from January through May 2026, of doing literally nothing in discovery, then belatedly doing nearly nothing, foreshadowed Defendants' even more egregious subsequent misconduct.

As discussed above, in January 2026, the month after discovering the Home Depot December 2025 side-by-side BLUE FIRE/BLUE HEAT display, Weather Brands served on Defendants RFPs 4 and 9 (specimens and sales data documents) and Interrogatory 12 (sales information). Colvin Decl., ¶¶ 3-8, Exs. B-G.

**March 2026: Defendants' False Statement in Their Interrogatory Responses That They Sold Only 275,000 Units of BLUE FIRE**

As discussed above, in March 2026 Defendants swore in their interrogatory responses that, as of that time, they had sold only 275,000 bags of BLUE FIRE. Colvin Decl., ¶ 8, Ex. G. This turned out to be a false and massive understatement, which Plaintiff only discovered on June 25, after months of motion practice and Defendants' violation of the Court's discovery orders. For the period of January 2023 to December 2025, Defendants' belated, court-ordered QuickBooks production disclosed 37,560 total unit sales for 20 pound BLUE FIRE bags, and 625,856 total unit sales for 50 pound BLUE FIRE bags:

| Type | Date | Num | Name | Memo | Qty |
|---|---|---|---|---|---|
| Total BH20 (20LB BAG BLUE FIRE - SKU 1000036902 ) | | | | | 37,560 |
| Total BH50 (50LB BLUE FIRE - | | | SKU 1010398822) | | 625,856 |

Colvin Decl., ¶ 11, Ex. H, at Bates 22126 and 22145.[7] Defendants' QuickBooks production thus disclosed total BLUE FIRE unit sales of ***663,416 bags***. *Id.*

---

[7] For brevity, in this memorandum, the "BMC-ECOPLAST" prefix and leading zeros omitted from references to Defendants' document production.

As such, according to Defendants' own QuickBooks production, BLUE HEAT 2023-205 BLUE FIRE sales were nearly *2.5 **times larger*** than what they swore to in their interrogatory responses. Such a large disparity could not credibly be the result of mere negligence: this is evidence of Defendants' willful attempt to hide their infringing conduct and to avoid a full accounting for the commercial harm that Defendants' infringement has inflicted on Plaintiff.

**May 14-15, 2026: Defendants Represent to the Court That Defendants Stopped Selling BLUE FIRE in January 2025, a Representation Proven False by December 2025 Home Depot Photos**

Congruent with Defendants' massive under-reporting of their BLUE FIRE unit sales, Defendants also falsely represented to the Court at the May 14, 2026 discovery hearing (the "May 14 Hearing") that they discontinued sales of BLUE FIRE in January 2025. Specifically, Defendants' counsel Michael Steinmetz made (and reconfirmed) the following representations to the Court at the May 14 Hearing:

*THE COURT: Is your client still selling Blue Fire?*

*MR. STEINMETZ: Currently no, your Honor. But that doesn't mean we don't want to.*

*THE COURT: When did the defendant last sell Blue Fire?*

*MR. STEINMETZ: It would be January of 2025.*

*THE COURT: January of '25?*

*MR. STEINMETZ: Correct.*

*THE COURT: So over a year ago.*

*MR. STEINMETZ: Correct*

Colvin Decl., ¶ 25, Ex. R, at 8:23-9:7. Significantly, Defendant Wachsler was sitting in the courtroom right next to Mr. Steinmetz during the entire May 14 Hearing (per the Court order demanding his presence), including when Mr. Steinmetz made the false representation above. *Id.* at 2:9-10 ("With me is Mr. Barry Wachsler"). The next day, the Court entered its May 15, 2026 Order ("the May 15 Order", Dkt. 87), ordering Defendants to produce its product specimens and

11

QuickBooks data (among other documents and things) to Weather Brands by no later than May 19, 2026.  Colvin Decl., ¶ 25.

