**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEATHER BRANDS LLC,<br><br>　　　　　Plaintiff,<br><br>ALL SEASON POWER LLC,<br><br>　　　　　Intervenor-Plaintiff,<br><br>　　-against-<br><br>BLUE MINERAL CORPORATION,<br>BARRY WACHSLER and JOHN DOES 1-10,<br><br>　　　　　Defendants. | Civil Action No.25-cv-2423-DLC |

**DEFENDANTS BLUE MINERAL CORPORATION AND BARRY WACHSLER'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF WEATHER BRANDS LLC'S FIRST MOTION FOR DISCOVERY SANCTIONS**

**GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**
Michael M. Steinmetz
225 Broadway, 37th Floor
New York, New York 10007
Tel.: (212) 380-3623
Email: ms@gs2law.com
*Attorneys for Defendants Blue Mineral*
*Corporation and Barry Wachsler*

Weather Brands LLC v. Blue Mineral Corporation, et al.  •  No. 25-cv-2423-DLC

---

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT**                                                              **1**

**BACKGROUND**                                                                         **3**

   A. The Court Ordered a One-Time Search, and the BMC Parties Undertook a Substantial

   Collection.                                                                     3

   B. The Goldstein-Cohen Exports Do Not Establish Lost, In-Period Merits Evidence.    6

   C. Exhibit R Is a Characterization of Produced Evidence, Not Proof of Missing Messages.    8

   D. Discovery Remains Open, and Plaintiffs Have Tried to Supersed the Pleading Targeted by

   the Motion.                                                                     8

**LEGAL STANDARDS**                                                                    **9**

   I. Rule 37(b) Requires a Clear Order and a Just, Related, and Proportionate Response.    9

   II. Rule 37(e) Governs Merits Sanctions Premised on Supposedly Lost Discovery      10

   III. Rule 26(g) Turns on a Particular Certification and an Objectively Reasonable Inquiry

   When It Was Made.                                                               11

**ARGUMENT**                                                                           **12**

   I. Weather Brands Has Not Established the Predicates for an Adverse Inference or Any Other

   Merits Sanction.                                                                12

      A. The Motion Does Not Show That Relevant ESI Was Lost or Cannot Be Restored or

      Replaced.                                                                    12

      B. Weather Brands Has Not Shown Prejudice from Any Lost Information.          13

      C. The Motion Offers No Evidence of an Intent to Deprive.                    14

      D. Rule 37(b) Does Not Permit Weather Brands to Evade Rule 37(e)'s Requirements.    15

   II. The Rule 37(b) Factors Do Not Support Striking Defenses or Broad Merits Preclusion.    16

      A. The First and Second Agiwal Factors Do Not Support Merits-Dispositive Relief    16

      B. The Third and Fourth Agiwal Factors Do Not Justify Liability-Determining Relief.    20

      C. The Requested Sanctions Have No Evidentiary Nexus and Would Decide Essential

      Elements of the Case.                                                        23

      D. The Second Amended Complaint May Supersede the Pleading That the Motion

      Targets.                                                                     25

   III. Weather Brands Has Not Established a Rule 26(g) Violation by Counsel.          26

A. The Motion Does Not Identify a False Signed Certification Made Without Reasonable Inquiry.                                                                          26

**CONCLUSION**                                                                                          **29**

## TABLE OF AUTHORITIES

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298 (2d Cir. 2009)    10, 16, 18-20

*Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991)    9

*Dilworth v. Goldberg*, 3 F. Supp. 3d 198 (S.D.N.Y. 2014)    21, 25

*Falcone v. Gouse*, No. 84 Civ. 4996 (KMW), 1990 U.S. Dist. LEXIS 6547 (S.D.N.Y. May 30, 1990)    19, 22

*Gardner-Alfred v. Federal Reserve Bank of New York*, 143 F.4th 51 (2d Cir. 2025)    11, 20

*Hoffer v. Tellone*, 128 F.4th 433 (2d Cir. 2025)    11, 13, 14

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)    9, 16, 23

*International Controls Corp. v. Vesco*, 556 F.2d 665 (2d Cir. 1977)    25

*J.C. v. Zimmerman*, 150 F.4th 136 (2d Cir. 2025)    9

*Khaldei v. Kaspiev*, 961 F. Supp. 2d 564 (S.D.N.Y. 2013)    21, 25

*Kyros Law P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532 (2d Cir. 2023)    11

*M.G. v. N.Y.C. Dep't of Educ.*, No. 13-CV-4639 (SHS) (RWL), 2026 U.S. Dist. LEXIS 145194 (S.D.N.Y. June 30, 2026)    24

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28 (S.D.N.Y. 2016)    18, 28

*Mastr Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.*, 295 F.R.D. 77 (S.D.N.Y. 2013)    24

*Maxwell v. N.Y. Univ.*, 2009 U.S. Dist. LEXIS 45859 (S.D.N.Y. June 1, 2009)    17

*Metropolitan Opera Ass'n v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178 (S.D.N.Y. 2003)    11, 20, 26, 27

*Mintz Fraade Law Firm, P.C. v. Brady*, No. 19-CV-10236 (JMF), 2021 U.S. Dist. LEXIS 85318 (S.D.N.Y. May 4, 2021)    18, 28

*Northrock Minerals LLC v. Cohen*, No. 24 Civ. 3155 (JSR), ECF No. 61 (S.D.N.Y. May 21, 2025), appeal docketed, No. 25-1515 (2d Cir. June 16, 2025)    3

*Orellana v. Lopez*, 2026 U.S. Dist. LEXIS 74265 (S.D.N.Y. Apr. 3, 2026)    21, 25

*Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, No. 09-CV-601 (ADS) (AKT), 2009 U.S. Dist. LEXIS 104020 (E.D.N.Y. Nov. 9, 2009)    18

*Perez v. Metro Dairy Corp.*, No. 13-CV-2109, 2016 WL 755628 (E.D.N.Y. Feb. 25, 2016)    18, 22

*Pettaway v. National Recovery Solutions, LLC*, 955 F.3d 299 (2d Cir. 2020)    25

*S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123 (2d Cir. 2010)    9

*Salahuddin v. Harris*, 782 F.2d 1127 (2d Cir. 1986)    10, 18

*Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14-CV-2275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396 (S.D.N.Y. Nov. 4, 2016)    19, 21

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007)    10, 23

*Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428 (S.D.N.Y. 2011)    23, 28

**<u>Rules and Other Authorities</u>**

Fed. R. Civ. P. 26(g)    3, 11, 26-29

Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment    11, 27

Fed. R. Civ. P. 37(b)    9, 11, 12, 15, 16, 19, 23

Fed. R. Civ. P. 37(e)    3, 10-16

Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment    11

Fed. R. Evid. 408    7

S.D.N.Y. Local Civil Rule 7.1(c)    29

## PRELIMINARY STATEMENT

Weather Brands LLC ("WB" or "Weather Brands") follows an all-too-familiar pattern: it takes a discrete, fact-dependent discovery dispute and sounds a 5-alarm fire.[1] This time, however, its rhetoric is matched by an ask for extraordinary relief. Weather Brands asks the Court effectively to decide the central merits of this trademark case by striking five defenses; barring Defendants from disputing confusion, deception, dilution, and copying; permitting an adverse inference about communications whose contents are unknown; imposing fees jointly and severally on the clients and counsel; and reserving default as a future remedy. ECF No. 126 at 2-4. ***Even for Weather Brands and its counsel, that is simply a bridge too far.*** Even if Weather Brands were correct about the alleged discovery failures (it is not), the sweeping, merits-driven sanctions it seeks are not a measured response to the parties' actual discovery dispute.[2]

