

Michael Steinmetz
225 Broadway, 37th Floor
New York, NY 10007
Tel. + 1 212.380.3623
ms@gs2law.com

*Via ECF*                                                                                      August 12, 2026

Hon. Denise L. Cote
United States District Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:**     *Weather Brands LLC v. Blue Mineral Corporation, et al., No. 1:25-cv-02423*
> **BMC Parties' Request for Discovery Conference Regarding Weather Brands'**
> **Discovery Deficiencies**

Dear Judge Cote:

Blue Mineral Corporation ("BMC") and Barry Wachsler (together, the "BMC Parties") respectfully submit this Letter-Motion to request a discovery conference to address Weather Brands LLC's ("Weather Brands") ongoing discovery deficiencies. At the July 10 conference, the Court invited the BMC Parties to return after completing the meet-and-confer process. *See* July 10 Tr. 32:7–33:12. Counsel conferred for two hours on June 9, again on July 9, and repeatedly in writing, but Weather Brands' continues to refuse to participate in good faith, despite continued gamesmanship with its meritless sanctions motion practice. Indeed, to date, Weather Brands has not disclosed the searches underlying its own production, has relied on selected messages without producing the complete conversations, and has produced the operative license amendment and royalty records with their substance obscured. The Court's intervention is therefore now necessary.

### I.     Weather Brands' Undisclosed Electronic Searches and Missing Communications.

Despite repeated written demands and multiple meet-and-confers, Weather Brands has not identified a single search term it ran or any email or text-message source it searched. For example, on May 18, Weather Brands obtained a twenty-term search of the BMC Parties' electronic communications; two days later, the BMC Parties proposed 28 reciprocal terms. Weather Brands has not confirmed that it ran any of those terms, provided hit counts, or proposed narrower alternatives. Instead, it declared its production "complete" based on a "reasonable search" and stated that it has no "email server." ECF Nos. 96-3, 101. The absence of an in-house server says nothing about whether Weather Brands searched its email and messaging accounts. Until it identifies what it searched and how, its completion representation remains unsupported.

Moreover, Weather Brands' sanctions papers rely on WhatsApp excerpts among Wachsler, its managing member Benjamin "Benjy" Goldstein, and ASP's CEO Joseph Cohen. *See* ECF Nos. 106, 123–125. Yet it has not produced those same messages or underlying Goldstein and Cohen communications. RFP Nos. 10 and 19 require those materials because they concern confusion or affiliation and when Weather Brands learned of Defendants. Having used isolated messages to

accuse the BMC Parties of wholly speculative discovery misconduct, Weather Brands should produce the complete context.[1]

## II.    Weather Brands' Redacted License and Royalty Production.

Weather Brands' commercial production presents the same problem. ASP publicly filed the February 2024 License Agreement to support intervention, but Weather Brands later produced the January 2026 First Amendment at WB 050275–050280 with nearly every operative provision redacted.[2] It also produced royalty statements with material figures obscured, even though both sets of documents were designated Highly Confidential – Attorneys' Eyes Only. In its July 31 response, Weather Brands did not identify privilege, personal information, unrelated products, or any provision-specific basis for a redaction; it asserted only that no responsive material "relating to royalties on ice melt products" had been redacted. That assertion neither identifies the information withheld nor permits Defendants or the Court to evaluate the redactions.

This issue is central to the operative pleadings because the Second Amended Complaint relies on the license to establish ASP's rights and alleged lost profits. ECF No. 133 ¶¶ 11–13. The concealed provisions may bear on the scope and duration of ASP's rights, Weather Brands' quality-control and enforcement authority, and the calculation and payment of royalties. Weather Brands cannot rely on the agreement and royalty stream as proof of rights and damages while withholding their substance from outside counsel. If a discrete provision concerns an unrelated product, Weather Brands can identify and segregate it, while the existing AEO designation continues to protect genuinely sensitive commercial information.

Accordingly, the BMC Parties respectfully request that the Court direct Weather Brands, within three days, to identify the email and messaging sources and date ranges searched, disclose the terms used and resulting hit counts, and either run the reciprocal terms or propose reasonable alternatives. The resulting production, together with complete Goldstein and Cohen communications—including the full threads and attachments for every excerpt used in motion practice—should be completed within seven days.

The same order can require Weather Brands, within seven days, to produce unredacted AEO copies of the License Agreement, each amendment, and the complete royalty statements and payment records. Weather Brands should also amend its Rule 34 responses to identify what remains withheld and certify when its production is complete.

These requests concern the communications and commercial records Weather Brands relies upon to prove knowledge, confusion, license rights, and damages. Because repeated written and oral conferral has not resolved the deficiencies, the BMC Parties respectfully request the Court's assistance before document discovery closes, and counsel are available Sept 18-20, 25-27, 31-Oct 3.

*/s/ Michael M. Steinmetz*
Michael M. Steinmetz
*Attorneys for Defendants*

---

[1] Weather Brands' March 2 responses promised production after a reasonable search but were never supplemented to identify the Goldstein or Cohen materials. See RFP Resps. Nos. 10, 19.

[2] The February 2024 License Agreement is publicly available at ECF No. 65-3.