PRACTUS

CHRIS COLVIN, Partner
chris.colvin@practus.com
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378

The parties may, on consent, agree to extend fact discovery into the period for expert discovery. The parties shall advise the Court by 9/2/26 if issues raised in the defendants' letter of 8/26 remain unresolved.

Denise Cote
8/27/26

August 27, 2026

**VIA ECF**

Hon. Denise Cote, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 18B
New York, New York 10007

Re: *Weather Brands LLC et al. v. Blue Mineral LLC, et al.*; Case No. 1:25-cv-2423-DLC-SLC

Dear Judge Cote:

Plaintiff Weather Brands LLC respectfully submits this letter in response to Defendants' August 26, 2026 letter requesting a discovery conference (Dkt. 160). Defendants filed that paper a couple of hours after the parties held a two-hour meet and confer. During that extended meeting, Plaintiffs: (1) attempted to understand a series of vague and even incoherent bullet-point sentence fragments recently emailed by Defendants (not a proper "agenda" as Defendants represented);[1] and (2) agreed to confer with their clients and to quickly revert in a good faith attempt to accommodate Defendants' recent demands.

Defendants continue their pattern of abusing the meet and confer process. As one example, Defendants make a unilateral request for a 30-day extension of the document discovery deadline, but neglect to mention that they asked Plaintiffs for an extension (for the first time) during yesterday's call. Plaintiffs responded that they would need to confer with their clients, but rather than await a response, Defendants simply filed their extension demand two hours later. Ironically, by the time the letter was filed, counsel had already conferred with their clients and were about to notify Defendants that they would consent to a two-week extension.

Defendants' description of the remainder of the meet and confer is distorted, at best,[2] and fails to provide the Court with the most pertinent information, *i.e.* that Plaintiffs' counsel ***agreed to confer with their clients and to quickly supplement their productions***, to the extent that Defendants' recent demands could be understood and accommodated. Defendants don't tell the Court that Plaintiffs already have produced hundreds of emails from Mr. Goldstein (Weather Brands' managing member) and Mr. Cohen (All Season Power's CEO), which appear to be the

[1] Those bullet point demands are contained in a letter sent by Defendants' counsel Pranav Katti on the evening of Wednesday, August 19, 2026, a few business days prior to the two-hour meet and confer. That mail is attached as Exhibit A. Weather Brands' counsel informed Defendants' counsel of his unavailability due to a family vacation that week, and responded promptly upon return to the office, agreeing to a meet and confer the next day.

[2] Defendants' repeated accusations that Plaintiffs "refused" to take certain steps are highly misleading, as they spuriously treat as "refusals" counsels' genuine, good faith concerns about privilege and work product, and the need to confer with their clients about certain demands recently made by Defendants.

focus of Defendants' first three bullet points.[3] Contrary to Defendants' representation, Plaintiffs' email search terms ***were disclosed*** nearly a month ago. Ex. B (7/30/2026 letter from All Season Power's counsel to Defendants' counsel, disclosing email search terms).[4]

Plaintiffs also agreed to produce images of each of Plaintiffs' ice melt products,[5] permit inspections of product specimens, and permit the specimens to be marked as deposition and trial exhibits. Plaintiffs further agreed to review redactions in royalty and licensing records and to unredact material related to ice melt (a small fraction of Plaintiffs' products). Plaintiffs further agreed to inquire about whether there are additional text messages (including WhatsApp messages) of Mr. Goldstein and Mr. Cohen relating to ice melt and that, if located, those will be searched using those same search terms already used for the emails. There is no "refusal" to cooperate here.

In reality, Defendants' counsel chose to waste most of the two-hour meeting conducting an inappropriate and fruitless "deposition style" interrogation of Plaintiffs' counsel regarding the minutiae of how they worked with their clients over the last several months to search for and produce documents. Plaintiffs' counsel explained that this retrospective interrogation was unproductive and implicated attorney work product and privileged communications,[6] and attempted to refocus on the more appropriate and productive topic of what Defendants believed was missing from Plaintiffs' productions, and what Plaintiffs could do to address those concerns.

Plaintiff respectfully submits that Defendants' demand letter should be denied, as it fails to articulate a meaningful basis for relief, was filed before the meet and confer was complete and is mooted by Plaintiffs' good faith attempts to accommodate Defendants' discovery demands.

Respectfully submitted,

CA Col

Christopher A. Colvin, Esq.
Practus LLP
*Attorneys for Plaintiff Weather Brands LLC*

