**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

WEATHER BRANDS LLC,

*Plaintiff and*
*Counterclaim-Defendant,*

ALL SEASON POWER LLC,

*Intervenor-Plaintiff and*
*Counterclaim-Defendant,*

v.

BLUE MINERAL CORPORATION, BARRY WACHSLER and JOHN DOES 1-10,

*Defendants and*
*Counterclaim-Plaintiffs.*

**Civil Case No. 25-cv-2423-DLC-SLC**

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS FOR FAILURE TO SEEK LEAVE OF COURT UNDER FED. R. CIV. P. 15(a)(2)

PRACTUS LLP

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff and*
*Counterclaim-Defendant*
*Weather Brands LLC*

PRACTUS LLP

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Attorneys for Intervenor-Plaintiff and*
*Counterclaim-Defendant*
*All Season Power LLC*

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION ..... 1

II. DEFENDANTS CANNOT ESTABLISH GOOD CAUSE UNDER RULE 16 ..... 2

A. The Cross-Motion does not cure Defendants' lack of diligence. ..... 3

B. The Counterclaims rest largely on facts Defendants knew long before they sought leave. ..... 4

C. Defendants cannot establish diligence based on their naked licensing theory. ..... 5

1. Defendants' July 24 Motion confirms that additional discovery was unnecessary to plead counterclaims based on a naked licensing theory. ..... 5

2. The substance of Defendants' naked licensing theory does not establish a newly discovered basis for amendment. ..... 7

III. NEITHER ASP'S INTERVENTION NOR THE SECOND AMENDED COMPLAINT JUSTIFIES THE LATE COUNTERCLAIMS ..... 8

A. The SAC did not materially expand the claims against Defendants or serve as a basis for the Counterclaims. ..... 9

1. Defendants knew in April 2026 that the SAC left the infringement claims against Defendants materially unchanged. ..... 9

2. ASP's intervention did not create the trademark validity controversy underlying Counts II and III of the Counterclaims. ..... 10

B. Defendants' July 24 Motion confirms that the Counterclaims were not prompted by any later change in the pleadings. ........ 11

C. Rule 13 does not excuse noncompliance with Rules 15 and 16. ........ 13

IV. RULE 15 INDEPENDENTLY WARRANTS DENIAL OF LEAVE ........ 15

A. The late Counterclaims would expand the litigation and prejudice Plaintiffs. ........ 15

B. Count I adds no useful relief beyond the claims and defenses already before the Court. ........ 17

C. Counts II and III are independently subject to dismissal as futile. ........ 19

V. CONCLUSION ........ 23

## TABLE OF AUTHORITIES

<u>**Cases**</u> <u>**Page(s)**</u>

*AEP Energy Servs. Gas Hldg. Co. v. Bank of Am., N.A.*
626 F.3d 699 (2d Cir. 2010) .................... 19

*Block v. First Blood Assocs.*
988 F.2d 344 (2d Cir. 1993) .................... 15

*Continuum Group LLC v. 666 Performance, LLC*
No. 24-cv-5834, 2025 WL 1489255 (S.D.N.Y. May 23, 2025) .................... 18

*Courtenay Commc'n Corp. v. Hall*
334 F.3d 210 (2d Cir. 2003) .................... 20

*Downtown Music Publishing LLC v. Peloton Interactive, Inc.*
436 F. Supp. 3d 754 (S.D.N.Y. 2020) .................... 13

*Dual Groupe, LLC v. Gans-Mex LLC*
932 F. Supp. 2d 569 (S.D.N.Y. 2013) .................... 21

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*
411 F.3d 384 (2d Cir. 2005) .................... 18

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*
689 F. Supp. 2d 585 (S.D.N.Y. 2010) .................... 22

*Foman v. Davis*
371 U.S. 178 (1962) .................... 15

*GEOMC Co. v. Calmare Therapeutics Inc.*
918 F.3d 92 (2d Cir. 2019) .................... 15

*Kassner v. 2nd Ave. Delicatessen Inc.*
496 F.3d 229, 243-44 (2d Cir. 2007) .................... 3

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*
874 F.2d 95 (2d Cir. 1989) .................... 20

*Nat'l Acad. of Television Arts & Sci., Inc. v. Multimedia Sys. Design, Inc.*
551 F. Supp. 3d 408 (S.D.N.Y. 2021) .................... 18

*Oscar v. BMW of N. Am., LLC*
No. 09-cv-0011, 2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011) .................... 4

*Patsy's Italian Rest., Inc. v. Banas*
658 F.3d 254 (2d Cir. 2011) ........ 22

*Ramsay-Nobles v. Keyser*
No. 16-cv-5778, 2018 WL 6985228 (S.D.N.Y. Dec. 18, 2018) ........ 14

*Sacerdote v. N.Y. Univ.*
9 F.4th 95 (2d Cir. 2021) ........ 3

*Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*
No. 17-cv-8528, 2022 WL 836890 (S.D.N.Y. Mar. 21, 2022) ........ 14

