**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**WEATHER BRANDS LLC,**

*Plaintiff and Counterclaim-Defendant,*

No. 25-cv-2423 (DLC)

**ALL SEASON POWER LLC,**

*Intervenor-Plaintiff and Counterclaim-Defendant,*

-against-

**BLUE MINERAL CORPORATION and**
**BARRY WACHSLER,**

*Defendants and Counterclaim-Plaintiffs.*

---

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR CROSS-MOTION FOR LEAVE TO FILE**
**THE AUGUST 19 COUNTERCLAIMS *NUNC PRO TUNC***

GARSON, SÉGAL, STEINMETZ, FLADGATE LLP
Michael M. Steinmetz
225 Broadway, 37th Floor
New York, New York 10007
(212) 380-3623
ms@gs2law.com

*Attorneys for Defendants and*
*Counterclaim-Plaintiffs*

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** .......... 1

**I. THE DOCUMENTED INVESTIGATION AND PLEADING HISTORY ESTABLISH GOOD CAUSE.** .......... 1

A. Plaintiffs' chronology omits the investigation that preceded the July motion. .......... 2

B. The remaining theories address the newly asserted licensee's claims and the subjects actually investigated. .......... 4

C. The cross-motion seeks the required leave; the earlier mootness ruling does not foreclose it. .......... 5

**II. PLAINTIFFS IDENTIFY NO UNDUE PREJUDICE CAUSED BY THESE COUNTERCLAIMS.** .......... 5

**III. THE COUNTERCLAIMS STATE CLAIMS FOR RELIEF; PLAINTIFFS' COMPETING FACTUAL ACCOUNT DOES NOT ESTABLISH FUTILITY.** .......... 7

A. Reserved contractual powers do not establish actual quality control. .......... 7

B. Riley's historical narrative does not establish Weather Brands' supervision or negate the pleaded facts. .......... 9

C. The genericness allegations address the complete designation in its pleaded marketplace context. .......... 10

**IV. THE COUNTERCLAIMS SEEK DISTINCT, PRACTICAL RELIEF.** .......... 12

**CONCLUSION** .......... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Admiral Insurance Co. v. Niagara Transformer Corp.*
57 F.4th 85 (2d Cir. 2023) ....12

*Arista Records, LLC v. Doe 3*
604 F.3d 110 (2d Cir. 2010)....10

*Block v. First Blood Associates*
988 F.2d 344 (2d Cir. 1993)....6

*Courtenay Communications Corp. v. Hall*
334 F.3d 210 (2d Cir. 2003)....11

*DiFolco v. MSNBC Cable L.L.C.*
622 F.3d 104 (2d Cir. 2010)....7

*Downtown Music Publishing LLC v. Peloton Interactive, Inc.*
436 F. Supp. 3d 754 (S.D.N.Y. 2020) ....7

*Dual Groupe, LLC v. Gans-Mex LLC*
932 F. Supp. 2d 569 (S.D.N.Y. 2013) ....8–9

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*
689 F. Supp. 2d 585 (S.D.N.Y. 2010) ....9

*General Motors Corp. v. Gibson Chemical & Oil Corp.*
786 F.2d 105 (2d Cir. 1986)....7

*GEOMC Co. v. Calmare Therapeutics Inc.*
918 F.3d 92 (2d Cir. 2019)....5–6

*Kassner v. 2nd Ave. Delicatessen Inc.*
496 F.3d 229 (2d Cir. 2007)....2, 4

*Lucente v. International Business Machines Corp.*
310 F.3d 243 (2d Cir. 2002)....7

*Oscar v. BMW of North America, LLC*
No. 09-cv-11, 2011 WL 6399505 (S.D.N.Y. Dec. 20, 2011) ....3

*Parker v. Columbia Pictures Industries*
204 F.3d 326 (2d Cir. 2000)....2

*Patsy's Italian Restaurant, Inc. v. Banas*
658 F.3d 254 (2d Cir. 2011)....10

*Soroof Trading Development Co. v. GE Microgen, Inc.*
283 F.R.D. 142 (S.D.N.Y. 2012) ....2

*The Continuum Group LLC v. 666 Performance, LLC*
No. 24-cv-5834, 2025 WL 1489255 (S.D.N.Y. May 23, 2025) ....12

*United States Patent & Trademark Office v. Booking.com B.V.*
591 U.S. 549 (2020)....10