**May 19, 2026:  Defendants' First Unexcused Court Order Violation**

Defendants admittedly violated the Court-ordered May 19 deadline for producing their product specimens and QuickBooks data. Colvin Decl., ¶¶ 26-27; Ex. S, at 10:12-22, 11:2-6. At the June 11 Hearing, Defendants conceded they missed the May 19 deadline and admitted they did not seek an extension of time from the Court or from Plaintiff's counsel beforehand. *Id*. At the June 11 Hearing, Defendants asked for, and received, additional time, until June 25, 2026, to complete their document production. *Id.* at 14:22-23.

**June 2026:    Defendants' Second Unexcused Court Order Violation—Coupled With a False Claim that They Had Complied**

Despite the over-one-month extension Defendants pleaded for, and received, they ***still failed to produce*** a BLUE FIRE specimen by June 25. Instead, a day after the extended deadline, Weather Brands' counsel received a FedEx package containing some product specimens. However, the June 26 FedEx ***did not include*** a BLUE FIRE specimen, as Weather Brands informed the Court in their June 29 Letter, which included photos of the various specimens that were produced.  Colvin Decl., ¶¶ 28, 30, Ex. T (at p. 2 and Ex. 3).  Despite this manifest failure, Defendants' June 30, 2026 letter to the Court (the "June 30 Letter") falsely stated to the Court that "Defendants shipped the physical specimens in their possession [to Plaintiff], ***including the Blue Fire specimen***." Colvin Decl., ¶¶ 29-30, Ex. U at p. 2 (emphasis added).

**July 2026:    Defendants, Ultimately, Were Forced at the July 10 Hearing to Admit that Every BLUE FIRE Specimen Had Been Despoiled**

At the July 10 Hearing, after being presented with the contents of the June 26 FedEx package, Defendants were forced to concede the falsity of their June 30 statement, conceding "[w]e do not have the Blue Fire" specimen. Colvin Decl., Ex. A, at 10:14-11:7. Therefore, at some point

between December 2025, when the parties' competing products were photographed at the Home Depot in New Jersey, and the July 10 Hearing, Defendants either destroyed or sold off their ***entire inventory*** of the core accused BLUE FIRE product,[8] acts of spoliation that deprive Plaintiff of highly probative evidence and warranting the most serious sanctions against Defendants.

## III.    GOVERNING LEGAL STANDARDS

### A.    Rule 37(b) Sanctions Are Awarded Against Parties Who Violate Discovery Orders

Rule 37(b)(2)(A) authorizes remedies including establishing facts, preclusion, striking pleadings, and entry of default judgment when a party disobeys a discovery order, and Rule 37(b)(2)(C) mandates an award of reasonable expenses, including attorney's fees, absent substantial justification (not present here). In determining the appropriate sanction under Rule 37(b), courts in the Second Circuit consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). The *Agiwal* factors are nonexclusive, and each need not be resolved against the noncompliant party for sanctions to fall within the Court's discretion. *J.C. v. Zimmerman*, 150 F.4th 136, 146 (2d Cir. 2025).

### B.    Rule 26(g) and 37(c)(1) Sanctions Are Awarded Against Parties Who Make False Statements in Discovery

Rule 26(g)(1) requires every discovery response or objection to be signed by counsel, certifying that, to the best of the signer's knowledge, information, and belief formed after a

---

[8] One measure of the massive extent of Defendants' spoliation is that over ***240,000 units*** of BLUE FIRE were sold ***after the filing of the March 2025 Complaint***. Colvin Decl., ¶ 11.  The fact that Defendants admittedly failed to preserve even a single one of those hundreds of thousands of post-complaint product specimens, is highly probative of willful misconduct and a deliberate attempt to destroy highly relevant physical evidence. *Id.*

reasonable inquiry, it is consistent with the Federal Rules, not interposed for an improper purpose, and neither unreasonable nor unduly burdensome or expensive. Rule 26(g)(3) mandates an appropriate sanction on the signer, the party on whose behalf the signer acted, or both, if the certification violates the Rule without substantial justification. Rule 37(c)(1) likewise authorizes sanctions for making false statements to the Court about discovery, up to and including entry of default judgment. *See, e.g. Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union,* 212 F.R.D. 178, 218-19, 231 (S.D.N.Y. 2003)(granting judgment of liability against defendants, along with attorney fees, as Rule 37(c)(1) sanction where counsel made repeated false statements that all responsive documents had been produced, when in fact an adequate search had not been performed).