Nevertheless, Defendants Blue Mineral Corporation and Barry Wachsler (together, the "BMC Parties") do not minimize the discovery dispute that prompted the motion. The facts are simple: the Court directed a one-time search of email and text-message sources using twenty terms, the Court extended the deadline through June 25, and Defendants' met that deadline with a June 25 production containing no text messages. June 11 Tr. 11:14-14:25; ECF No. 104 at 1. Indeed, Defendants' June 25 production stemmed from a substantial, difficult collection effort. Mr. Wachsler spent more than 300 hours collecting and reviewing materials, obtained technical assistance, purchased new equipment when his existing computer could not process the volume,

---

[1] At the July 10 conference, the Court said Weather Brands could move for sanctions but also that it had "no need" for the motion, did not "need to bring one," and could wait until the end of the litigation. July 10 Tr. 17:11-18:7, 29:20-25, 31:1-16. The full exchange shows that the Court set a schedule without prejudging entitlement or remedy.

[2] The Court directed a one-time search of identified email and text-message sources using twenty terms. The BMC Parties completed that search and produced the resulting collection by the extended June 25 deadline. Weather Brands does not identify a substantive, in-period text that Defendants failed to produce; it assumes from participant-side excerpts already in Plaintiffs' possession that additional responsive texts must exist.

1

searched five business accounts with the ordered terms, and supplied tens of thousands of native emails and attachments for counsel review. *See* Declaration of Barry Wachsler ("Wachsler Decl.) ¶¶ 11-16; Declaration of Michael Steinmetz ("Steinmetz Decl.") ¶¶ 4-16.

All told, the BMC Parties produced approximately 1.16 million Bates-numbered pages or items. *Id.* Mr. Wachsler also states that he searched the mobile messaging available on his current phone, that messages from the relevant period had been transferred to that phone, and that he did not intentionally delete or destroy information to prevent its use here. Wachsler Decl. ¶¶ 7-10. Those facts foreclose Weather Brands' attempt to treat its thin "evidence" submissions as conclusive proof of concealment, spoliation, and merits culpability.

Weather Brands' principal exhibits proves less than its rhetoric suggests. One exhibit shows two participant-side WhatsApp exports ("Goldstein-Cohen Exports") contain thirty-eight hits on the ordered terms. Seventeen of the thirty-eight Goldstein-chat highlights are the sender label "Benjy Goldstein," not message content. The remaining substantive Goldstein highlights are from 2026; the Cohen-chat highlights are from 2022 or 2026. None of the thirty-eight hits falls within the January 1, 2023 through December 31, 2025 period Weather Brands says governed production.[3] Steinmetz Decl. ¶¶ 17-20. A separate January 2, 2025 notation that "This message was deleted" reveals neither content, relevance, author, timing, recoverability, nor purpose. *Id*.; Wachsler Decl. ¶¶ 21-27. And the participants, ***Weather Brands' managing member and an All Season Power executive***, had copies available to Plaintiffs, which bears

---

[3] The May 15 order set deadlines but no date range. *See* ECF No. 87. The May 14 discussion used January 1, 2023 through December 31, 2025 for a two-term search of personal or nonbusiness email. May 14 Tr. 45:3-47:8. The BMC Parties use Weather Brands' asserted period for this motion without waiving any record-based position on the May 20 protocol's scope.

2

directly on lack of prejudice.[4] Weather Brands' assertion that Mr. Wachsler conducts business primarily through text messages is also wholly unsupported by the record.

For the foregoing reasons and those detailed below, the Court should deny the requested adverse inference, merits preclusion, striking of defenses, and Rule 26(g) sanctions in their entirety.

**BACKGROUND**

Some broader commercial history is relevant. In related litigation, the Southern District entered judgment for Northrock Minerals LLC and against Snow Joe LLC and Joseph Cohen for $6.265 million, plus pre- and post-judgment interest. *Northrock Minerals LLC v. Cohen*, No. 24 Civ. 3155 (JSR), ECF No. 61 (S.D.N.Y. May 21, 2025), appeal docketed, No. 25-1515 (2d Cir. June 16, 2025). Weather Brands claims title through Snow Joe. Against that backdrop, Weather Brands' repeated efforts to obtain default, strike defenses, and secure liability findings through discovery sanctions support the inference that this motion is being used as commercial leverage to force BMC from the ice-melt market, not to cure an identified evidentiary injury.

**A.  The Court Ordered a One-Time Search, and the BMC Parties Undertook a Substantial Collection.**

Weather Brands served its first document requests on January 30, 2026. Several sought communications concerning the accused marks, Plaintiffs, merchants and retailers, and the ice-melt business. See Colvin Decl. Exs. M-P. The BMC Parties objected to scope but agreed to produce responsive, nonprivileged communications located after a reasonable search. *Id*.

At the May 14 conference, the Court addressed the parties' disputes request by request. As relevant here, the Court directed Weather Brands to propose search terms, directed the parties

---

[4] The availability of participant copies is not offered as an excuse for Defendants' independent discovery obligation. It bears on the distinct Rule 37(e) questions whether information is lost, whether it can be restored or replaced, and whether Weather Brands has suffered prejudice.

to confer over them, and required searches of the Dart and Blue Mineral business accounts. May 14 Tr. 45:3-47:8, 50:13-51:5, 53:10-54:19. The Court's May 15 written order required completion of documents other than email and texts by May 19 and completion of the email-and-text production by June 5. ECF No. 87 at 1-2.

Weather Brands proposed twenty terms. The parties agreed on sixteen and disputed four that generated unusually large results. Steinmetz Decl. ¶¶ 4-7. Counsel asked Mr. Wachsler to run test searches and provide hit counts, followed up on results exceeding 10,000 hits, and examined whether recurring industry reports contributed to the volume. Id. ¶ 6. On May 20, the Court resolved the remaining disagreement by directing one complete search using all twenty terms and stated that no further email/text search would be required absent good cause. May 20 Tr. 18:5-20. Counsel conveyed that ruling and the full term list to Mr. Wachsler. Steinmetz Decl. ¶ 7.

By June 11, Mr. Wachsler had retained technical help, purchased additional computer equipment, and delivered approximately 15,000 documents for review. June 11 Tr. 5:1-25; Steinmetz Decl. ¶ 8; Wachsler Decl. ¶¶ 11-14. When the Court asked whether the email and text searches were complete, counsel answered, "I believe they were," and explained that he was reporting client-performed work. June 11 Tr. 12:13-25. Counsel understood that the terms had been applied and that review and production remained. Steinmetz Decl. ¶ 9. The Court extended the deadline through June 25. June 11 Tr. 12:20-14:25.