---

[3] Goldstein emails include those produced at the following Bates numbers: ASP001331, 1348, 1364, 1380, 1398, 1415, 1932, 1933, 1934, 1936, 1940, 1950, 1959, 1968, 1977, 2510, 2520, 2530, 2539, 2548, 2559, 2570, 2580, 2590, 2601, 2612, 2622, 2632, 2644, 2656, 2669, 2683, 2697, 2806, 2807, 2810, 2823, 2836, 3009, 7107, 7117, 7787, 7796, 8076, 8090, 8182, 8261, 8292, 8297, 8512, 8534, 8745, 9285, 9302, 9348, 9365, 9382, 9399, 9417, 9435, 9453, 9472, 9491, 9519, 9772, 9774, 9833, 9857, 9860, 9875, 9891, 9897, 9901, 9905, 9910, 9916, 9921, 9935, 9940, 9945, 9951, 9956, 9963, 9969, 13282, 13292, 13562, 13566, 13751, 13764, 13813, 13866, 13894, 13896, 13902, 13916, 14045, 14179, 14190, 14201, 14212, 14224, 14235, 14247, 14259, 14271, 14284, 14297, 14311, 14378, 14380, 14393, 14396, 14399, 14441, 14445, 14449, 14453, 14458 and 14462. Cohen emails include those produced at the following Bates numbers, as well as hundreds more: ASP000040, 45, 50, 63, 68, 73, 80, 89, 98, 107, 116, 128, 141, 165, 181, 196, 212, 216, 220, 225, 231, 238, 246, 254, 262, 272, 274, 277, 280, 285, 287, 293, 298, 303, 327, 333, 342, 362, 363, 366, 379, 386, 394, 397, 401, 414, 426, 441, 455, 677, 680, 779, 783, 786, 789, 793, 797, 827, 832, 837, 867, 873, 888, 905, 922, 940, 945, 948, 960, 961, 962, 963, 965, 967, 970 and 973.

[4] As Weather Brands has explained to Defendants and the Court, it is an IP licensing company, whose business consists essentially of owning and licensing IP to its exclusive licensee All Season Power. As such, it has a limited need for the types of email correspondence Defendants are demanding. As Plaintiffs have also explained on numerous occasions, because of this limited need, Weather Brands does not maintain its own email server and, instead, utilizes the email server of its exclusive licensee. That server has been searched and responsive emails have been produced.

[5] Some of those product images already have been produced at ASP014486, 14487, 14488 and 14489.

[6] *See, e.g., Brown v. Barnes and Noble, Inc.*, 474 F.Supp.3d 637, 644 (S.D.N.Y. 2019) ("[n]othing in Rule 26(g) obligates counsel to disclose the manner in which documents are collected, reviewed and produced in response to a discovery request.") (citation and internal quotations omitted).

# Exhibit A

**Chris Colvin**

|  |  |
|---|---|
| **From:** | Pranav Katti <pk@gs2law.com> |
| **Sent:** | Wednesday, August 19, 2026 5:07 PM |
| **To:** | Chris Colvin |
| **Cc:** | Michael Steinmetz; Christian Julian Perez; Matthew McFarlane; Diane B. Melnick; Jeffrey A. Lindenbaum |
| **Subject:** | Weather Brands v. Blue Mineral Corp., 1:25-cv-02423-DLC: Items to discuss |

Counsel,

There are several outstanding items that we need to discuss. Are you available on Monday or Tuesday between 12:00–1:00 PM or 3:00–4:00 PM for a meet and confer? The discussion will focus on the following topics:

- Weather Brands' searched email accounts and messaging applications;
- Search terms, date ranges, hit counts, and whether the reciprocal terms were run;
- Complete Goldstein and Cohen communications;
- The basis for each redaction in the First Amendment and royalty records;
- Unredacted AEO production or a privilege/nonresponsiveness log;
- Corrected Rule 34 responses identifying what is being withheld and where responsive documents appear;
- Evidentiary basis for alleged actual confusion and damages;
- Licensing and quality-control records;
- Physical samples of product bags.

Sincerely,
Pranav
--

**Pranav L. Katti** | Associate Attorney
**Garson, Ségal, Steinmetz, Fladgate LLP**
225 Broadway, 37th Floor
New York, NY 10007
**w:** gs2law.com
**e:** pk@gs2law.com
**t:** +1 (212) 380-3623

# Exhibit B

PRACTUS

MATTHEW MCFARLANE, Partner
matthew.mcfarlane@practus.com
1014 W 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633

***via ECF***

July 30, 2026

Miachel Steinmetz, Esq.
GS2 Law PLLC
225 Broadway 37 FL
New York, NY 10007
ms@gs2law.com

Re: *Weather Brands LLC v. Blue Mineral LLC et al.*, No. 1:25-cv-2423-DLC-SLC
**Plaintiff-Intervenor All Season Power LLC's First Document Production**

Dear Counsel:

Provided under separate cover are credentials to download Plaintiff-Intervenor All Season Power LLC's ("ASP") First Document Production, bearing Bates numbers ASP00001 through ASP011611.

In the past, you had asked about search terms. We produced relevant ESI returned after a search of ASP's email database using the following string of keywords, reasonably proposed to return documents relevant to Defendants' Requests for Production Nos. 1-33 in light of ASP's June 15, 2026 objections:

> "Blue Heat" OR "Pellets of Fire" OR "Blue Fire" OR "Flakes of Fire" OR Wachsler OR Barry OR "Blue Mineral" OR BMC OR "BH50" OR "BH20" OR Nightmare OR "Keep it Green" OR "Green Melt"

As you know, ASP's overall business covers many activities entirely irrelevant to this litigation. Therefore, ASP's search was limited those custodians known to participate in the ASP ice melt business. In addition, a manual search was undertaken to identify electronic files and other documents responsive to the Requests, and documents identified from that search are included.

Please note that ASP's production includes documents designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY under the Protective Order. You will note that highly sensitive native files bearing this designation have not been produced, and ASP requests a meet and confer to discuss adequate protection against unauthorized disclosure to enable their production.

Further document productions will be forthcoming, as will a privilege log indicating documents and things withheld as protected by the attorney client privilege or work product doctrine.

Regards,

Matthew McFarlane
PRACTUS LLP
*Attorneys for Plaintiff-Intervenor All Season Power LLC*