*U.S. Pat. & Trademark Off. v. Booking.com B.V.*
591 U.S. 549 (2020) ........ 20

**Statutes and Rules** **Page(s)**

15 U.S.C. § 1127 ........ 22

Fed. R. Civ. P. 13 ........ 2, 13, 14

Fed. R. Civ. P. 15 ........ 1, 2, 3, 15, 17, 23

Fed. R. Civ. P. 16 ........ 1, 2, 3, 5, 12, 13, 14, 15

Plaintiff and Counterclaim-Defendant Weather Brands LLC ("Weather Brands") and Intervenor-Plaintiff and Counterclaim-Defendant All Season Power LLC ("ASP") (together, "Co-Plaintiffs") respectfully submit this combined memorandum of law in further support of their Motion to Dismiss Counterclaims for Failure to Seek Leave of Court under Fed. R. Civ. P. 15(a)(2) (the "Motion to Dismiss") (Dkt. 169), and in opposition to Defendants' Cross-Motion for Leave to File the August 19 Counterclaims *nunc pro tunc* (the "Cross-Motion") (Dkt. 199).[1]

## I. INTRODUCTION

Defendants' Cross-Motion for leave to file the August 19 Counterclaims *nunc pro tunc*, if granted, would cure only the procedural defect identified in the Motion to Dismiss. They must also establish good cause under Rule 16, and based on the record, Defendants have not met, nor cannot meet, the diligence standards required.

The proposed Counterclaims largely have nothing to do with post-deadline facts on which Defendants purport to rely. Their noninfringement, genericness, descriptiveness, acquired distinctiveness, scope, and genericness-based cancellation theories arise from the same marks, registrations, products, and infringement controversy that existed before the January 16 amendment deadline. Naked licensing is the only theory Defendants plausibly can tie to later events. But even there, their own chronology defeats diligence. Defendants had the February 2024 License on February 11, 2026, identified the asserted absence of quality-control records by June, and filed their Motion for Leave to File First Amended Answer, Affirmative Defenses,

[1] "MOL" refers to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss Counterclaims and in Support of Defendants' Cross-Motion for Leave to File the August 19 Counterclaims *nunc pro tunc* (Dkt. 200).

and Counterclaim (the "July 24 Motion") ***before*** receiving the additional discovery which they now, inconsistently, portray as necessary to support their naked licensing theory.

ASP's intervention and the SAC do not change the analysis. The SAC became operative on May 11, 2026 and did not materially alter the infringement claims against Defendants. Defendants knew that months earlier. Their April opposition to ASP's intervention recognized that Weather Brands already represented the underlying trademark interests and that ASP's distinct interest is limited to its own damages. Defendants nevertheless waited until July 24 to seek leave to assert validity, abandonment, and cancellation counterclaims, and later acknowledged that those same theories substantially carried forward into the August pleading. Rule 13 does not convert the deadline to respond to the SAC into a new deadline to amend the pleadings.

Rule 15 independently warrants denial of leave. The Counterclaims would add affirmative claims near the close of discovery while Defendants continue to pursue discovery they say bears on those claims. Count I merely reverses Plaintiffs' existing infringement claims and provides no useful additional relief. Counts II and III rest on genericness and naked licensing allegations that do not plausibly support the affirmative declaratory and cancellation relief Defendants seek. The Court should deny the Cross-Motion and grant Plaintiffs' Motion to Dismiss.

## II. DEFENDANTS CANNOT ESTABLISH GOOD CAUSE UNDER RULE 16

Defendants' Cross-Motion, if granted, would cure only the absence of a request for leave. It does not establish good cause. Most of the Counterclaims rest on issues

unrelated to the later licensing investigation. Even as to naked licensing, Defendants' own chronology shows that the asserted factual basis for the proposed counterclaims was apparent long before July 24, because Defendants moved to add them before receiving the additional discovery they now contend was necessary to support those counterclaims.

### A. The Cross-Motion does not cure Defendants' lack of diligence.

The Cross-Motion changes the procedural posture, but not the governing standard. The Scheduling Order fixed January 16, 2026 as the deadline to amend pleadings. Because that deadline expired many months before Defendants asserted the Counterclaims, Defendants must establish good cause under Rule 16 ***before*** obtaining leave under Rule 15. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115-16 (2d Cir. 2021); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243-44 (2d Cir. 2007). Defendants concur, as the Cross-Motion asks the Court to modify the January 16 deadline to permit Counts I through III. (Dkt. 199 at 1).

The Court's September 4 Order permitted Defendants to present that request *nunc pro tunc*. (Dkt. 179). The September 8 Order established a schedule for briefing that motion. (Dkt. 182). Those orders did ***not*** grant leave, modify the Scheduling Order, or excuse Defendants from proving their diligence to establish good cause under Rule 16. Plaintiffs do not contend that the August 5 Order adjudicated diligence, prejudice, or futility. The present Cross-Motion now places those issues before the Court, and Defendants must satisfy Rules 16 and 15 on the present record.