## TABLE OF AUTHORITIES (continued)

**Statutes** **Page(s)**

15 U.S.C. § 1057(b) .......... 11

15 U.S.C. § 1092 .......... 12

15 U.S.C. § 1094 .......... 11

15 U.S.C. § 1119 .......... 12

15 U.S.C. § 1127 .......... 10

**Rules**

Fed. R. Civ. P. 8(d)(2)–(3) .......... 11

Fed. R. Civ. P. 12(b)(6) .......... 1, 7

Fed. R. Civ. P. 15 .......... 5–6

Fed. R. Civ. P. 16 .......... 1, 3–5

Fed. R. Civ. P. 16(b)(4) .......... 1

## PRELIMINARY STATEMENT

Defendants Blue Mineral Corporation ("BMC") and Barry Wachsler (together, the "BMC Parties") seek leave to maintain the three counterclaims filed on August 19, 2026. Plaintiffs Weather Brands LLC and All Season Power LLC ("ASP") (together, "Plaintiffs") seek to foreclose adjudication of the trademark rights they put at issue by recasting a documented investigation as delay and disputed evidence as a pleading defect. Neither premise survives the record. **Weather Brands disclosed the exclusive license after the amendment deadline**; Defendants investigated that arrangement, served discovery four days after ASP's intervention, pursued unanswered requests, and moved for leave before ASP's first document production. The resulting counterclaims therefore address the same marks, products, licensing arrangement, and commercial conduct already at issue in this litigation.

Plaintiffs' opposition also substitutes what the license permits for what Weather Brands actually did. The agreement expressly dispenses with approval for historically consistent products and merely recommends certain testing. Defendants allege that Weather Brands failed to exercise meaningful supervision. Paul Riley's account of predecessor operations (ECF 210) does not resolve that allegation, much less establish futility under Rule 12(b)(6). Accordingly, the Court should grant the BMC Parties' cross-motion and permit the unchanged August 19 counterclaims *nunc pro tunc*, make the limited scheduling modification necessary to do so, and deny Plaintiffs' motion.

## ARGUMENT

### I. THE DOCUMENTED INVESTIGATION AND PLEADING HISTORY ESTABLISH GOOD CAUSE.

Rule 16(b)(4) requires an assessment of diligence in the actual circumstances, not a count of elapsed months divorced from the disclosures and investigation that occurred during them.

Diligence is the primary consideration; the Court may also consider prejudice and other relevant circumstances. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007). *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340–41 (2d Cir. 2000), concerned a proposed claim supported by information available before the deadline. Here, the license and the asserted licensee's role were disclosed afterward.

**A. Plaintiffs' chronology omits the investigation that preceded the July motion.**

Weather Brands disclosed ASP's exclusive-licensee position on February 9 and produced the February 2024 agreement on February 11, after the January 16 deadline. Counsel then initiated legal and factual review. ECF 201 ¶¶ 6–8; Supplemental Declaration of Michael M. Steinmetz ("Steinmetz Supp. Decl.") ¶ 3. The document identified rights of inspection, sampling, and oversight; it did not establish their exercise. Knowledge of the contract therefore began, rather than completed, the investigation of uncontrolled licensing. *Soroof Trading Development Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 148–49 (S.D.N.Y. 2012), distinguishes earlier knowledge of a business relationship from later acquisition of facts supporting a claim arising from it.

Defendants pursued the information from both parties: they served ASP on May 15, four days after intervention; questioned Weather Brands' May 27 assertion of completed production; participated in the June 9 conference; and reviewed the materials produced. By June 11, that initial review had not identified the inspection, testing, sample-review, approval, or corrective-action records described in counsel's contemporaneous affirmation. ASP then served June 15 written responses without documents. ECF 201 ¶¶ 10–14; ECF 131 ¶ 17; Steinmetz Supp. Decl. ¶¶ 4–8.

The June 11 transcript confirms that this was an ongoing discovery inquiry. The Court directed counsel to meet and confer about Defendants' complaints concerning Plaintiffs' collection and contemplated addressing unresolved issues on July 10. *See* June 11 Tr. 15:19–25; Steinmetz

Supp. Decl. ¶ 7 & Ex. A. The ensuing review, conference, and production inquiry followed that course. Plaintiffs' proposed June cutoff removes those documented steps from the diligence analysis instead of explaining why they were unreasonable.