## C.    Sanctions Are Awarded Against Parties Who Dispose of Relevant Physical Evidence, Including Accused Infringing Products

Defendants have a duty to preserve potentially relevant evidence, which arises ***at the latest*** when suit is filed, and even extends to earlier periods when a party should have known that the evidence might be relevant to future litigation. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), overruled on other grounds, *Rotella v. Wood*, 528 U.S. 549 (2000); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003). Once a party reasonably anticipates litigation, it must suspend its routine document retention and destruction policies and put in place a litigation hold to ensure the preservation of relevant evidence. *Zubulake*, 220 F.R.D. at 217 (duty to preserve arose at defendant corporation in April 2001, when corporate colleagues of plaintiff, a former employee, "recognized the possibility that she might sue."). Herein, it is beyond dispute that Defendants' duty to preserve evidence arose no later than March 2025, when the Complaint was filed.

14

Sanctions for the spoliation of physical evidence are governed by the court's inherent authority, rather than Fed. R. Civ. P. 37(e), which governs spoliation in the context of ESI. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *see also Oakley v. MSG Networks, Inc.*, 792 F.Supp.3d 394, 401 (S.D.N.Y 2025). Courts in the Second Circuit apply a three-part test to determine whether they should sanction a party for spoliation under the court's inherent authority: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (superseded by Rule 37(e)(2) for ESI, but remains applicable to physical evidence, *see Hoffer v. Tellone*, 128 F.4th 433, 439 (2d Cir. 2025)).

This Court has held expressly that the duty to preserve physical specimens extends to accused infringing products. In *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13 (S.D.N.Y. 2010), the plaintiff sued for copyright and trade dress infringement, alleging that the defendant's jewelry collection infringed the plaintiff's designs. The court held that the defendant's duty to preserve evidence obligated it to preserve exemplars of each of the allegedly infringing pieces, and specifically rejected defendant's argument that sales were not spoliation. *Id.* at 32-35. The *R.F.M.A.S.* court further held that a party's failure to implement a litigation hold renders the spoliation not merely negligent, but grossly negligent or reckless, thereby readily meeting the "culpable state of mind" prong of the three-part *Residential Funding* test for spoliation evidence. *Id.* at 35.

15

## IV.   ARGUMENT

**A.   The Most Significant Available Sanctions Are Warranted Under Rules 37 and 26 and the Inherent Power of the Court**

    **1.   Rule 37 Sanctions are Needed to Address Defendants' Willful Violations of the Court's Discovery Rulings**

Defendants violated two express discovery orders of this Court pertinent to the instant motion. First, Defendants ***admittedly*** violated the May 15 Order by failing to produce its product specimens and QuickBooks data by May 19, 2026. Second, Defendants violated the Court's subsequent Order to produce the BLUE FIRE specimen by June 25. Both violations warrant sanctions under Rule 37(b)(2)(A). In addition, the Court:

> must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

The balance of the non-exclusive *Agiwal* factors tip heavily in favor of significant sanctions here. Defendants' extensive and multifarious misconduct evidences a high degree of willfulness, that misconduct spans the entirety of the written discovery period (right up to the present day), Defendants received multiple warnings that have not deterred its persistent misconduct, making it clear that lesser sanctions are unlikely to be effective. *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).

    **2.   Rule 26 and 37 Sanctions are Warranted by Defendants' False Statements to the Court and in Their Interrogatory Responses**

Defendants' knowingly false statements to the Court and in discovery responses are precisely the kinds of material false statements that violate Rule 26(g). Defendants falsely represented, in open Court at the May 14 Hearing they stopped BLUE FIRE sales in January 2025, although such sales continued for at least another year. Colvin Decl., ¶ 25, Ex. R, at 8:23-9:7.

16

Defendants represented that unit sales were 275,000, when in fact sales were 2.5 times greater. Colvin Decl., ¶ 11, Ex. H. Defendants told the Court in a hearing that it produced a BLUE FIRE specimen to Plaintiff in discovery, which it had not done. Colvin Decl., ¶¶ 28-30, Exs. T and U.