The BMC Parties produced more than 1.16 million Bates-numbered pages or items by June 25, together with native material. ECF No. 104 at 1 n.1; Steinmetz Decl. ¶¶ 10-13. The production included a large body of BMC and Dart emails but no text messages. Wachsler Decl. ¶¶ 13-16. The June 30 response letter stated that the BMC Parties had "no reason to believe"

4

responsive texts existed. ECF No. 105 at 1. That statement reflected counsel's understanding of the thorough and extensive search of the BMC's parties documents, not a representation based on forensic examination of every mobile source. Steinmetz Decl. ¶¶ 28-30.

At the July 10 conference, Weather Brands identified four additional business addresses and the Court asked whether each had been searched. Counsel stated that he had the client's general assurance but had not independently verified each address. July 10 Tr. 15:1-24. The Court explained that account-specific verification was required and directed a letter identifying all bluemineral.com and dartsp.com accounts. Id. at 15:15-16:14. On July 13, the BMC Parties identified five accounts: barry@bluemineral.com, info@bluemineral.com, billing@bluemineral.com, ilana@bluemineral.com, and barry@dartsp.com. The BMC Parties confirmed that each had been searched with the ordered terms. ECF No. 121; Steinmetz Decl. ¶¶ 14-16.

Mr. Wachsler's declaration separately addresses the mobile sources known to him. It states that the messages from prior phones for the relevant period were transferred to his current phone, that the current phone contains text messages from 2023 through 2025 and thereafter, that he searched the mobile messaging available on that phone, that he previously used an older phone no longer in service, and that he did not intentionally destroy a message, device, or backup to prevent use in this litigation. Wachsler Decl. ¶¶ 7-10. The declaration also identifies text conversations with Ecoplast and Home Depot personnel and explains that his ordinary business practice was principally telephone or email. Id. ¶¶ 8-9.

The opposition does not ask the Court to infer compliance from production volume. It asks the Court to review relevant context rather than Weather Brands' inference, without basis, that no production necessarily means intentional concealment.

**B.    The Goldstein-Cohen Exports Do Not Establish Lost, In-Period Merits Evidence.**

Weather Brands first submitted the Goldstein-Cohen Exports with its July 7 letter. ECF No. 106 & Exs. B-C. Benjamin "Benjy" Goldstein is Weather Brands' managing member, and Joseph Cohen is associated with All Season Power; both participated in the chats. Wachsler Decl. ¶¶ 17-22. Weather Brands did not identify the source device, collection method, completeness, or preservation of native conversations and media. Steinmetz Decl. ¶ 17. The exports contain "<Media omitted>" placeholders and are not a complete record. Wachsler Decl. ¶¶ 21-24.

Weather Brands describes the excerpts as thirty-eight keyword "hits." The audit is straightforward. Seventeen of the thirty-one highlighted entries in the Goldstein export are the sender label "Benjy Goldstein." They say nothing about the substance of a message. The fourteen substantive Goldstein highlights are dated in 2026. The seven Cohen highlights are dated in 2022 or 2026. None of the thirty-eight highlighted entries is a substantive hit within the 2023-2025 period on which Weather Brands bases its motion. Steinmetz Decl. ¶¶ 19-20. The motion never performs that date-and-content analysis, instead treats out-of-period communications as if they were in-period business evidence, and ignores the fact that these allegedly existing documents would be in Plaintiffs' possession.

The single January 2, 2025 "This message was deleted" notation is not among the thirty-eight highlighted keyword hits. It discloses no content and does not establish who deleted the item, when any deletion occurred, why it occurred, whether it was responsive, or whether it is recoverable. Steinmetz Decl. ¶ 19; Wachsler Decl. ¶¶ 21-24. The deletion could have come from either side. Mr. Wachsler states that he does not recall the content or reason, that ordinary deletions may involve a typo or draft, and that he did not delete a message to conceal evidence or frustrate discovery. Wachsler Decl. ¶ 23.

Weather Brands also relies on transcripts of two voice memos. The January 12, 2026 memo offered to open Mr. Wachsler's "books," texts, and WhatsApp; the April 22, 2026 memo said an older phone contained original texts and WhatsApp communications with Cohen that could be downloaded. Colvin Decl. Ex. Q at 1-2. Mr. Wachsler explains that the older Cohen communications concerned 2022 discussions about possible employment, not the BLUE HEAT or BLUE FIRE claims. Wachsler Decl. ¶¶ 7, 18, 25. The statements do not establish that the device contains responsive 2023-2025 evidence, that any such evidence was lost, or that Mr. Wachsler acted with an intent to deprive Weather Brands of its use.

The context of the 2026 communications also matters to materiality and prejudice. Mr. Wachsler states that most or all of his 2026 communications with Goldstein and Cohen were efforts to resolve the litigation and avoid further expense. Wachsler Decl. ¶¶ 17-27. The BMC Parties do not ask the Court to resolve any ultimate admissibility issue on this motion. They submit only that settlement-oriented 2026 communications and 2022 employment discussions cannot be transformed, without evidence, into proof that unknown 2023-2025 messages would establish confusion, deception, dilution, or copying.[5]

**C.      Exhibit R Is a Characterization of Produced Evidence, Not Proof of Missing Messages.**

Weather Brands' Exhibit R is a two-page chart counsel prepared from eleven document families produced by the BMC Parties. Colvin Decl. Ex. R. The chart labels those documents "actual confusion," but it does not establish that a sender misunderstood source, sponsorship, or affiliation. It instead presents Weather Brands' merits interpretation of records already in its possession.

---

[5] The BMC Parties do not seek a ruling here that any communication is inadmissible under Federal Rule of Evidence 408. The settlement context is relevant to the narrower question whether the 2026 snippets support Weather Brands' assertion that unknown messages necessarily concern infringement, confusion, or copying.

Mr. Wachsler supplies a different commercial explanation. He states that "blue heat" was regularly used as industry shorthand for a blue, heat-generating calcium-chloride product; BH20 was an internal legacy code later changed to BF20; the packaging identified the product as BLUE FIRE; and he recalls no customer or vendor saying it ordered one source's product but received another's. Wachsler Decl. ¶¶ 28-32. He also identifies public listings using "heat," "fire," "blue," and "pellets" descriptively in the ice-melt market. Id. Exs. A-B. Weather Brands may dispute that account. It is a merits issue, not proof that an unidentified text must say what Weather Brands proposes.

**D. Discovery Remains Open, and Plaintiffs Have Tried to Supersede the Pleading Targeted by the Motion.**

Weather Brands filed the sanctions motion on July 17. ECF Nos. 123-126. The July 10 scheduling order leaves document discovery open through August 31 and fact discovery through October 30, and  depositions have not yet occurred. ECF No. 118 at 2.

On July 24, the BMC Parties filed a motion for leave to file a First Amended Answer, affirmative defenses, and counterclaims. ECF Nos. 130-132. Later in the same-day docket sequence, Weather Brands filed the Second Amended Complaint (the "SAC") as ECF No. 133. The SAC adds All Season Power as a plaintiff, pleads its rights under the February 6, 2024 license, and claims its own lost sales, profits, retailer injury, distribution disruption, and goodwill harm. SAC ¶¶ 10-13. The original Answer at ECF No. 55 responded to the First Amended Complaint. It is the Second, Third, Fourth, Seventh, and Eighth defenses in that superseded pleading that Weather Brands' proposed order identifies by number. The pleading change does not erase any discovery obligation. It does, however, expose the impropriety of deciding the expanded case by striking selected portions of an answer that no longer responds to the operative

8

complaint. The Court should address any proven discovery shortfall with a discovery remedy, leaving the sufficiency and scope of defenses to the ordinary pleading process.