### B. The Counterclaims rest largely on facts Defendants knew long before they sought leave.

Defendants seek leave to assert three Counterclaims comprising distinct theories. Count I seeks affirmative declarations of noninfringement and related relief. Count II seeks declarations concerning genericness, descriptiveness, acquired distinctiveness, scope, and abandonment through naked licensing. Count III seeks cancellation based independently on genericness and naked licensing. Only the naked licensing theory supporting Counts II and III depend on any event arising after the January 16 amendment deadline.[2] Defendants identify no post-deadline fact necessary to plead their remaining theories of noninfringement, genericness, descriptiveness, acquired distinctiveness, scope, or cancellation.

Defendants' own account confirms that these theories did not arise together. Their original Answer already challenged acquired distinctiveness, (Dkt. 55 at 13), and the Cross-Motion characterizes naked licensing as a separate challenge that developed later. (MOL at 12). Nothing about discovery into Weather Brands' quality control explains the delay in seeking affirmative noninfringement relief, genericness, descriptiveness, acquired distinctiveness, or scope determinations. The same is true of Count III insofar as it seeks cancellation based on genericness.

Defendants cannot use one allegedly later-developed theory in partial support to establish good cause for counterclaims that could have been filed months ago, before the January 16 amendment deadline. *Oscar v. BMW of N. Am., LLC*, No. 09-

[2] Defendants contend that Weather Brands first disclosed the License Agreement by and between Weather Brands LLC and All Season Power LLC dated February 6, 2024 (the "February 2024 License") (Dkt. 65-3) after the January 16 amendment deadline, prompting "investigation" into whether Weather Brands exercised the February 2024 License's reserved quality-control rights. (MOL at 5).

cv-0011, 2011 WL 6399505, at *4 (S.D.N.Y. Dec. 20, 2011) (assessing Rule 16 diligence theory-by-theory and finding a lack of diligence for failing to pursue a theory available earlier). Defendants' subsequent "investigation" may have animated their naked licensing theory, but that activity cannot substitute for the complete lack of diligence in asserting the balance of the Counterclaims for which it had supporting facts in hand before the amendment deadline.

### C. Defendants cannot establish diligence based on their naked licensing theory.

Naked licensing is the only theory Defendants tie to post-Scheduling Order deadline facts. It still does not establish diligence for two independent reasons.

#### 1. Defendants' own July 24 Motion confirms that additional discovery was unnecessary to plead counterclaims based on a naked licensing theory.

Defendants received the February 2024 License on February 11, 2026. By June 11, 2026, Defendants had reviewed documents Weather Brands had produced without identifying the inspection, testing, approval, audit, or corrective action records Defendants now cite as evidence of inadequate quality control. (Dkt. 201 ¶¶ 7, 11-13). Defendants nevertheless attempt to measure its diligence from ASP's June 15, 2026 written discovery responses, emphasizing that they moved more than five weeks later. (MOL at 11). But those responses did not disclose a previously unknown quality-control failure. Rather, the responses confirmed ASP's licensee status, Weather Brands' ownership of the registrations, and ASP's lack of licensed rights or activity before February 6, 2024. (Dkt. 201 ¶ 14). The responses arrived without documents, but the absence of additional evidence does not explain why Defendants could not seek amendment once their own investigation had identified the asserted

absence of quality-control records. Promptly serving discovery does not establish diligence in seeking leave to amend where Defendants had ***already*** identified the purported absence of quality-control records and later concluded that the existing record was sufficient to plead the theory.

More significantly, Defendants' July 24 Motion confirms that the outstanding production was ***unnecessary*** for Defendants to plead counterclaims based on the naked licensing theory. On July 15, 2026, ASP advised the Court that its first document production would be provided on July 30, with production to continue as additional documents were discovered. (Dkt. 122).[3] Defendants nevertheless filed the July 24 Motion ***before*** receiving that initial production, relying on the February 2024 License, ASP's written responses, Weather Brands' production, and the asserted absence of records demonstrating exercise of retained quality-control rights as the basis for the proposed counterclaim. (Dkt. 131, ¶¶ 23-24, 31-36). Defendants thus concluded that the existing record supplied a sufficient basis to plead naked licensing, confirming that neither the outstanding production nor any further "investigation" was necessary to assert the theory.

Discovery occurring after the July 24 Motion does not establish earlier diligence. Defendants devote substantial attention to ASP's ***later*** productions, custodians, search terms, and continuing collection efforts. But Defendants had already pled naked licensing before any of that discovery occurred. Later evidence

[3] Importantly, Defendants could have requested that ASP prioritize its production of documents relevant to the naked licensing theory they purport to have been "investigating," such as the quality-control records they now claim had not been produced. Instead, Defendants continue to demand ASP search for emails and electronic documents using fatally broad and nonspecific search terms like "transfer!", "trademark!", "similar!", "label!", "descri!", and "fire!" (*See, e.g.*, Dkt. 203-1 at 1, 28-29).

may potentially bear on the merits but cannot explain why Defendants waited for months to seek leave after concluding that the factual basis for the counterclaim already existed.