Nor did the investigation stop in June. Defendants continued reviewing Weather Brands' materials and conferred again on July 9. At the July 10 conference, ASP's counsel could not provide a production date; the Court required an estimate by July 15 and anticipated an initial production in July. July 10 Tr. 24:3–25:4, 27:16–21; ECF 118. ASP identified July 30 as its expected first production. Defendants prepared and filed their amendment papers on July 24 rather than allow that outstanding production to postpone the application further. ECF 201 ¶¶ 15–18; Steinmetz Supp. Decl. ¶¶ 9–12.

Plaintiffs' contrary inference, that filing before production proves the investigation unnecessary, does not follow. An initial failure to locate quality-control records warranted inquiry into the licensee's records and the adequacy of the owner's search. Defendants pursued that inquiry, evaluated the available responses, and pleaded without awaiting every promised document. Rule 16 does not turn those efforts into delay merely because counsel ultimately concluded that the available facts supported an application before discovery was complete.

Plaintiffs' authorities do not help them. This case bears no resemblance to *Oscar v. BMW of North America, LLC*, No. 09-cv-11, 2011 WL 6399505, at *3–5 (S.D.N.Y. Dec. 20, 2011), where the movant knew the relevant deficiency for more than two years, pursued an unsuccessful certification motion, and then sought to overhaul the class and reopen discovery. Defendants sought leave during active discovery, documented their intervening efforts, and request no reopening or extension.

**B. The remaining theories address the newly asserted licensee's claims and the subjects actually investigated.**

Plaintiffs' claim-by-claim objection also overlooks the investigation's scope. The May 15 requests addressed products, purchasers, advertising, trade channels, use, confusion, and the basis for ASP's asserted rights, not licensing alone. ASP's June 15 answers expressly limited its claimed use and commercial activity to the period beginning February 6, 2024, while directing ownership and historical-use inquiries to Weather Brands and Snow Joe. *See* ECF 131-7, General Objection 12 & Interrogatories 2–9. Those subjects bear directly on source identification, acquired distinctiveness, enforceable scope, and the respective rights asserted against Defendants.

Familiarity with a product name does not establish the scope of a later licensee's asserted use, the significance of that use to the relevant public, or the performance of a subsequently disclosed license. The Rule 16 inquiry must account for that investigation and its relationship to the particular relief sought. Under *Kassner*, the Court may also consider that the resulting counts resolve the same enforceability dispute without requiring a new litigation schedule. 496 F.3d at 244. Here, the BMC Parties' evidence supports that limited exercise of discretion.

The BMC Parties presented the genericness, descriptiveness, abandonment, and cancellation theories together in July. Count II preserves those alternative grounds for determining enforceability; Count III narrows the requested registration relief. Count I, filed with the Court-directed August 19 answer, seeks a declaration against both the owner and the newly joined licensee concerning the uses challenged in the Second Amended Complaint ("SAC"). *See* ECF 201 ¶¶ 18–28. The sequence reflects investigation followed by a coordinated responsive pleading, not an attempt to introduce an unrelated dispute after an adverse merits ruling.

Finally, Plaintiffs' reliance on Defendants' intervention opposition is misplaced. Identifying Weather Brands as the contractual owner did not admit that its marks remained valid

despite subsequent uncontrolled licensing. Arguing that the owner could represent a licensee's derivative infringement interest did not concede the merits of the licensee's newly asserted commercial claims. ECF 76 at 1–2, 7–9. The counterclaims respond to those newly asserted interests on the record that Defendants' investigation assembled.

### C. The cross-motion seeks the required leave; the earlier mootness ruling does not foreclose it.

The August 5 order denied the July application as moot, confirmed the operative SAC, and directed a response by August 19. ECF 148. Defendants met that date and now seek leave under Rules 16 and 15 through the cross-motion expressly authorized by the Court. ECF 159, 179, 199. This application invokes the Court's discretion; it does not depend on an automatic right to add counterclaims whenever a complaint changes.

The explanation in Defendants' September 4 letter that the July theories carried forward establishes continuity, not abandonment of the earlier request for relief. ECF 177 at 2. Plaintiffs cannot disregard the July application when measuring diligence and then invoke its existence as a reason to reject the same claims. Nor did the mootness disposition adjudicate their sufficiency. The present motion supplies the procedural vehicle for deciding the documented request on its merits.