This Court treats such willful misrepresentations about sales of accused products as serious misconduct meriting significant sanctions. For example, in *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 168-69 (S.D.N.Y. 1999), this Court held that an active effort to mislead the court about continued willful infringement is a traditional aggravating factor in statutory damages inquiries, and proceeded to award $750,000 in statutory damages as well as over $46,000 in attorney fees and costs. *Id.* at 171.

This Court has held that Rule 26(g) applies to false statements in letters and representations to the Court concerning the completeness of discovery, as well as to formal discovery responses. Counsel has an affirmative duty to make a reasonable inquiry into the basis of discovery responses, and repeated representations that all responsive documents have been produced, made without an adequate search or reasonable basis, warrant mandatory sanctions. *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219–25 (S.D.N.Y. 2003) (Rule 26(g) sanctions warranted where it was "crystal clear in hindsight [that] counsel's responses to [plaintiff's] discovery requests, in formal responses, in letters and to the Court—particularly counsel's repeated representations that all responsive documents had been produced—were made without any real reflection or concern for their obligations under the rules governing discovery and, in the absence of an adequate search for responsive documents, without a reasonable basis"); *Jianjun Chen v. 2425 Broadway Chao Rest., LLC*, 331 F.R.D. 568, 572-74 (S.D.N.Y. 2019) (sanctioning law firm partner who signed post-discovery responses containing material discrepancies with prior deposition testimony); *Travel Sentry, Inc. v. Tropp,* No. 06-CV-6415

17

(ENV), 2008 WL 2097613, *2 n.4 (E.D.N.Y. May 15, 2008) (Rule 26(g) sanctions are warranted where party's "evasive discovery responses were made for the improper purpose of covering up their willful withholding of documents"). The Second Circuit has likewise affirmed Rule 26(g) sanctions against parties and counsel who falsely represented on numerous occasions that all responsive documents had been produced. *Gardner-Alfred v. Fed. Rsrv. Bank of N.Y.*, 143 F.4th 51, 56 (2d Cir. 2025).

Rule 37 provides an independent and overlapping basis for sanctioning Defendants' false statements to the Court herein. *See, e.g.*, *Metro. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 221-31 (S.D.N.Y. 2003) (granting judgment of liability as a sanction under both Rule 26 and Rule 37 where counsel made repeated false representations to the court that all responsive documents had been produced, when in fact no adequate search had been conducted); *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, *14 (S.D.N.Y. June 20, 2019) (holding that "a false or misleading response to a court order requesting specified information must be treated as a violation of that order" and imposing Rule 37 sanctions).

Accordingly, Rules 26 and 37 and applicable case law supports the imposition of the most serious available sanctions for Defendants' false statements, especially when taken together with the totality of Defendants' other serious misconduct.

### 3. Sanctions are Warranted under the Inherent Power of the Court For Defendants' Knowing Spoliation of Physical Evidence

Defendants' (admitted) disposal of all BLUE FIRE specimens readily meets the Second Circuit's three-part test governing the spoliation of evidence: (1) obligation to preserve the evidence; (2) a culpable state of mind; and (3) relevance to a claim or defense. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

18

Defendants were on notice since at least the filing of the March 2025 Complaint of their duty to preserve relevant evidence, a duty which this Court has held includes a party's institution of a litigation hold to preserve product specimens accused of infringement, and further includes the duty of both the party and its counsel to monitor compliance with the litigation hold. *R.F.M.A.S., Inc. v. So,* 271 F.R.D. 13, 23-24 (S.D.N.Y. 2010).

There is also no doubt as to the second *Residential Funding* factor, Defendants' culpable state of mind.  The Second Circuit holds this factor may be satisfied by a showing that the evidence was destroyed knowingly (even if done without intent to breach the duty to preserve) or even by negligent destruction. *Residential Funding*, 306 F.3d at 108. In the context of a product accused of infringement, in circumstances analogous to the instant case, the SDNY's *R.F.M.A.S.* case held that a defendants' party's failure to prevent the disposal of the accused product renders the spoliation not merely negligent, but grossly negligent or reckless.  271 F.R.D. 13 at 35-37, 48 23-24.  In any event, when coupled with Defendants' false statements about the level and duration of infringing BLUE FIRE sales (which appear calculated to hide evidence of longstanding infringement), Defendants' conduct supports the reasonable inference that they knowingly despoiled evidence.