## LEGAL STANDARDS

I. **Rule 37(b) Requires a Clear Order and a Just, Related, and Proportionate Response.**

Rule 37(b)(2)(A) authorizes sanctions when a party fails to obey an order to provide or permit discovery. The predicate must be a "clearly articulated order of the court requiring specified discovery." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991). Once the Rule is triggered, a court may consider the full discovery record in selecting a remedy. *J.C. v. Zimmerman*, 150 F.4th 136, 145-47 (2d Cir. 2025); *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010).

The discretion is broad but not unbounded. Rule 37 authorizes only orders that are "just," and due process requires that a merits sanction be "specifically related to the particular claim" implicated by the discovery failure. *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). The severity of the sanction must be commensurate with the noncompliance. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007). Striking a pleading or imposing broad preclusion is a harsh remedy generally reserved for willful, prolonged, or bad-faith misconduct after lesser measures have failed. See *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009); *Salahuddin v. Harris*, 782 F.2d 1127, 1131-32 (2d Cir. 1986).

The Second Circuit considers four nonexclusive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal*, 555 F.3d at 302. These factors guide

9

appropriate remedy, they do not make every missed deadline merits-dispositive. *J.C.*, 150 F.4th at 146-48. *J.C.* affirmed targeted sanctions of $5,000 and $3,000, at the less severe end, even after months of missed obligations, known responsive documents, and repeated warnings. *Id*. at 147-50.

## II.    Rule 37(e) Governs Merits Sanctions Premised on Supposedly Lost Discovery

When the asserted misconduct concerns ESI that should have been preserved but "is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," Rule 37(e) supplies the governing framework. Fed. R. Civ. P. 37(e). The threshold inquiry therefore asks whether relevant ESI existed, should have been preserved, was actually lost, and cannot be restored or replaced. If those predicates are not established, the Rule authorizes no sanction for loss.

If the threshold is met and another party suffers prejudice, Rule 37(e)(1) permits measures "no greater than necessary to cure the prejudice." The more severe measures of presuming information unfavorable, an adverse-inference instruction, dismissal, or default are available "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(1)-(2). The 2015 Advisory Committee Note cautions that subdivision (e)(1) measures may not have the effect of sanctions reserved to subdivision (e)(2), such as precluding a central claim or defense.

*Hoffer v. Tellone* confirms that rule in this Circuit. 128 F.4th 433, 437-45 (2d Cir. 2025). It holds that negligence, gross negligence, or even knowing conduct does not satisfy Rule 37(e)(2); the movant must prove, by a preponderance, the specific intent to deprive another party of the lost ESI's use. *Id*. at 438, 443-45. A movant cannot bypass that requirement by relabeling an inference about destroyed electronic messages as a generic Rule 37(b) remedy.

10

### III.     Rule 26(g) Turns on a Particular Certification and an Objectively Reasonable Inquiry When It Was Made.

Rule 26(g)(1) requires an attorney to sign every discovery disclosure, request, response, or objection and certifies, after reasonable inquiry, that the submission is consistent with the rules and existing law, not interposed for an improper purpose, and neither unreasonable nor unduly burdensome. The inquiry is judged objectively under the circumstances existing when the certification was made.[6] See Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment. The Rule does not impose strict liability for every later-discovered error, nor does it make counsel the guarantor of facts beyond a reasonable investigation.

A Rule 26(g) sanction must be tied to an identified certification and responsible signer. *Kyros Law P.C. v. World Wrestling Ent., Inc.* requires targeted responsibility and careful apportionment. 78 F.4th 532, 545-46 (2d Cir. 2023); *Metropolitan Opera Ass'n v. Local 100*, 212 F.R.D. 178, 219, 224-25 (S.D.N.Y. 2003), followed a nineteen-month record of false representations and obstruction. *Gardner-Alfred v. Federal Reserve Bank of New York*, 143 F.4th 51, 77-79 (2d Cir. 2025), involved almost a year of discovery, repeated violations, intentional withholding of identified damaging documents, numerous false completeness statements, full briefing, and a hearing. Those authorities demand record-specific analysis, not a presumption that an imperfect client collection makes counsel sanctionable.

---

[6] The Advisory Committee Note states that certification rests on reasonable inquiry and permits appropriate reliance on client assertions. Counsel need not disclose privileged communications, but must reasonably seek assurance that the client supplied available responsive information and documents.

11

## ARGUMENT

**I. Weather Brands Has Not Established the Predicates for an Adverse Inference or Any Other Merits Sanction.**

**A.    The Motion Does Not Show That Relevant ESI Was Lost or Cannot Be Restored or Replaced.**

Weather Brands alternates between two theories: Defendants never searched their mobile sources, or they searched and deleted what the search would have found. ECF 124 at 5, 9, 12. Those theories are not interchangeable. A failure to perform an ordered search may support a compliance remedy under Rule 37(b). An inference that messages were destroyed and would have been unfavorable depends on Rule 37(e)'s separate findings. The motion proves neither loss nor non-replaceability.

First, the Goldstein-Cohen Exports demonstrate that at least portions of the Goldstein and Cohen conversations exist. Weather Brands obtained them from its own side of the chats. That is evidence of an available replacement source, not proof that the information is irretrievably lost. Rule 37(e) ends the spoliation inquiry when the information "can be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The proper next step is to obtain complete exports, media, and metadata from the participants and compare them to a defensible collection of available defense sources.

Second, the January 2, 2025 deletion notation does not establish loss. WhatsApp's export language does not reveal the missing content, who deleted it, when, whether a participant copy remains, whether a backup contains it, or whether it was ever responsive. A generic "<Media omitted>" marker similarly may reflect only that the export excluded an attachment. Wachsler Decl. ¶¶ 21-24. Weather Brands supplies no declaration from a forensic examiner and no testimony from Goldstein, Cohen, or a platform custodian establishing the status of the data.

12

Third, the voice memos do not establish any missing, in-period ESI. The April 22 memo refers to an older phone and 2022 communications with Cohen—outside the January 1, 2023 through December 31, 2025 period Weather Brands invokes and outside the events alleged in this action. Colvin Decl. Ex. Q at 2; Wachsler Decl. ¶¶ 7, 18, 25. Those materials therefore cannot establish that relevant ESI was lost, much less that it cannot be restored or replaced.

Fourth, Weather Brands identifies no particular missing communication. It does not name a date, counterparty, subject, or in-period exchange absent from the record. It extrapolates from a small set of out-of-period Goldstein-Cohen Exports and assumes an entire hidden universe. Rule 37(e)'s threshold cannot be satisfied by assuming both the existence and unfavorable content of the same unknown evidence. See Hoffer, 128 F.4th at 445-46 (affirming denial where evidence did not establish the purported ESI existed or was destroyed with the required intent).