**2. The substance of Defendants' naked licensing theory does not establish a newly discovered basis for amendment.**

The actual substance of the naked licensing theory further weakens Defendants' claim that the disclosure of the February 2024 License revealed a materially new basis for amendment. Defendants allege that Weather Brands acquired the asserted rights and licensed them to ASP as part of the same overall transaction. The February 2024 License requires the licensed products to satisfy quality standards, ties manufacture and distribution to the products' historical practices, and reserves inspection and sample rights to Weather Brands. This contractual requirement provides substantial evidence militating against naked licensing.

Significantly, Defendant Wachsler was entirely familiar with that history. (Riley Dec.,[4] ¶¶ 8-14, 20). Wachsler owned and operated Dart, which first registered and then sold the marks, served as Vice President and Director of Sales of NorthRock, which commercialized products using the marks, personally executed an assignment of the asserted marks to a predecessor company to Plaintiffs, Snow Joe LLC, provided assistance and personnel to help transition the business, and had extensive knowledge of the marks, their ongoing use in commerce associated with products whose production and composition had not changed during this time. (Riley Dec.,

[4] "Riley Dec." refers to the concurrently filed Declaration of Paul Riley.

¶¶ 5-7, 11-14, 17-21). Plaintiffs do not contend that Wachsler's historical knowledge alone established performance under the February 2024 License. Wachsler's historical knowledge matters because Defendants' theory ultimately rested on an inference that already had been drawn from the purported absence of quality-control records, by the time of the July 24 Motion.

This factual record, equally known to Defendants, fails to present a compelling basis for the naked licensing theories underlying Counts II and III of the Counterclaims. (*See* Riley Dec., ¶¶ 8-14, 20). The asserted lack of documents that might establish a contrary conclusion does not transform the underlying marks, products, historical operating practices, or Wachsler's knowledge of that business into "newly discovered facts" justifying the lack of diligence in developing the counterclaims and the months of delay in seeking leave to file them.

## III. NEITHER ASP'S INTERVENTION NOR THE SECOND AMENDED COMPLAINT JUSTIFIES THE LATE COUNTERCLAIMS

Defendants separately rely on ASP's intervention and the Second Amended Complaint (the "SAC") to justify the timing of the Counterclaims. (MOL at 9-12). But the SAC, which became operative on May 11, 2026, left the underlying infringement controversy materially unchanged from the First Amended Complaint (the "FAC") filed on July 21, 2025. (Dkt. 65-2; Dkt. 39). The SAC added ASP's licensee status and claimed commercial injury, but did not materially alter the underlying infringement dispute, create the Counterclaims, or explain Defendants' delay in asserting them. Defendants formulated their principal validity, abandonment, and cancellation

theories months before the SAC became the operative pleading, confirming that those theories were not prompted by any later change in the pleadings.

### A. The SAC did not materially expand the claims against Defendants or serve as a basis for the Counterclaims.

Neither ASP's intervention nor the SAC materially changed the infringement controversy against Defendants or supplied a new factual basis for the Counterclaims.

#### 1. Defendants knew in April 2026 that the SAC left the infringement claims against Defendants materially unchanged.

In connection with its April 8, 2026 motion for leave to intervene as Plaintiff (Dkt. 64), ASP filed a proposed SAC along with a redline comparing it to the FAC. (Dkt. 65-1; Dkt. 65-2). The redline confirms that the principal changes were the addition of ASP as Weather Brands' exclusive licensee, allegations concerning ASP's rights under the February 2024 License, and allegations that ASP suffered its own lost sales, lost profits, injury to customer and retailer relationships, distribution disruption, and harm to goodwill. (Dkt. 65-2 at 4-5, ¶¶ 10-13). The underlying infringement controversy remained the same.

ASP expressly represented as much in support of intervention, stating that adding ASP "will not expand the scope of the claims here," and indeed no new claims were added. (Dkt. 66 at 2, 7). ASP explained that its proposed claims arose from the same intellectual property, alleged course of conduct, commercial context, and substantially the same evidence as Weather Brands' existing claims. (*See generally* Dkt. 65-2). Like the FAC before it, the proposed SAC challenged Defendants' sale of the same BLUE FIRE and FLAKES OF FIRE products, using the same alleged marks

and packaging, under the same theories of trademark infringement, false designation, trade dress infringement, dilution, and state law unfair competition. (Dkt. 65-2 at 26-33). ASP characterized the amendments as limited to identifying its role as exclusive licensee, joining it in existing claims, and permitting it to seek its own damages. (Dkt. 66 at 7-8).