*GEOMC Co. v. Calmare Therapeutics Inc.* confirms that a challenge to counterclaims already included in an amended answer can be evaluated through the standards governing leave to amend. 918 F.3d 92, 100–01 (2d Cir. 2019). The filing sequence is therefore not an incurable defect. Defendants have now presented the formal motion, the unchanged pleading, and the factual showing necessary for the Court to exercise that authority. While *GEOMC* rejected counterclaims reaching beyond the scope of an amended complaint's new claims, Defendants' counterclaims are in direct response to ASP's intervention and assertion of its' rights.

## II. PLAINTIFFS IDENTIFY NO UNDUE PREJUDICE CAUSED BY THESE COUNTERCLAIMS.

Rule 15 prejudice concerns significant additional discovery or preparation, substantial delay, or comparable litigation harm attributable to the amendment. *Block v. First Blood Associates*, 988 F.2d 344, 350–51 (2d Cir. 1993). *GEOMC*, 918 F.3d at 99–101, directs attention to timing and the counterclaims' expansion of the litigation. It does not make the addition of a separately numbered claim inherently prejudicial.

The relevant evidence is already central to Plaintiffs' case: the marks' significance, licensed operations, product presentation, purchasing channels, and alleged confusion. ASP itself supported intervention by emphasizing the common intellectual property, conduct, and evidence. ECF 66 at 2, 6–7. Defendants disclosed their validity and cancellation theories in July, before the document-discovery deadline and months before the scheduled close of fact discovery. Plaintiffs already anticipated survey and damages experts. July 10 Tr. 29:12–20; ECF 123-3; ECF 201 ¶ 29. The cross-motion adds no party, transaction, or request for additional discovery time.

Plaintiffs' references to eighteen custodians and 45 GB describe ongoing collection under existing demands, not work newly created by allowing these counts. ECF 201 ¶¶ 31–35; ECF 201-9 at 3, 13. The burden of completing discovery in the existing controversy is not itself amendment prejudice. And the narrowed cancellation claim requires no inquiry into additional registrations or products.

The opposition also confuses a different legal consequence with a different factual controversy. Cancellation would change the relief available; it would not change which license, goods, or challenged uses require examination. Plaintiffs identify no deposition that these counts would require the parties to repeat, no completed expert analysis that the counts would invalidate, and no additional deadline the application asks the Court to extend. *Block* requires a concrete

assessment of litigation burden, not the assumption that any affirmative challenge to Plaintiffs' rights necessarily creates undue prejudice.

*Downtown Music Publishing LLC v. Peloton Interactive, Inc.*, 436 F. Supp. 3d 754, 767–68 (S.D.N.Y. 2020) (Cote, J.), illustrates the kind of prejudice absent here. The proposed amendment there would have enlarged the antitrust market and required discovery into the entire universe of compositions and licensing practices. The request was informal, unsupported by a proposed pleading, and unexplained despite earlier opportunities to correct the alleged defect. Here, the complete pleading is before the Court, the investigation is documented, and the requested relief stays within the existing commercial dispute.

## III. THE COUNTERCLAIMS STATE CLAIMS FOR RELIEF; PLAINTIFFS' COMPETING FACTUAL ACCOUNT DOES NOT ESTABLISH FUTILITY.

Futility asks whether the proposed pleading survives Rule 12(b)(6). *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). The Court considers the pleaded facts and properly incorporated documents, accepting the factual allegations and drawing reasonable inferences for Defendants as counterclaimants. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010). Plaintiffs' effort to establish adequate supervision through Riley's new narrative applies the wrong inquiry.

### A. Reserved contractual powers do not establish actual quality control.

The controlling question is whether the licensee's operations were adequately policed to protect the quality associated with the mark. *General Motors Corp. v. Gibson Chemical & Oil Corp.*, 786 F.2d 105, 110 (2d Cir. 1986). In *General Motors*, evidence of specifications and actual monitoring supported the licensor's position. The existence of contractual language was not a substitute for examining the operation of the licensing program.

The agreement here makes that distinction concrete. Section 7.B.2 provides that ASP "shall not require the approval of Licensor" for manufacture, distribution, or sale consistent with historical practice. Section 7.B.3 provides for inspections and samples upon request; § 7.B.4 "recommends" testing before a large production run or purchase from a new supplier. Section 7.C places manufacturer-contract and enforcement obligations on ASP. ECF 131-4, Agreement § 7. These provisions could have required routine Weather Brands approvals or testing. They do not. Nor do they establish that Weather Brands used its inspection rights, requested samples, monitored compliance, or reasonably supervised a delegated program.