As to the third *Residential Funding* prong, relevance, spoliation of physical samples of the ***actual product*** accused of trademark and trade dress infringement is indisputably of the highest relevance to the parties' claims and defenses. Together with Defendants' other misconduct, Defendants' spoliation of BLUE FIRE physical evidence warrants the most serious available sanctions.

19

**B.      Defendants' Extensive and Serious Misconduct Warrants the Strictest Available Sanctions, Including Entry of Default Judgment**

**1.      Entry of Default Judgment is Warranted, Followed by a Damages Inquest Applying Appropriate Presumptions and Exclusions**

Rule 37(b)(2)(A)(vi) expressly authorizes "rendering a default judgment against the disobedient party" who violates a discovery order. In the instant case, there is no dispute that Defendants violated the Court's discovery orders.

Defendants' false interrogatory responses and false statements to the Court, together with their pattern of violating court orders and withholding and despoiling key evidence, are precisely the type of circumstances that courts in the Second Circuit have found to support the most serious available sanctions, including the entry of default judgment. In the present case, the monthslong history of Defendants' misconduct is not one of negligence or inadvertence — it is one of knowing, repeated, and deliberate deception. Defendants' misconduct is analogous to that addressed in *In re Anderson*, 641 B.R. 1, 31-42 (Bankr. S.D.N.Y. 2022), in which the court entered default judgment as a sanction for "willful, bad faith discovery misconduct" including litigant's false verifications under penalty of perjury.

Defendants' misconduct also parallels that found to constitute willfulness and bad faith in *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010).  In that case, the Second Circuit affirmed entry of default judgment after finding that the defendants had willfully lied about the existence and whereabouts of documents, destroyed files, and engaged in a pattern of prolonged and vexatious obstruction of discovery with respect to highly relevant documents. *Id.* at 147-49.  The court noted that "courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Id.* at 148.

Another analogous case is *Metropolitan Opera*, where false testimony by individual defendants about the existence of documents was found to constitute willfulness and bad faith

requiring severe sanctions, including entry of judgment of liability against defendants and an award of attorney fees. *Metro. Opera Ass'n, Inc. v. Loc. 100*, Hotel Emps. & Rest. Emps. Int'l Union, 212 F.R.D. 178, 230-31 (S.D.N.Y. 2003)("because of the egregiousness of the conduct at issue and because it continued in the face of repeated, documented examples of non-compliance and repeated inquiries by [plaintiff's] counsel and the Court, a lesser sanction would not be adequate to penalize [defendant] and its counsel here or to deter others from similar misconduct in the future"); *see also Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 450-451 (2d Cir. 2013) (upholding sanction of default judgment for willful violation of discovery orders).

Perhaps most significantly in this case, the Second Circuit has consistently held that courts should evaluate discovery misconduct against the full record of the case, not in isolation. *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010). The "full record" of the written discovery phase of this case has been a nearly nonstop series of Defendants ignoring their discovery obligations, despite reminders from Plaintiff's counsel, followed by motions to compel, court orders, violations of those court orders, and false and misleading statements clearly calculated to conceal Defendants' discovery misconduct and to withhold or despoil highly relevant evidence.

Accordingly, Plaintiff respectfully requests that a default judgment be entered against Defendants. Pursuant to Second Circuit practice, upon entry of default judgment, the Court should deem all well-pleaded factual allegations in the complaints to be admitted, except for those relating to damages. *In re Anderson*, 641 B.R. 1, 42 (Bankr. S.D.N.Y. 2022). In a trademark action like the instant case, following a default judgment, a defendant is deemed to be a willful infringer. *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 191 (E.D.N.Y. 2009).