**B.    Weather Brands Has Not Shown Prejudice from Any Lost Information.**

Prejudice requires more than the proposition that communications can be relevant. It asks whether the loss of specific information impairs Weather Brands' ability to litigate. Here, the alleged evidence remains available from multiple directions. Goldstein and Cohen possessed participant copies, which they failed to produce themselves. Weather Brands has its own managing member and ASP executive available for testimony.

The thirty-eight-hit presentation does not establish substantive prejudice. None of the thirty-eight highlighted hits is substantive, in-period content. Seventeen hits are merely a sender name. The other hits are 2022 or 2026 entries, outside the court ordered time periods. Steinmetz Decl. ¶ 19. The one in-period deletion notation has unknown content and is not a keyword hit. Weather Brands has identified thirty-seven irrelevant documents, and one document unrelated to search terms with unknown content. Weather Brands' assertion that Mr. Wachsler conducts business primarily through text messages is also wholly unsupported by the record. ECF No. 124

13

at 5-6, 13. Weather Brands has therefore not identified proof of any relevant proposition that they have been prejudiced.

The Motion's assertion that texts are "the most probative contemporaneous evidence" is also unsupported by the record. ECF 124 at 10. According to Mr. Wachsler, nearly all, if not all, of BMC's communications with Home Depot and vendors occurred by telephone or email, and the BMC Parties produced a large email collection. Wachsler Decl. ¶¶ 8-16. Weather Brands has not shown that any missing text, as opposed to produced email or third-party records, uniquely bears on product naming, packaging, customer communications, or source confusion. That lack of a demonstrated evidentiary gap defeats the requested inference and weighs strongly against any merits preclusion.

## C.    The Motion Offers No Evidence of an Intent to Deprive.

Rule 37(e)(2) requires the intent to deprive another party of the information's use in litigation—not merely an intentional act, a negligent search, or even knowing conduct. *Hoffer*, 128 F.4th at 438, 443-45. Weather Brands' proof does not approach that standard.

Mr. Wachsler states under penalty of perjury that he did not intentionally delete or destroy a message, device, backup, or other information to prevent its use in this action; did not withhold unfavorable email; and attempted to gather the sources counsel requested. Wachsler Decl. ¶¶ 10-16, 33-34. The extensive email collection, purchase of equipment, technical assistance, and production effort corroborate an attempt to comply, even if the mobile component was not adequately documented. That conduct is inconsistent with a plan to deprive Weather Brands of evidence.

The Goldstein-Cohen Exports communications also cut against concealment intent. Mr. Wachsler communicated directly with Goldstein and Cohen, the people whose copies Weather Brands now uses. He could not reasonably deprive those participants of messages already

14

delivered to them, and in their current possession. Wachsler Decl. ¶ 27. The proposed inference of a calculated attempt to prevent Plaintiffs from using the communications is far from plausible.

Weather Brands relies principally on the one unknown deletion notation and the statement about an older phone. Neither establishes litigation-directed intent. The notation's content and timing are unknown. The voice memo openly volunteered that communications could be shown or downloaded for an unrelated time frame. Colvin Decl. Ex. Q at 2. An open offer to display a source is difficult to reconcile with a specific plan to deprive an opponent of that source. At minimum, the competing inferences require technical facts and credibility findings; they cannot support a severe sanction on the present record.

**D.      Rule 37(b) Does Not Permit Weather Brands to Evade Rule 37(e)'s Requirements.**

Weather Brands formally cites Rules 37(b) and 26(g), yet asks the factfinder to presume that messages were "withheld or destroyed" and would prove actual confusion, deception, dilution, copying, knowledge, and lack of independent development. ECF No. 126 at 3. To the extent that relief rests on ESI that was allegedly lost or destroyed, Rule 37(e)—not Rule 37(b)—governs. The requested adverse inference is therefore available only upon a finding under Rule 37(e)(2) that Defendants acted with intent to deprive Weather Brands of the information's use in this litigation.

Rule 37(b) may address a failure to obey a clear discovery order, including through a proportionate sanction for noncompliance. It cannot be used to evade Rule 37(e)(2)'s separate intent requirement and presume the unknown contents of allegedly lost ESI.

Even apart from Rule 37(e), due process requires a merits sanction to be just and specifically related to the claim affected by the discovery failure. *Ins. Corp. of Ir.*, 456 U.S. at 707. No identified missing message connects the alleged source-search shortfall to all the

15

elements Weather Brands would have deemed established. The requested inference therefore fails under both Rules.

## II. The Rule 37(b) Factors Do Not Support Striking Defenses or Broad Merits Preclusion.
### A. The First and Second *Agiwal* Factors Do Not Support Merits-Dispositive Relief

The first *Agiwal* factor considers willfulness or the reason for noncompliance. 555 F.3d at 302. The record does not support willful defiance. The BMC Parties were actively working through the collection, had arranged a meet-and-confer, and at the June 11 conference requested two additional weeks to complete review of roughly 15,000 documents. June 11 Tr. 8:13-24, 11:16-25, 12:14-19. Weather Brands refused that request, demanded production by the following night, and filed its sanctions letter. Id. at 8:17-23. The Court granted the requested extension to June 25. Id. at 14:19-24. That sequence may support a direction to complete the production, but it does not establish willful suppression of relevant evidence.

The context of the actual collection effort matters. BMC is a small, largely one-person operation. Mr. Wachsler handled ordinary communications, spent hundreds of hours on collection, engaged IT assistance, bought new equipment, and delivered tens of thousands of native files. Wachsler Decl. ¶¶ 4-16. Counsel tested terms, investigated hit counts, communicated the May 20 ruling, received roughly 15,000 documents by June 11, and supervised a production exceeding 1.16 million Bates-numbered pages or items. Steinmetz Decl. ¶¶ 4-13. Those facts rebut the claim of unreasonable delay and that Defendants simply "chose" not to participate. Weather Brands' inference of willfulness also depends on information that counsel did not possess when the challenged statements were made. The Goldstein-Cohen Exports were first placed before the Court on July 7. Steinmetz Decl. ¶ 17. Their actual date-and-content analysis undercuts rather than confirms Weather Brands' theory. Counsel's June 11 statement, "I believe

16

they were," was an accurately reported belief based on the collection reported by the client. June 11 Tr. 12:13-25. The June 30 statement reflected the same understanding before the Goldstein-Cohen Export materials appeared. Steinmetz Decl. ¶¶ 28-30. This is far from proof that counsel or client knew a representation was false when made.[7]

Weather Brands' willfulness theory also measures compliance against the wrong benchmark. The Court's May 20 order directed one complete search of email and text sources using all twenty terms and stated that no further email-or-text search would be required absent good cause. May 20 Tr. 18:5-20. Weather Brands nonetheless evaluates the June 25 production against the broader sweep of its original January 30 requests, and treats the gap between the two as evidence of bad faith. Courts in this District reject that maneuver. In *Maxwell v. N.Y. Univ.*, the movant faulted a production for omitting material outside the scope the court had assigned to the request at issue; the court held that it had "no reason to doubt the veracity" of the producing party's representation that it had produced everything responsive to the request as construed. 2009 U.S. Dist. LEXIS 45859, at 39-41 (S.D.N.Y. June 1, 2009). The same analysis applies here. Compliance is measured against the May 20 protocol the Court actually entered, not against the demands Weather Brands would have preferred.