Defendants' April 24, 2026 opposition to ASP's motion for leave to intervene confirms that Defendants understood the nature of the pending changes in the proposed SAC. (Dkt. 76). Defendants argued that Weather Brands "fully represents any derivative interest All Season may claim under its license" because Weather Brands was already prosecuting the infringement action. (*Id.* at 1). Defendants further maintained that ASP's distinct concern was damages, observing that its "desire to recover its own alleged lost profits" did not alter the parties' shared objective of proving Defendants' infringement. (*Id.* at 9). Thus, by April ***at the latest***, Defendants knew that ASP's proposed participation merely affected the identity of the claimant and the damages sought, not the underlying infringement theories asserted against Defendants.

**2. ASP's intervention did not create the trademark validity controversy underlying Counts II and III of the Counterclaims.**

ASP's intervention did not create new trademark rights for Defendants to challenge. In opposing intervention, Defendants conceded that "ownership remains entirely with Plaintiff" and that Weather Brands "retains all rights, title and interest in and to the ownership of the Trademarks." (Dkt. 76 at 2). Defendants likewise argued that ASP's interest did not amount to ownership of the asserted marks and that any rights asserted by ASP were derivative of Weather Brands' ownership. (*Id.*

at 7). That distinction matters because the principal theories in Counts II and III concern the validity and enforceable scope of Weather Brands' preexisting trademark rights. Defendants themselves describe Count II as seeking declarations concerning "genericness, descriptiveness, acquired distinctiveness, scope, and abandonment," while Count III, asserted only against Weather Brands, seeks cancellation of the BLUE HEAT registration on genericness and naked licensing grounds. (MOL at 10-11; Dkt. 201, ¶¶ 25-26).

### B. Defendants' July 24 Motion confirms that the Counterclaims were not prompted by any later change in the pleadings.

Defendants separately rely on ASP's intervention and the Second Amended Complaint (the "SAC") to justify the timing of the Counterclaims. (MOL at 9-12). But the SAC did not materially alter the underlying infringement controversy from the First Amended Complaint (the "FAC") filed on July 21, 2025. (Dkt. 65-2; Dkt. 39). ASP tendered the proposed SAC with its April 8 motion to intervene, and the Court granted ASP leave to intervene on May 11, 2026. Defendants therefore knew no later than May that ASP sought to join the existing infringement claims based on its status as Weather Brands' exclusive licensee and to recover its own claimed commercial injury.

The Court later granted leave to file the SAC *nunc pro tunc* on July 31, 2026, and its August 5, 2026 Order confirmed the July 24, 2026 filing as the operative pleading. (Dkt. 141; Dkt. 148). None of that timing explains Defendants' delay. Before the SAC was filed on July 24, 2026 Defendants already knew the substance of ASP's proposed claims and had opposed ASP's participation on the ground that Weather Brands adequately represented the underlying trademark interests. Defendants

nevertheless waited until July 24, 2026 to seek leave to assert their principal validity, abandonment, and cancellation theories. Those theories therefore were not prompted by the filing or operative status of the SAC. Thus by July 24, 2026, Defendants had already formulated their principal validity, abandonment, and cancellation theories and sought leave to add them to their answer to the FAC. (Dkt. 130; Dkt. 131 ¶ 4). The SAC was filed later that day. Those counterclaims therefore were not prompted by the SAC or by Defendants' later obligation to respond to it.

Defendants later acknowledged that the substance of the July 24 Motion's counterclaims carried forward into the August pleading, stating that, apart from the newly numbered noninfringement count, the August pleading's "validity, abandonment, and cancellation theories substantially track" the amendment they had already proposed in July. (Dkt. 177 at 2). The August 19 Counterclaims therefore, according to Defendants' own admissions, were not prompted by any later change in Plaintiffs' claims. Counts II and III largely repackaged theories Defendants had already formulated before the SAC became operative.

Defendants emphasize that the August pleading narrowed the July proposal by limiting cancellation to Registration No. 5,000,400 and omitting relief concerning Registration No. 5,580,215 and the additional application. (Dkt. 201 ¶ 27). That narrowing reduced the relief sought, but it does not explain Defendants' lack of diligence and delay in asserting the underlying validity, abandonment, and cancellation theories or establish diligence under Rule 16.

### C. Rule 13 does not excuse noncompliance with Rules 15 and 16.

Defendants separately argue that August 19, 2026 was their first responsive pleading to ASP and that Rule 13 therefore supports Counts I and II because those claims are asserted against both Plaintiffs and concern the same rights and conduct on which ASP sues. (MOL at 9-10). That argument does not establish Rule 16 good cause to modify the January 16, 2026 amendment deadline. Defendants themselves acknowledge the distinction. After invoking Rule 13, they contend that their "documented diligence and common evidentiary record independently satisfy Rules 16 and 15." (MOL at 10). Rule 13 does not supply the diligence necessary to support good cause for amendment of the Scheduling Order under Rule 16. *See Downtown Music Publishing LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 767-68 (S.D.N.Y. 2020) (denying leave to amend counterclaims filed after the scheduling order deadline where the party "had ample opportunity to amend its counterclaims" but declined to do so).