The distinction is equally clear in § 7.A, which requires ASP to report material verified consumer and regulatory complaints. That provision establishes what ASP must report; it does not establish that any report reached Weather Brands or that Weather Brands evaluated the response. Likewise, § 7.B.2's historical-consistency condition prescribes when approval is unnecessary; it does not prove that the condition was satisfied. Plaintiffs would have the Court assume compliance with the very supervisory arrangement whose implementation the counterclaims dispute. The agreement supplies no basis for that assumption.

The counterclaims address those very omissions by identifying the February 2024 transaction, ASP's operational control, the absence of an established Weather Brands–ASP supervisory relationship, and failures to establish or apply product-specific standards, testing, inspections, sample approvals, and corrective measures. They further allege inconsistent product and labeling outcomes and that uncontrolled use caused loss of source-identifying significance. ECF 159, Counterclaims ("CC") ¶¶ 36–45, 65–66. *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573–74 (S.D.N.Y. 2013), is not to the contrary. There, challengers sought dismissal because the trademark owner's complaint failed to allege actual exercise of reserved control. The

court rejected that attempt to shift the abandonment burden into the owner's pleading. Here, Defendants affirmatively plead the operational failures and resulting abandonment. *Dual Groupe* did not hold that reserved contractual authority defeats those allegations as a matter of law.

Likewise, *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 596 (S.D.N.Y. 2010), rejected an abandonment theory on a developed summary-judgment record demonstrating comprehensive controls, against which isolated incidents were insufficient. That evidentiary determination does not resolve this pleading motion. Defendants allege systemic absence of meaningful supervision, not an isolated defect within an established control program.

**B. Riley's historical narrative does not establish Weather Brands' supervision or negate the pleaded facts.**

Riley describes prior assignments, common suppliers, personnel continuity, and allegedly unchanged products. ECF 210 ¶¶ 5–21. Those assertions do not identify a Weather Brands inspection, test, sample review, approval, or corrective instruction under the February 2024 license. His attachments are assignments, not records of administering that agreement. And his reference to Mr. Wachsler's November 2024 deposition supplies neither the transcript nor a supporting page-and-line citation. *Id.* ¶ 3 & Exs. A–D. Historical ownership and transition work do not establish that Mr. Wachsler administered or knew the performance of the later license. *See* Steinmetz Supp. Decl. ¶¶ 17–19; Declaration of Barry Wachsler ("Wachsler Decl.") ¶¶ 3–8.

Plaintiffs also misidentify the assignment they attribute to Mr. Wachsler. Their opposition states that he personally executed the NorthRock-to-Snow Joe transfer, but Exhibit C identifies Moshe Wechsler as NorthRock's signatory. ECF 209 at 7; ECF 210-3, PDF p. 6. The earlier Dart assignments are different instruments. Conflating those transactions supplies no evidence of Weather Brands' later supervision. Steinmetz Supp. Decl. ¶ 19; Wachsler Decl. ¶¶ 3–4.

The pleading also expressly disputes the predicates of Plaintiffs' continuity argument: it alleges no established supervisory course between Weather Brands and ASP and no longstanding relationship justifying reliance in place of meaningful control. CC ¶¶ 38–44. Whether personnel continuity furnished a reasonable basis for supervision or reliance presents a factual question. Riley's contrary account cannot make Defendants' allegations disappear on a pleading motion.

A supplier's identity answers who supplied the product, not whether Weather Brands monitored quality. Retaining personnel identifies who continued working, not what those employees reported to Weather Brands or what supervision it exercised. Those facts may bear on a claimed basis for reliance, but they do not establish that basis conclusively. Defendants need not disprove Riley's competing explanation to plead a plausible failure of control; Plaintiffs must establish their account through the merits process.

Information-and-belief pleading is appropriate where the relevant operational facts lie within the opposing parties' control or the alleged circumstances support a plausible inference. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). The identified parties, transaction, division of operations, and alleged supervisory failures provide that context. CC ¶¶ 36–45. The pleading also alleges the statutory consequence—loss of source significance through uncontrolled use. CC ¶¶ 45, 65–66; 15 U.S.C. § 1127. *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 264–65 (2d Cir. 2011), makes that consequence material; it does not require a counterclaimant to prove it before obtaining leave.