Following the entry of the default judgment, Plaintiff respectfully requests that the Court proceed to an inquest to determine the damages and other relief that should be accorded to Plaintiff, at which Plaintiff will be entitled to present evidence of its actual damages, Defendants' profits, and/or statutory damages under the Lanham Act.

Additionally, for the purposes of the inquest, Defendants should be deemed to be willful infringers, entitling Plaintiff to an array of remedies under the Lanham Act, 15 U.S.C. §§ 1116–1118, including without limitation: (a) enhancement of damages up to three times the amount found at the inquest; (b) costs of the action; and (c) attorney's fees and prejudgment interest in exceptional cases. Furthermore, Plaintiff respectfully requests that the Court deem this action to be an exceptional case, and award Plaintiff all of its attorney fees and costs incurred in its prosecution of this action to final judgment.

As a further appropriate and proportionate sanction, at the damages inquest, Defendants should be precluded from submitting any argument or evidence that any of the 663,416 BLUE FIRE unit sales disclosed in their court-ordered QuickBooks production were purportedly non-infringing. Were Defendants permitted to present such arguments and evidence, they would perversely be rewarded for (and Plaintiff would be prejudiced by) Defendants' misconduct in misrepresenting both the *duration* and the *quantum* of their BLUE FIRE sales, and by despoiling 100% of the BLUE FIRE specimens that otherwise would have been the best evidence of the actual product represented by each of the 663,416 unit sales reported in Defendants' QuickBooks production.

Additionally, the Court should preclude Defendants from submitting evidence or argument in attempt to rebut the presumption of irreparable harm in trademark actions, under the Trademark Modernization Act of 2020 (TMA), 15 U.S.C. § 1116(a). Defendants come to court with unclean

22

hands, in light of their false representations about the quantum and duration of BLUE FIRE sales, which have directly impaired Plaintiff's ability to gather evidence of the true extent of Defendants' misconduct. In light of Defendants' bad faith, irreparable harm to Plaintiff should be conclusively presumed. Accordingly, Plaintiff respectfully requests that, simultaneously with the damages inquest, the Court apply this presumption of irreparable harm in determining the appropriate level of injunctive relief to grant against Defendants' further infringement.

### 2. Award of Attorney Fees and Costs for Discovery and Sanctions Motions

The Court should also award Plaintiff's reasonable expenses and attorneys' fees as mandated by Rule 37(b)(2)(C). This award should expressly include the costs and fees associated with enforcement of Plaintiff's discovery requests, the motions to compel production, the multiple hearings in connection with those motions to compel, as well as the costs and fees incurred in bringing Plaintiff's first motion for sanctions (Dkts. 123-126) and the instant second motion for sanctions.

### 3. Defendants' Motion to Amend Answer Should be Held in Abeyance

Finally, Plaintiff respectfully requests that the Court grant the preliminary relief of immediately ordering that any further proceedings on Defendants' currently pending Motion for Leave to File Amended Answer ("Motion to Amend", Dkts. 130-132) be held in abeyance. The entry of a default judgment would moot entirely the relief sought in Defendants' Motion to Amend. Accordingly, at this time, any further proceedings on the Motion to Amend (including the filing of opposition and reply papers) could prove unnecessary, so the preferable course would be to preserve the time and resources of the Court and the parties with respect to the Motion to Amend by holding it in abeyance. In the event that a default judgment is entered against Defendants, Plaintiff respectfully requests that the Motion to Amend be stricken as moot.

## V.    CONCLUSION

For the foregoing reasons, Weather Brands respectfully requests that the Court grant its second motion for sanctions and enter the accompanying proposed order and such further relief as the Court deems just and proper.

Dated: New York, New York
      July 29, 2026

Respectfully submitted,

PRACTUS LLP

_____*/s/ Christopher A. Colvin*_____
Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

Attorneys for Plaintiff Weather Brands LLC

24

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum complies with the applicable word limit. Excluding the caption, table of contents, table of authorities, signature block, and this certificate, this memorandum contains approximately 6,326 words, as counted by the word-processing software used to prepare it, which does not exceed the 8,750-word limit for a memorandum in support of a motion.

__/s/ Christopher A. Colvin_
Christopher A. Colvin