Weather Brands offers no evidence that any BMC Party decided to withhold a responsive text. It offers the fact of a nonproduction and asks the Court to supply the motive. That is not how sanctionable conduct is established. *See Perez v. Metro Dairy Corp.*, No. 13-CV-2109, 2016 WL 755628, at 4 (E.D.N.Y. Feb. 25, 2016) ("[s]anctionable conduct must be proven by clear and convincing evidence"). In *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, the court denied a

---

[7] It appears that Plaintiffs' counsel withheld these allegedly responsive participant-side conversations from Plaintiffs' own production and then used selected excerpts to manufacture a sanctions accusation against Defendants. The excerpts came from Plaintiffs' own managing member and executive; Plaintiffs had access to the conversations and never produced complete exports.

motion to compel where, "other than innuendo," the movant offered no substantive evidence of deliberate withholding. No. 09CV601(ADS)(AKT), 2009 U.S. Dist. LEXIS 104020, at 9 (E.D.N.Y. Nov. 9, 2009). If innuendo is not enough to justify a motion to compel, it is logically not enough to justify a more severe motion for sanctions. Mr. Wachsler's sworn statement that he searched the mobile messaging available on his phone and did not delete or destroy information to prevent its use in this litigation is a good-faith affirmation, and such an affirmation ordinarily resolves a dispute over nonproduction, because "one cannot be required to produce the impossible." *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016); *see also Mintz Fraade Law Firm, P.C. v. Brady*, No. 19-CV-10236 (JMF), 2021 U.S. Dist. LEXIS 85318, at 8 (S.D.N.Y. May 4, 2021) ("[T]here is no basis to impose sanctions for a failure to produce documents that do not exist."). Weather Brands may test the veracity of that affirmation through the ordinary tools of discovery, but it may not substitute disbelief for proof.

The second *Agiwal* factor asks whether lesser sanctions would be efficacious. The harsh remedies Weather Brands seeks are reserved for cases in which lesser measures have been tried and have failed. *Agiwal*, 555 F.3d at 302-03; *Salahuddin*, 782 F.2d at 1131-32. Here, none has been tried. The Court has imposed no prior sanction on the BMC Parties and    has ordered no forensic collection.    . Weather Brands asks the Court to immediately move directly to the far end of the Rule 37(b) spectrum without basis. The ordinary and sufficient measure is already available from Plaintiffs' own side: Goldstein and Cohen can export the complete conversations from the participant-side accounts Weather Brands used for this motion. Weather Brands has identified no information uniquely available from Defendants.

A court should not award sanctions on speculation when the ordinary tools of discovery remain available to resolve the underlying question. *See Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14cv2275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396, at 74 (S.D.N.Y. Nov. 4, 2016) ("mere speculation that such documents exist is an insufficient basis to compel the production of such documents, or to award sanctions"); *see also Falcone v. Gouse*, No. 84 CIV. 4996 (KMW), 1990 U.S. Dist. LEXIS 6547, at *6 (S.D.N.Y. May 30, 1990) (denying cross-motions for sanctions because granting them would require the court to engage in "inappropriate speculation"). The second *Agiwal* factor weighs decisively against striking defenses or imposing merits preclusion.

Weather Brands has tried this same expansion before. It argued that the QuickBooks ruling required purchase orders and other source documents beyond transaction-level data; the Court rejected that revision, stating, "This is not summary data. This is transaction data," and "I ordered the transaction data from the QuickBooks system to be produced." July 10 Tr. 8:2-10. On specimens, the Court framed the question as whether Defendants had produced all specimens in their possession, and Defendants confirmed they had; the Court then moved on without imposing a duty to create or obtain a BLUE FIRE bag they did not possess. *Id*. at 10:5-11:12. Weather Brands now repeats the tactic by treating a defined search protocol as proof that additional, unidentified texts must exist.

### B. The Third and Fourth *Agiwal* Factors Do Not Justify Liability-Determining Relief.

The third and fourth *Agiwal* factors address the duration of the noncompliance and whether the noncompliant party was warned. 555 F.3d at 302. Both cut sharply against the relief Weather Brands seeks.

The relevant chronology is short. The Court fixed the search protocol on May 20. May 20 Tr. 18:5-20. The email-and-text production was initially due June 5, and the Court extended that deadline to June 25 after hearing about the collection burden. June 11 Tr. 12:20-14:25. The BMC Parties produced more than 1.16 million Bates-numbered pages or items on June 25. ECF No. 104 at 1 n.1. On July 10, the Court directed account-specific verification, and the BMC Parties supplied it three days later, identifying all five bluemineral.com and dartsp.com accounts and confirming that each had been searched with the ordered terms. July 10 Tr. 15:15-16:14; ECF No. 121. Weather Brands moved for sanctions on July 17. ECF Nos. 123-126. Fewer than nine weeks separate the entry of the search protocol from this motion. The record during that period was active, not defiant: the BMC Parties were working through roughly 15,000 collected documents, requested two weeks at the June 9 meet-and-confer, and Weather Brands refused and demanded next-day production before filing its letter. June 11 Tr. 8:13-24, 11:16-25. The Court granted the requested two weeks and extended the deadline to June 25. *Id*. at 14:19-24.

That type of record is not one on which courts strike affirmative defenses. *Agiwal* involved repeated noncompliance with multiple discovery orders over a sustained period, after explicit warnings. 555 F.3d at 302-03. *Metropolitan Opera* followed a nineteen-month course of false representations and obstruction. 212 F.R.D. at 219, 224-25. *Gardner-Alfred* involved nearly a year of discovery, repeated violations, the intentional withholding of identified damaging documents, and numerous false completeness statements. 143 F.4th at 77-79. *J.C.* involved months of missed obligations, documents known to be responsive, and repeated warnings, and still only produced monetary sanctions of $5,000 and $3,000, at the least severe end of the range. 150 F.4th at 147-50. Weather Brands cites no authority imposing merits-dispositive sanctions on

20

a nine-week record containing a single extended deadline, and the BMC Parties are aware of none. The interval comparison that Plaintiffs' motion omits is telling.

The contrast between these cases and the present record is stark. There is no judicial finding that any representation by the BMC Parties or their counsel was false. There is no pattern. The motion points to one oral answer and one letter, made nineteen days apart, each consistent with what counsel then understood. Steinmetz Decl. ¶¶ 28-30. There is no specifically identified damaging document that anyone withheld. Indeed, there is no identified document at all. There was no evidentiary hearing, and Weather Brands did not request one. What the motion offers in place of that record is thirty-eight highlighted entries, seventeen of which are the sender label "Benjy Goldstein" and the remainder of which fall in 2022 or 2026, outside the period Weather Brands itself says governed production, together with a single deletion notation of unknown content, authorship, timing, and cause. Steinmetz Decl. ¶¶ 19-20.