Nor does ASP's later status as an opposing party explain the Counterclaims belatedly asserted against Weather Brands. Indeed, Count III is asserted ***only*** against Weather Brands. (MOL at 10-11). Count II challenges genericness, descriptiveness, acquired distinctiveness, scope, and abandonment of trademark rights that Weather Brands had already asserted against Defendants in the FAC. (*Id.*). And Count I seeks a declaration of noninfringement, false designation, trade dress infringement, and dilution arising from the same accused conduct that Weather Brands had placed at issue long before ASP intervened. Defendants' obligation to respond to ASP may explain why their August pleading addressed ASP. It does not

explain why claims against Weather Brands that arose from the existing controversy could not have been asserted before the amendment deadline.

The authorities cited in Plaintiffs' opening memorandum address that distinction. In *Ramsay-Nobles v. Keyser*, the court rejected counterclaims first asserted in an answer to a later amended complaint where the facts underlying those claims were already known to the defendants. No. 16-cv-5778, 2018 WL 6985228, at *8 (S.D.N.Y. Dec. 18, 2018); *see also* Dkt. 170 at 4-5. Courts have similarly declined to permit late counterclaims that did not respond to the new allegations in the amended complaint and could have been asserted earlier. *E.g., Thor 680 Madison Ave. LLC v. Qatar Luxury Grp. S.P.C.*, No. 17-cv-8528, 2022 WL 836890, at *8-10 (S.D.N.Y. Mar. 21, 2022). Those same principles apply here even though ASP became an opposing party later. As shown above, the SAC added ASP's licensee status and separate claim to damages without materially changing the infringement controversy, and the principal validity issues underlying Counts II and III predated ASP's participation altogether.

Defendants therefore cannot convert the deadline for responding to the SAC into a new amendment deadline. The August 5 Order permitted Defendants to respond to the operative SAC. It did not modify the January 16 deadline for amended pleadings. (Dkt. 148 at 2). The Cross-Motion accordingly remains subject to the same Rule 16 inquiry addressed above, and Rule 13 supplies no independent basis for good cause.

## IV. RULE 15 INDEPENDENTLY WARRANTS DENIAL OF LEAVE

Even if Defendants could establish good cause under Rule 16 (they have not and cannot), leave should still be denied under Rule 15. Rule 15 permits denial for undue delay, prejudice, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendants principally respond that the Counterclaims overlap with issues already in the case and that they do not presently request an extension of discovery. (MOL at 18-20). But those arguments do not eliminate the additional burden imposed by affirmative claims with substantial overlap filed near the end of discovery, which weighs against adding claims that provide little or no additional relief.

### A. The late Counterclaims would expand the litigation and prejudice Plaintiffs.

Prejudice under Rule 15 includes requiring the opposing party to expend significant additional resources or materially delaying resolution of the action. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (noting that the "risk of substantial prejudice increases with the passage of time"). Defendants rely on that standard but contend there is no prejudice because discovery concerning distinctiveness, licensing, marketplace perception, and the asserted trademark rights was already underway. (MOL at 19-20). That overlap does not answer the prejudice inquiry. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 100 (2d Cir. 2019) (noting that new claims that, at a late stage of the litigation, raise issues beyond the scope of existing pleadings "will usually cause escalating prejudice to the counterdefendant and undue expansion of litigation").

The Cross-Motion comes as discovery is nearing completion. Under the existing schedule, fact discovery closes October 30, expert reports are due November 20, and

dispositive motions are due February 12, 2027. (Dkt. 118 at 2). Defendants themselves relied on those deadlines in seeking leave in July. (Dkt. 132 at 13). Yet their current papers also confirm that, as of September, discovery concerning the subjects Defendants say support the Counterclaims remained ongoing. Defendants cite an expanded 18-custodian collection, approximately 45 GB of material undergoing processing and review, additional productions, and continued disputes concerning search terms and outstanding categories. (Dkt. 201 ¶¶ 33-35).

Adding affirmative claims under those circumstances imposes more than the ordinary burden of defending the existing case. Count II seeks affirmative declarations concerning genericness, descriptiveness, acquired distinctiveness, enforceable scope, and abandonment. Count III seeks cancellation of the BLUE HEAT Registration. Dkt. 201-1 ¶¶ 61-72. Those claims place at issue not merely whether Plaintiffs can prove infringement, but whether Weather Brands' federal registration should remain on the register and whether the asserted marks have lost source-identifying significance through the licensing relationship. Defendants' overlap argument therefore cuts the other way. To the extent these issues already arise through Plaintiffs' claims and Defendants' affirmative defenses, Defendants do not need new Counterclaims to preserve them. To the extent the Counterclaims require adjudication beyond those existing issues, including affirmative cancellation and abandonment relief, they necessarily add litigation burden at the end of discovery. Defendants cannot have it both ways. The Counterclaims cannot simultaneously add meaningful affirmative relief unavailable through the existing pleadings while imposing no incremental burden.