### C. The genericness allegations address the complete designation in its pleaded marketplace context.

The genericness inquiry concerns the meaning of the designation as a whole to the relevant public. *United States Patent & Trademark Office v. Booking.com B.V.*, 591 U.S. 549, 556–58 (2020). Defendants plead that inquiry. They identify the goods—chemical preparations for melting

snow and ice—and their purchasers, then allege how the complete BLUE HEAT SNOW AND ICE MELTER designation identifies the product rather than its source. CC ¶¶ 22–35, 62–63, 71.

Plaintiffs' own marketing describes the product as a blue calcium blend of heat-generating pellets; the pleading describes BLUE HEAT's use in product titles and stock descriptions and identifies competing heat- and fire-formative terminology. CC ¶¶ 26–31. Those allegations supply commercial context for the expressly pleaded primary significance of the complete designation. The product's color, composition, and operation explain that alleged understanding; they do not replace the pleaded genus with a litigation-created class. The pleading likewise alleges that PELLETS OF FIRE, taken as a complete expression in the same market, identifies heat-generating pellets rather than a unique source. CC ¶ 34.

Plaintiffs ask the Court to choose their source-identifying interpretation before the evidence of marketplace understanding is developed. *Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 214–16 (2d Cir. 2003), rejects premature fact-finding about a composite mark and requires consideration of the whole. Defendants' allegations meet that requirement. Registration No. 5,000,400 is on the Supplemental Register, which carries no prima facie presumption of validity under § 1057(b). 15 U.S.C. § 1094. Count III seeks cancellation for genericness or abandonment; Count II separately pleads descriptiveness and the resulting limits on enforceability. CC ¶¶ 25, 61–72. Plaintiffs' attempt to collapse those distinct grounds misreads the pleading.

Rule 8 expressly permits alternative and inconsistent grounds for relief. Fed. R. Civ. P. 8(d)(2)–(3). Thus, alleging that a designation is generic or, alternatively, descriptive does not make either theory self-defeating. Nor does a dispute over genericness dispose of the independently pleaded abandonment ground for cancellation. The Court should test each asserted basis for relief

on its own allegations, not use Plaintiffs' objection to one characterization to eliminate every count.

## IV. THE COUNTERCLAIMS SEEK DISTINCT, PRACTICAL RELIEF.

Count I determines whether Defendants' specific challenged uses infringe. Count II determines the validity, enforceable scope, and abandonment of the rights asserted against them. Count III seeks cancellation of the BLUE HEAT registration under 15 U.S.C. §§ 1092 and 1119.

Declaratory discretion turns on practical utility, relief from uncertainty, efficiency, and the other circumstances—not a categorical prohibition on overlapping counterclaims. *Admiral Insurance Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023). These parties are already litigating the challenged uses, and BMC seeks certainty concerning those uses against both entities asserting rights. CC ¶¶ 10–21, 51–60. Resolving that controversy alongside the registration claims avoids fragmentation without introducing another transaction or forum.

*The Continuum Group LLC v. 666 Performance, LLC*, No. 24-cv-5834, 2025 WL 1489255, at *2–3 (S.D.N.Y. May 23, 2025), reflects a discretionary assessment of a duplicative noninfringement counterclaim. It does not make overlap a bar to useful relief under *Admiral*, much less authorize dismissal of separate invalidity and cancellation claims. The Court should retain these coordinated counts and decide the parties' rights together.

## CONCLUSION

Defendants respectfully request that the Court grant the cross-motion, modify the amendment deadline solely to permit the unchanged August 19 Counts I–III, deem those counterclaims filed with leave *nunc pro tunc* as of that date without refiling, deny Plaintiffs' motion, and direct the appropriate Counterclaim-Defendants to answer.

Dated: New York, New York
October 9, 2026

**GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**

By: */s/ Michael M. Steinmetz*
Michael M. Steinmetz
225 Broadway, 37th Floor
New York, New York 10007
(212) 380-3623
ms@gs2law.com

*Attorneys for Defendants and Counterclaim-Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I certify that this reply memorandum contains 3,434 words, excluding the caption, table of contents, table of authorities, signature blocks, and this certificate. This memorandum complies with the applicable 3,500-word limit.

Dated: October 9, 2026

*/s/ Michael M. Steinmetz*
Michael M. Steinmetz