Even if those thirty-eight entries were relevant documents, it would be speculation to claim that Defendants must be withholding further responsive documents, let alone to claim that Defendants are engaging in sanctionable conduct. In this case however, those thirty-eight entries are trivial, outside the relevant time period, or of unknown content. Characterizing Plaintiffs' reasoning as "speculation" is an understatement. Speculation will not support sanctions against a party. *See Orellana v. Lopez*, 2026 U.S. Dist. LEXIS 74265, at *9 (S.D.N.Y. Apr. 3, 2026); *Scantibodies Lab., Inc. v. Church & Dwight Co.*, No. 14cv2275 (JGK) (DF), 2016 U.S. Dist. LEXIS 154396, at *74 (S.D.N.Y. Nov. 4, 2016); *Khaldei v. Kaspiev*, 961 F. Supp. 2d 564 (S.D.N.Y. 2013); *Dilworth v. Goldberg*, 3 F. Supp. 3d 198 (S.D.N.Y. 2014); Perez, 2016 WL 755628, at *4 ("sanctionable conduct must be established by clear and convincing evidence");

21

*see also Falcone*, 1990 U.S. Dist. LEXIS 6547, at *6 (Denying motions for sanctions where it would cause the court to engage in speculation).

The warning factor is weaker still. The Court has imposed no prior sanction, and has never admonished Defendants that continued conduct would result in preclusion or the striking of defenses. To the contrary, at the July 10 conference the Court observed that Weather Brands had "no need" for the motion, did not "need to bring one," and could wait until the end of the litigation. July 10 Tr. 17:11-18:7, 29:20-25, 31:1-16. A party cannot be found to have disregarded a warning that was never given.

Plaintiffs then attempt to distance themselves from the lack of a formal warning by characterizing standard elements of any case, like meet-and-confers, discovery conferences, and court rulings on scope, as ample warnings. This premise defies reason. If this were true, any counsel in any case before this Court would be adequately warned of sanctions by simply going through standard discovery protocols. What the record does show is an active, ongoing meet-and-confer process over search terms in which the BMC Parties participated at every stage. The BMC parties proposed test searches, reported hit counts, investigated volume anomalies, accepted the Court's resolution of the four disputed terms, and produced documents in response. Steinmetz Decl. ¶¶ 4-13. This is a discrete, recent, and largely technical discovery dispute between litigants who have been actively negotiating protocol, not an act of willful defiance. Weather Brands' conviction that the production must nonetheless be incomplete is an assumption, and an assumption unsupported by any identified missing document is not a basis for sanctions. *See Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 435 (S.D.N.Y. 2011) (a party that "has not specifically identified any withheld documents," and that possesses its own copies

22

of the communications at issue, "cannot simply rely on speculation" that its adversary is withholding documents).

### C. The Requested Sanctions Have No Evidentiary Nexus and Would Decide Essential Elements of the Case.

A Rule 37(b) sanction must be "just," and a sanction that reaches the merits must be "specifically related to the particular claim which was at issue in the order to provide discovery." *Ins. Corp. of Ir.*, 456 U.S. at 707; *see Shcherbakovskiy*, 490 F.3d at 140. Weather Brands requested relief bears no such relationship to the conduct it describes.

As a preliminary matter, Weather Brands asserts that Mr. Wachsler conducted his business primarily by text message, and reasons from that premise that the unproduced texts must be the most probative contemporaneous evidence in the case.    ECF No. 124 at 5-6, 10, 13. Nothing in the record supports the premise. Mr. Wachsler states that his ordinary business practice was principally telephone and email, and identifies the limited text conversations he had with Ecoplast and Home Depot personnel. Wachsler Decl. ¶¶ 8-9. Weather Brands does not rebut that showing. It asserts the opposite, with no citation to the record, and moves on. A merits sanction cannot rest on a characterization of the record that the record contradicts.

The evidentiary nexus continues to fail at every step. Weather Brands has not identified information about a single missing message like a date, counterparty, subject, or in-period exchange. It cannot say what any unproduced message would have shown. It nonetheless asks the Court to determine that consumers were actually confused, that the BMC Parties acted deceptively, that Weather Brands' mark was diluted, that BMC copied, that it knew of Weather Brands' rights, and that it did not develop its product independently. ECF No. 126 at 2-4. Those are the disputed elements of the case. And sanctions premised on a failure to produce require, at a minimum, that the documents sought exist or previously existed. *M.G. v. N.Y.C. Dep't of Educ.*,

No. 13-CV-4639 (SHS) (RWL), 2026 U.S. Dist. LEXIS 145194, at 24 (S.D.N.Y. June 30, 2026); *see Mastr Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Est. Sec. Inc*., 295 F.R.D. 77, 86 (S.D.N.Y. 2013) (that the sought-after evidence "actually existed and was destroyed" is "a necessary, but insufficient, condition" for sanctions). Weather Brands cannot establish existence, and it plainly cannot establish content.

Exhibit R further illustrates the problem. Counsel assembled eleven document families the BMC Parties produced. This exhibit reflects a legacy internal product code later changed from BH20 to BF20 and descriptive industry usage of "blue heat" for a blue, heat-generating calcium-chloride product, with the exhibit captioned "actual confusion." Colvin Decl. Ex. R; Wachsler Decl. ¶¶ 28-32. No customer, vendor, printer, or recipient says he was confused about source, sponsorship, or affiliation. Cherry-picked emails showing legacy labels, internal product codes, and industry shorthand do not permit an inference of likelihood of confusion, especially as the byproduct of a discovery motion. The chart is Weather Brands' merits argument about documents it already possesses, and is an argument contested on the record. Wachsler Decl. ¶¶ 28-32 & Exs. A-B. Granting this motion would convert a contested merits argument into a finding, and that is precisely what a discovery sanction may not accomplish.

The proposed order plainly shows the defect in Plaintiffs' motion. It seeks to strike five affirmative defenses and bar the BMC Parties from contesting confusion, deception, dilution, and copying. ECF No. 126 at 2-4. Read as written, it would preclude Defendants from offering the produced emails, the packaging bearing the BLUE FIRE mark, the physical product samples, the third-party listings using "blue," "heat," "fire," and "pellets" descriptively, and Mr. Wachsler's own testimony. This is evidence that exists, was produced, and has no connection to any text message. In substance, Weather Brands asks the Court to defer to its preferred construction of the

24

facts and to enter judgment on the contested elements of five claims because it doubts the completeness of a mobile-device search. A sanction that silences a party's produced evidence because of a speculative dispute about unproduced evidence is not a remedy for a discovery failure, it is analogous to a merits judgment. *Cf. Orellana*, 2026 U.S. Dist. LEXIS 74265, at 9 (S.D.N.Y. Apr. 3, 2026); *Dilworth,* 3 F. Supp. 3d at 202; *Khaldei*, 961 F. Supp. 2d at 570.

If the Court concludes that a mobile source went unsearched, the sanction that fits the violation is an order requiring the search, the production of whatever it returns, and the reasonable expenses the failure caused. That remedy has a nexus to the conduct. The relief Weather Brands requests does not.