Defendants' reliance on Plaintiffs' July notice and ASP's intervention papers does not alter that result. Notice may reduce surprise, but it does not eliminate the burden of defending additional affirmative claims near the close of discovery. Nor do ASP's intervention papers support Defendants' position. Those papers addressed the efficiency of resolving ASP's infringement claims together with Weather Brands' existing claims. They did not address the addition of affirmative abandonment and cancellation claims after the amendment deadline. The fact that some evidence overlaps does not eliminate the additional issues and relief introduced by the Counterclaims. (*See* MOL at 18-20; Dkt. 66 at 5-7).

Nor does Defendants' statement that they presently seek no discovery extension eliminate prejudice. (MOL at 19-20). Requiring Plaintiffs to address additional affirmative claims within the remaining schedule compresses the burden rather than removes it. And Defendants' continuing demands concerning licensing and quality-control discovery demonstrate the risk that maintaining the Counterclaims will generate further disputes over the scope and completion of fact discovery. Rule 15 does not require the Court to accept that risk merely because Defendants have not yet requested more time.

**B. Count I adds no useful relief beyond the claims and defenses already before the Court.**

Count I presents perhaps the clearest example of an unnecessary amendment. It seeks declarations that Defendants' BLUE FIRE and BLUE FIRE ICE MELTER designations and packaging do not infringe Plaintiffs' marks, do not constitute false designation or unfair competition, do not infringe protectable trade dress, and do not dilute any enforceable mark. (Dkt. 201-1 ¶¶ 52-60). Those are simply the mirror

images of the infringement, false designation, trade dress, dilution, and unfair competition claims Plaintiffs already assert.

Courts routinely dismiss declaratory counterclaims that merely restate the issues already presented by the complaint. In *Continuum Group LLC v. 666 Performance, LLC*, No. 24-cv-5834, 2025 WL 1489255, at *2 (S.D.N.Y. May 23, 2025), the court dismissed a trademark non-infringement counterclaim because it added no useful determination beyond the plaintiff's infringement claim. In *Nat'l Acad. of Television Arts & Sci., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021), the court likewise dismissed duplicative declaratory judgment claims under its clear discretion to limit the scope of a litigation. *Duane Reade, Inc. v. St. Paul Fire & Marine Insurance Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (confirming a district court's discretion to decline declaratory relief that serves no useful purpose in clarifying or settling the legal issues).

Defendants do not meaningfully distinguish those authorities. They argue that Count I should remain because it would resolve the challenged conduct against both Weather Brands and ASP alongside Counts II and III. (MOL at 23-25). But *Continuum* addressed the same problem. A declaration of noninfringement does not become independently useful merely because other counterclaims seek different relief. Defendants themselves recognize that Counts II and III concern validity, abandonment, and cancellation, while Count I concerns whether the accused conduct infringes Plaintiffs' rights.

The addition of ASP as a party changes nothing. Both Plaintiffs are before the Court and assert claims arising from Defendants' challenged conduct. A judgment resolving those claims will necessarily determine whether Defendants infringed the

rights asserted against them. Count I asks the Court to decide those same questions again in declaratory form. Nor does the separate TTAB proceeding identified by Defendants give Count I an independent function. (*See* MOL at 19). Any continuing dispute about registration or validity concerns the relief sought in Counts II and III. It does not create a need for a mirror-image declaration concerning the same conduct that this Court must already adjudicate under the SAC.

Count I therefore provides no useful additional relief and should be dismissed even if the Court otherwise permits amendment.

**C. Counts II and III are independently subject to dismissal as futile.**

Defendants concede that futility supplies an additional basis to deny leave. (MOL at 17). A proposed claim is futile if it fails to state a legally cognizable claim. *AEP Energy Servs. Gas Hldg. Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010). Counts II and III fail to plead facts supporting the affirmative relief Defendants seek.

Plaintiffs do not dispute that Count III seeks affirmative cancellation relief that a defense judgment would not necessarily provide. (MOL at 21-22). However, that distinction does not establish that Count III states a viable claim. Because Defendants seek the separate affirmative remedy of cancellation, they must plausibly plead a statutory basis for that relief. Their genericness and naked licensing allegations fail to do so.

Defendants' genericness theory illustrates the problem. Their own pleading identifies the relevant goods as "chemical preparations for melting snow and ice," which is the class of goods stated in the BLUE HEAT Registration. (Dkt. 201-1 ¶ 22).

Defendants then redefine that genus parenthetically as "blue-heat generating pellets" and repeatedly use that reformulation to support the proposition that BLUE HEAT SNOW AND ICE MELTER is generic. (*Id.* ¶¶ 22-35). The pleading thereby attempts to bootstrap the disputed terminology into Defendants' definition of the product category it purports to identify.

The remaining factual allegations principally dissect the mark. Defendants allege that "blue" describes color, "heat" describes the reaction of calcium chloride, "snow and ice melter" is generic, and third parties use other heat- and fire-formative terms. (Dkt. 201-1 ¶¶ 25-35). Genericness turns on how the relevant public understands the designation. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 100-01 (2d Cir. 1989). And, as Defendants acknowledge, a composite designation must be considered ***as a whole***. *Courtenay Commc'n Corp. v. Hall*, 334 F.3d 210, 214-16 (2d Cir. 2003). (*See* MOL at 17).