### D. The Second Amended Complaint May Supersede the Pleading That the Motion Targets.

An amended complaint ordinarily supersedes the prior complaint and renders it of no legal effect. *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977); see *Pettaway v. National Recovery Solutions, LLC*, 955 F.3d 299, 303-04 (2d Cir. 2020). The July 24 SAC therefore may supersede the First Amended Complaint to which Defendants' original Answer responded.[8]

There are two issues here. First, the request to strike is potentially directed at a nullity. The Second, Third, Fourth, Seventh, and Eighth defenses that Weather Brands' proposed order identifies by number appear in an answer that no longer responds to any operative pleading, and the BMC Parties' motion for leave to file a First Amended Answer, affirmative defenses, and counterclaims is pending, with Plaintiffs' response due August 7. ECF Nos. 130-132. The Plaintiff seeks to improperly strike the affirmative defenses of an Answer that no longer respond

---

[8]    *Pettaway* permits a court to apply a pending motion addressed to an earlier complaint to an amended pleading when the challenged defects remain. 955 F.3d at 303-04. That procedural flexibility does not make the prior pleading operative or justify striking numbered defenses that have not yet been pleaded in response to the SAC.

to the operative complaint. Defendants Second, Third, Fourth, Seventh, and Eighth defenses were in response to Plaintiff Weather Brands First Amended Complaint, before Intervenor-Plaintiff ASP asserted its rights under the February 6, 2024 license, and claims its own lost sales, profits, retailer injury, distribution disruption, and goodwill harm in the SAC. SAC ¶¶ 10-13. The defenses that will answer the Second Amended Complaint have not yet been pleaded. An order striking their numbered predecessors would at best accomplish nothing or, worse, prejudge defenses that are not before the Court.

Second, the SAC highlights that relief sought by Plaintiffs in this motion belongs to the pleading process rather than to Rule 37. The legal sufficiency of an affirmative defense is tested against the standards that govern pleadings: through a developed factual record that speaks to the veracity of each defense. Weather Brands invites the court to seek the same result through a discovery motion, without connecting any affirmative defense to any allegedly missing text message. The Court should decline Plaintiffs' invitation.

## III. Weather Brands Has Not Established a Rule 26(g) Violation by Counsel.

### A. The Motion Does Not Identify a False Signed Certification Made Without Reasonable Inquiry.

Rule 26(g) applies to a signed discovery disclosure, request, response, or objection. Weather Brands focuses instead on counsel's qualified oral statement at the June 11 conference and the June 30 advocacy letter. ECF 124 at. 8-9. *Metropolitan Opera* teaches that a formalistic label will not immunize a letter that purports to certify discovery compliance. 212 F.R.D. at 219. But the movant still must identify the certification, its signer, the proposition certified, and why the pre-signing inquiry was objectively unreasonable.

Weather Brands identifies none of those elements. Its Rule 26(g) theory rests on two items, and neither is a signed certification. The first is counsel's answer at the June 11 conference

26

to the Court's question whether the email and text searches were complete: "I believe they were." June 11 Tr. 12:13-25. Rule 26(g)(1) applies by its terms to a signed disclosure, request, response, objection, or any other written discovery instruments served under the discovery rules. An oral answer at a status conference is not among them. The second is the June 30 letter stating that the BMC Parties had "no reason to believe" responsive texts existed. ECF No. 105 at 1. That letter is correspondence responding to a meet-and-confer demand, not a response or objection served under Rules 33, 34, or 36. *Metropolitan Opera* holds that a label will not immunize a writing that in substance certifies discovery compliance, 212 F.R.D. at 219, but Weather Brands never undertakes that analysis. It does not identify the signer, the proposition certified, or the discovery instrument to which the certification attaches.

Even if the June 30 letter were treated as a certification, the inquiry is objective and is measured as of the moment the certification was made. Fed. R. Civ. P. 26(g) advisory committee's note to 1983 amendment. As of June 30, counsel had proposed and tested search terms, followed up on results exceeding 10,000 hits, examined whether recurring industry reports were inflating volume, conveyed the Court's May 20 ruling and the complete term list to the client, received roughly 15,000 documents for review by June 11, and supervised a production exceeding 1.16 million Bates-numbered pages or items. Steinmetz Decl. ¶¶ 4-13.

Weather Brands identifies no fact known to counsel on June 30 that contradicted the statement made. The Goldstein and Cohen exports form the evidentiary basis for the assertion that the statement was false, but were first placed before the Court on July 7, a week later. Steinmetz Decl. ¶ 17. And when the Court explained on July 10 that account-specific verification was required, counsel obtained and provided it within three days, identifying all five accounts and confirming the searches. July 10 Tr. 15:15-16:14; ECF No. 121. Rule 26(g) does not impose

strict liability for a representation that later proves to require refinement. It asks whether the inquiry behind the representation was objectively reasonable when it was made, and on this record it was.

Nor has Weather Brands shown that the representation was false at all. Mr. Wachsler has affirmed that the messages from his prior phones for the relevant period were transferred to his current device, that he searched the mobile messaging available on it, and that he did not intentionally destroy a message, device, or backup to prevent its use in this litigation. Wachsler Decl. ¶¶ 7-10. A good-faith affirmation that responsive materials do not exist ordinarily resolves the question, because a party "cannot be required to produce the impossible." *Mason Tenders*, 318 F.R.D. at 42; *see Mintz Fraade*, 2021 U.S. Dist. LEXIS 85318, at 8. Weather Brands holds its own side of the very conversations it says were concealed, and it still has not identified one responsive message the BMC Parties failed to produce. *Trilegiant*, 275 F.R.D. at 435, (holds that this is not enough to carry a movant's burden, and it is certainly not enough to sanction counsel.).

Finally, the requested remedy disregards the apportionment that Rule 26(g) requires. Weather Brands seeks fees jointly and severally against the BMC Parties and their counsel without identifying which signer certified what, which conduct is attributable to counsel as opposed to the client, or what portion of any expense flows from the asserted violation. ECF No. 126 at 3-4. *Kyros* forecloses that approach, requiring targeted responsibility and careful apportionment before a Rule 26(g) sanction may issue. 78 F.4th at 545-46. Because Weather Brands has identified no certification, no objectively unreasonable inquiry, and no basis for allocation, the Rule 26(g) request should be denied.

## **CONCLUSION**

The motion has not shown that relevant information was lost, caused prejudice, or was destroyed with intent to deprive. It has not established a nexus between any unidentified missing message and the five defenses it targets. It has not shown that counsel made an objectively unreasonable signed certification. The Court should therefore deny Weather Brands' requests to strike defenses, impose broad merits preclusion, give an adverse inference, deem liability facts established, and impose sanctions under Rules 37(b) and 26(g).

Dated: New York, New York
     July 31, 2026

         **GARSON, SÉGAL, STEINMETZ,
FLADGATE LLP**

         *By: /s/ Michael M. Steinmetz*
Michael M. Steinmetz
225 Broadway, 37th Floor
New York, New York 10007
Tel.: (212) 380-3623
Email: ms@gs2law.com
*Attorneys for Defendants Blue Mineral
Corporation and Barry Wachsler*

29

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum contains 8594 words, including footnotes and excluding the caption, tables of contents and authorities, signature block, and this certificate. The memorandum uses 12-point Times New Roman type, with 10-point footnotes, one-inch margins, and double-spaced body text.

*/s/ Michael M. Steinmetz*