The Counterclaims contain no corresponding factual allegation showing that purchasers use or understand BLUE HEAT SNOW AND ICE MELTER, considered as a whole, to be merely the common name for chemical preparations that melt snow and ice. Paragraphs 62 and 63 simply state the supposed conclusion that the complete designation's primary significance is the product rather than its source. (Dkt. 201-1 ¶¶ 62-63). The disclaimer of SNOW AND ICE MELTER does not close that gap. Nor does evidence that individual components may describe characteristics of the goods establish that the composite designation itself is generic. *See U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 556 (2020) (holding that "for a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation").

The naked-licensing allegations are similarly deficient. Defendants concede that the February 2024 License contains quality covenants and reserves inspection and sample rights to Weather Brands. (Dkt. 201-1 ¶ 39). They then allege, primarily upon information and belief, that Weather Brands did not regularly inspect ASP, independently test products, require samples, or document approvals. (*Id.* ¶¶ 40-44). The February 2024 License itself is more substantial than that characterization suggests. It requires each licensed product to be of good quality and free from defects, requires compliance with applicable standards, requires manufacture and sale to remain consistent with the products' historical practices, gives Weather Brands inspection and sample rights, and requires ASP to impose quality and trademark obligations on third-party manufacturers. (Dkt. 65-3 at 7-9; *see also* Riley Dec., ¶¶ 16-21). *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 574 (S.D.N.Y. 2013) (rejecting naked-licensing argument based merely on the complaint's failure to allege actual exercise of control where the agreement granted the licensor extensive control rights). The Agreement's express control provisions therefore weigh against inferring naked licensing from the contract itself. *Id.* The actual course of performance likewise reflects continuity in the licensed products, specifications, supply channels, and management. (Riley Dec., ¶¶ 17-21).

Defendants argue they should be able to obtain more discovery to "investigate" ASP's compliance with the control mechanisms in the February 2024 License, but Wachsler had direct knowledge that the products had been continuously sold in substantially the same form through the predecessor businesses, and the record reflects continued product and operational continuity after ASP become the licensee. (Riley Dec., ¶¶ 6-7, 11, 14, 17-21).

Abandonment requires conduct causing the designation to lose its significance as an indicator of origin. 15 U.S.C. § 1127. Defendants plead no concrete facts connecting their asserted lack of inspections or documentation to any loss of source significance. They allege generally that product, labeling, inventory, fulfillment, or delivery issues required replacement or corrective action, then conclude that Weather Brands' alleged failure to exercise control caused the marks to lose significance as indicators of source and quality. (Dkt. 201-1 ¶¶ 42-45, 65-66). Such generalized allegations do not, without more, plausibly establish abandonment. *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 596 (S.D.N.Y. 2010) (noting that allegations of isolated incidents of non-compliance with control mechanisms are insufficient to support a naked licensing theory). Defendants also do not identify facts showing that consumers ceased to understand the asserted designations as indicating source because of uncontrolled licensing. *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 264-65 (2d Cir. 2011) (confirming that "naked licensing will lead to an abandonment of a mark only where the mark loses its significance" in a particular market, citing 15 U.S.C. § 1127).

That defect is dispositive for the abandonment theory in both Counts II and III. Count III rests only on genericness and naked licensing as grounds for cancellation of Registration No. 5,000,400. (Dkt. 201-1 ¶ 71). Because neither theory is plausibly pleaded, the cancellation claim is futile. Count II fares no better as an independent declaratory claim. Its remaining requests concerning descriptiveness, acquired distinctiveness, and scope duplicate issues already presented by Defendants' affirmative defenses and Plaintiffs' infringement claims. Those issues

may be litigated to the extent necessary to resolve the SAC, but they do not justify adding a late affirmative Counterclaim that supplies no distinct useful relief.

Rule 15 therefore provides an independent basis to deny the Cross-Motion. The Counterclaims would add unnecessary affirmative claims near the end of discovery, Count I merely mirrors Plaintiffs' existing claims, and Counts II and III do not state viable independent claims warranting amendment.

## V. CONCLUSION

For the foregoing reasons, Counterclaim-Defendants respectfully request that the Court deny the Cross-Motion and grant the Motion to Dismiss.

Dated: New York, New York
October 2, 2026

Respectfully submitted,

PRACTUS LLP

*/s/ Matthew B. McFarlane*

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Attorneys for Intervenor-Plaintiff and Counterclaim-Defendant All Season Power LLC*

*/s/ Christopher A. Colvin*

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff and Counterclaim-Defendant Weather Brands LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum complies with the applicable word limit. Excluding the caption, signature block, and this certificate, this memorandum contains approximately 6,683 words, as counted by the word-processing software used to prepare it, which does not exceed the 8,750-word limit for a memorandum in opposition to a motion.

*/s/ Matthew B. McFarlane*
Matthew B. McFarlane