**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

WEATHER BRANDS LLC,

*Plaintiff and*
*Counterclaim-Defendant,*

ALL SEASON POWER LLC,

*Intervenor-Plaintiff and*
*Counterclaim-Defendant,*

v.

BLUE MINERAL CORPORATION, BARRY WACHSLER and JOHN DOES 1-10,

*Defendants and*
*Counterclaim-Plaintiffs.*

**Civil Case No. 25-cv-2423-DLC-SLC**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT AND TO MODIFY THE SCHEDULING ORDER**

PRACTUS LLP

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff and*
*Counterclaim-Defendant*
*Weather Brands LLC*

PRACTUS LLP

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Attorneys for Intervenor-Plaintiff and*
*Counterclaim-Defendant*
*All Season Power LLC*

# TABLE OF CONTENTS


TABLE OF CONTENTS ....... i

TABLE OF AUTHORITIES ....... iii

INTRODUCTION ....... 1

STATEMENT OF FACTS ....... 2

A Plaintiffs' Diligent Efforts to Obtain Defendants' Financial Records ....... 2

B. Material Discrepancies in Defendants' Reported Sales Necessitated Discovery of Their Bank Records ....... 4

C. Defendants' Redactions Necessitated a Second Court Order Compelling Production ....... 6

D. The Unredacted Records Revealed Additional Financial Accounts and Northrock Minerals 2 LLC's Involvement in the Accused Ice-Melt Business ....... 8

E. The Newly Disclosed Evidence Requires Amendment and Additional Fact Discovery ....... 10

ARGUMENT ....... 11

I. GOOD CAUSE EXISTS UNDER RULE 16(b)(4) TO PERMIT AMENDMENT BASED ON NEWLY DISCOVERED EVIDENCE ....... 11

A. Plaintiffs diligently pursued the evidence supporting amendment, which became available only after repeated judicial intervention. ....... 11

B. Newly discovered evidence of Northrock Minerals 2 LLC's participation in the accused ice-melt business establishes good cause for its joinder. ....... 13

II. LEAVE TO FILE THE PROPSOED THIRD AMENDED COMPLAINT SHOULD BE GRANTED UNDER RULES 15(a)(2) AND 21. ....... 15

A. The proposed Third Amended Complaint satisfies Rule 15(a)(2), and Northrock Minerals 2 LLC's joinder is appropriate under Rules 20(a)(2) and 21. .......... 16

B. The proposed amendment will cause no undue prejudice. .......... 17

III. GOOD CAUSE EXISTS UNDER RULE 16(b)(4) TO MODIFY THE DISCOVERY SCHEDULE TO PERMIT ADDITIONAL FACT DISCOVERY. .......... 18

A. The newly disclosed financial evidence creates substantial discovery needs that could not reasonably have been addressed within the existing schedule .......... 19

B. Defendants' inconsistent reliance on an interim document production deadline to deny discovery further supports modification of the discovery schedule. .......... 20

C. A reasonable extension will permit necessary discovery while minimizing prejudice and promoting judicial economy. .......... 21

CONCLUSION .......... 22

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Block v. First Blood Associates*
988 F.2d 344 (2d Cir. 1993) ... 17

*Carroll v. Trump*
No. 22-cv-10016, 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023) ... 18

*Ciaramella v. Zucker*
No. 18-cv-6945, 2021 WL 4206779 (S.D.N.Y. Aug. 10, 2021) ... 18, 20

*City of Almaty v. Ablyazov,*
278 F. Supp. 3d 776 (S.D.N.Y. 2017) ... 15

*Foman v. Davis,*
371 U.S. 178 (1962) ... 15, 16, 17

*Kassner v. 2nd Avenue Delicatessen Inc.,*
496 F.3d 229 (2d Cir. 2007) ... 11

*Kelly v. Communications Workers of America, AFL-CIO,*
697 F. Supp. 3d 193 (S.D.N.Y. 2023) ... 15, 17

*Lee v. HDR Global Trading Ltd.,*
347 F.R.D. 633 (S.D.N.Y. 2024) ... 15, 16, 17

*Marsh USA LLC v. Alliant Insurance Services, Inc.,*
No. 25-cv-5470, 2026 WL 2364615 (S.D.N.Y. Aug. 14, 2026) ... 18, 20, 21

*Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York & New Jersey,*
No. 15-cv-3526, 2016 WL 6083956 (S.D.N.Y. Oct. 17, 2016) ... 11, 12

*Salomon v. Adderley Industries, Inc.,*
960 F. Supp. 2d 502 (S.D.N.Y. 2013) ... 13

*Soroof Trading Development Co. v. GE Microgen, Inc.,*
283 F.R.D. 142 (S.D.N.Y. 2012) ... 11, 14

*United States v. Continental Illinois National Bank & Trust Co.,*
889 F.2d 1248 (2d Cir. 1989) ... 17

**Statutes** **Page(s)**

15 U.S.C. § 1117(a) ........................................................................................ 19

**Rules** **Page(s)**

Fed. R. Civ. P. 15(a) ........................................................................................ 15

Fed. R. Civ. P. 15(a)(2)............................................................................ 2, 11, 15-17

Fed. R. Civ. P. 16 ........................................................................................ 11

Fed. R. Civ. P. 16(b)(4)................................................ 1, 10 n.2, 11, 13, 15, 17-18, 21

Fed. R. Civ. P. 20 ........................................................................................ 16

Fed. R. Civ. P. 20(a)(2)..................................................................................15-16

Fed. R. Civ. P. 21 ................................................................................... 2, 15-17

Plaintiff and Counterclaim-Defendant Weather Brands LLC ("Weather Brands") and Intervenor-Plaintiff and Counterclaim-Defendant All Season Power LLC ("ASP") (together, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Leave to File a Third Amended Complaint and to Modify the Scheduling Order (this "Motion").

## INTRODUCTION

Plaintiffs seek leave to file a Third Amended Complaint and a reasonable extension of fact discovery because the accused infringing ice-melt business of Defendants Blue Mineral Corporation ("BMC") and Barry Wachsler ("Wachsler") had obscured critical information through extensive redactions in their initial court-ordered production. Once those redactions were removed, Plaintiffs discovered previously unidentified financial accounts, substantial transfers involving various entities, and evidence directly connecting a newly identified entity, Northrock Minerals 2 LLC, to Defendants' accused ice-melt business.

These disclosures fundamentally changed Plaintiffs' understanding of how Defendants conduct and finance their ice-melt business. They also revealed substantial gaps in the financial discovery necessary to establish the extent of Defendants' infringing sales and profits. The October 30, 2026 fact discovery deadline leaves Plaintiffs insufficient time to investigate the additional accounts, obtain discovery from the newly identified entity, and examine the financial transactions that Defendants' redactions had previously concealed.

Plaintiffs diligently pursued this evidence, obtained it only after repeated discovery efforts and judicial intervention, and promptly sought to amend their pleading. These circumstances establish good cause under Rule 16(b)(4) to modify the

scheduling order and warrant leave under Rules 15(a)(2) and 21 to file the proposed Third Amended Complaint, filed concurrently, (McFarlane Dec.[1] at ¶ 3 & Ex. 1), along with a redline of changes from the Second Amended Complaint (Dkt. 133). (*Id.* at ¶ & Ex. 2). Plaintiffs respectfully request a reasonable extension of fact discovery, with the specific scope and deadlines to be addressed at the forthcoming status conference.

## STATEMENT OF FACTS

### A. Plaintiffs' Diligent Efforts to Obtain Defendants' Financial Records

The Court's December 11, 2025 Scheduling Order set a deadline of January 16, 2026 for the amendment of pleadings or the joinder of additional parties. (Dkt. 51). On July 10, 2026, the Court ordered a revised schedule setting new dates for discovery deadlines relating to a deadline for summary-judgment motions or a Joint Pretrial Order of February 12, 2027. (Dkt. 118).

Plaintiffs had always sought economic damages resulting from Defendants accused infringing activities and therefore addressed discovery of financial information concerning sales of the accused infringing products from the earliest steps in fact discovery.

Starting with Weather Brands' first set of requests for production ("RFPs") served on Defendants on January 30, 2026, Plaintiffs have been seeking financial records from Defendants. (*E.g.*, McFarlane Dec. at ¶ 6 & Ex. 3). Defendants responded that that, subject to objections, they "will produce" the requested financial records. *E.g.*, *id.* at ¶ 7 & Ex. 4.

[1] "McFarlane Dec." refers to the concurrently filed Declaration of Matthew McFarlane and exhibits attached thereto.

As of April 16, 2026, Defendants had produced a mere 44 Bates-stamped pages, none of which included the requested financial data. (Dkt. 78 at 1). Despite further extensive conferences between counsel, and Defendants' promises to produce additional documents, including the financial records, as of May 6, 2026, Defendants had still failed to produce the financial records, necessitating Plaintiffs' first letter motion to compel. (*Id.* at 2).

At the May 14, 2026 hearing and in the May 15, 2026 Order (Dkt. 87), the Court ordered Defendants to produce, *inter alia*, the ice melt sales data from their QuickBooks accounting system for the period January 2023 to December 2025, by no later than May 19, 2026. Defendants failed to produce the QuickBooks data by the May 19 date ordered (and did not seek an extension of time to comply with the order) and belatedly produced some QuickBooks sales data well over a month later, on June 25, 2026.

Nearly five months ago, on May 31, 2026, after being granted leave to join the action as a Co-Plaintiff, over Defendants' opposition, ASP served its First RFPs on Defendants, seeking Defendants' bank records. (McFarlane Dec. at ¶ 10 & Ex. 5 (RFP Nos. 3, 4)). Meanwhile, Plaintiffs also sought third party discovery from Defendants' primary customer, Home Depot, and Defendant's ice-melt packager, Kizewski Packaging Services LLC ("Kizewski"). (*Id.* at ¶ 11). Plaintiffs issued the Kizewski subpoena on May 21, 2026 and issued the Home Depot subpoena on July 3, 2026. (*Id.*).

After extensive discussion with counsel representing Kizewski and Home Depot, those third parties gradually began producing documents. On August 18, 2026, Home Depot produced to all parties to this action data from Home Depot's

accounting system regarding its ice melt purchases from Defendants. (McFarlane Dec. at ¶ 12). On October 9, 2026, Kizewski's counsel produced data regarding financial transactions between Kizewski and Defendants. (*Id.* at ¶ 22). Within a week, Plaintiffs' counsel produced those documents to Defendants' counsel. (*Id.*).

### B. Material Discrepancies in Defendants' Reported Sales Necessitated Discovery of Their Bank Records

Plaintiffs' efforts to obtain Defendants' financial records arose from substantial discrepancies among three sets of sales figures for Defendants' accused BLUE FIRE ice-melt products. In response to Weather Brands' Interrogatory No. 12, BMC answered under oath that Defendants had sold approximately 275,000 units of BLUE FIRE between the commencement of BMC's operations and March 2026. (Dkt. 188 at 2). Defendants' subsequent court-ordered QuickBooks production, however, reflected sales of 664,416 units of BLUE FIRE, totaling approximately $9.9 million, between January 2023 and December 2025. Defendants' own accounting records therefore reflected approximately 2.5 times the unit sales reported in their sworn interrogatory response, despite covering a period approximately three months shorter, truncating sales during the 2025-2026 ice-melt season. (Dkt. 188 at 2).

Ice-melt purchase records were produced by third party Home Depot, which Defendants have represented to be their sole significant customer for BLUE FIRE products. (*E.g.*, McFarlane Dec. at ¶ 13 & Ex. 6 (Response to Interrogatory No. 12) ("Home Depot has been the sole customers for these products."), (Response to Interrogatory No. 17) ("Home Depot has been the sole customer/retailer for products offered under the BLUE FIRE mark."); *see also id.* & Ex. 7 (Responses to Interrogatory Nos. 6, 11, 12, and 17).

The Home Depot production also identified two bank accounts used to pay Defendants (one each with Citibank and Signature Bank) and revealed a further material discrepancy. (Dkt. 188 at 1). For the period January 2023 through December 2025, Home Depot's records reflected at least approximately $11.5 million in BLUE FIRE sales, compared with approximately $9.9 million reflected in Defendants' QuickBooks records for the same period. (*Id.* at 2). The resulting discrepancy of approximately $1.6 million raises substantial questions concerning the accuracy and completeness of Defendants' reported sales, compelling Plaintiffs to seek monthly statements from Defendants' bank accounts. (*Id.*). Plaintiffs had sought production of bank statements and financial information relating to sale of accused ice-melt products months earlier, but Defendants consistently refused to produce the requested documents. (*Id.* at 1-2).

Defendants vigorously opposed Plaintiffs' motion to compel. (Dkt. 190). Even though the requests had been pending for months, Defendants invoked the August 31, 2026 "document discovery deadline" as a basis for withholding the records, accused Plaintiffs of waiting too long to challenge their objections, and characterized the request for transaction records from two specifically identified bank accounts as an excessive demand for financial information unrelated to the litigation. (*Id.* at 1-2). Defendants advanced the specious argument that Home Depot's business records did not establish Defendants' ownership or use of the identified accounts for payments on BLUE FIRE sales, and even more improbably, represented that their own searches had located no additional responsive bank records. (*Id.* at 2). Defendants also sought to explain away substantial discrepancies in their reported sales by characterizing their sworn interrogatory response as an estimate and speculating that the

approximately $1.6 million difference between their QuickBooks records and Home Depot's records might reflect returns, credits, discounts, offsets, or accounting differences, without providing a reconciliation substantiating any of those explanations. (*Id.*)

### C. Defendants' Redactions Necessitated a Second Court Order Compelling Production

On September 14, 2026, the Court granted Plaintiffs' motion to compel in its entirety. (Dkt. 193). Defendants were thus ordered to produce, within three business days, the names and addresses of the account holders and records of all deposits and withdrawals from January 2023 through June 2026 for the Citibank account ending in 0942 and the Signature Bank account ending in 2744. (Dkt. 188 at 1).

On September 17, 2026, Defendants requested an additional 18 days to comply, claiming that the records had to be obtained from the banks and that additional time was needed to review and prepare the records for production "in full." (Dkt. 196 at 1). The Court granted the extension, giving Defendants until October 6, 2026, to comply. (Dkt. 198).

On October 6, 2026, at 11:16 p.m., less than an hour before the extended deadline, Defendants produced 193 pages of bank records containing extensive redactions, despite their representation that the records would be produced "in full." (Dkt. 212 at 1). The redactions concealed account numbers, account balances, counterparties on 135 online transfers, wire transfer information, and, in some instances, entire withdrawal transactions, including dates, payees, and amounts. (Dkt. 212 at 1; McFarlane Dec. ¶ 15).

On October 7, 2026, Plaintiffs notified Defendants that the extensive redactions violated the Court's September 14 Order and demanded unredacted records and identification of the accounts by noon on October 9. (Dkt. 212 at 2; McFarlane Dec. at ¶ 16). When Defendants failed to comply, Plaintiffs filed a second motion to compel on October 9, seeking an order requiring production of the complete, unredacted records, a sworn declaration from Wachsler identifying the accounts, and reimbursement of attorneys' fees and expenses caused by Defendants' noncompliance. (*Id.*)

Defendants opposed Plaintiffs' second motion to compel, arguing that Plaintiffs had filed prematurely and failed to complete a further meet and confer. (Dkt. 213). Defendants advanced this argument despite the parties' prior conference concerning the same bank records and the Court's existing order compelling their production. (Dkt. 216).

On October 13, 2026, the Court granted in part Plaintiffs' second motion to compel, and ordered Defendants to produce the complete, unredacted records for the Citibank and Signature (Flagstar) accounts that same day. (Dkt. 217). The Court further ordered Wachsler to provide further explanatory information, including the full account numbers, account holders and addresses, dates opened and closed, and confirmation of the accounts' identities, and requested Defendants file an opposition to Plaintiffs' request for fees and costs. (*Id.*).

Defendants produced the unredacted Citibank and Signature/Flagstar statements (the "Unredacted Records") on October 13, 2026 as ordered. (McFarlane Dec. at ¶ 18). On October 14, 2026, Wachsler submitted a sworn declaration confirming Defendants' production of the Unredacted Records. (Dkt. 218). Wachsler

further stated that the production contained statements for only those two accounts and that any other account numbers or names appearing in the records were merely sources or destinations of individual transactions, without identifying the owners or purposes of those additional accounts. (Dkt. 218, ¶ 5). On October 15, 2026, Defendants opposed Plaintiffs' request for attorneys' fees, maintaining that their redactions were substantially justified and that the information withheld was immaterial. (Dkt. 219). Defendants asserted that "[t]he only information the October 13 re-production disclosed beyond Defendants' October 9 offer was running balances and full account numbers," and that "[t]he motion secured nothing that changes Plaintiffs' ability to prove their claims." (Dkt. 219 at 2, § 4).

### D. The Unredacted Records Revealed Additional Financial Accounts and Northrock Minerals 2 LLC's Involvement in the Accused Ice-Melt Business

The significance of the information concealed by Defendants' redactions was almost immediately apparent. The Unredacted Records revealed the existence of at least five additional financial accounts, beyond the two accounts identified in the Court's Order, apparently controlled by Defendants and involved in substantial transfers of funds. Those accounts included brokerage accounts at Charles Schwab associated with BMC and Wachsler, additional bank accounts, and accounts used to transfer substantial sums into and out of BMC. Individual transfers frequently involved hundreds of thousands of dollars, including a transfer of approximately $800,000 from BMC to another account associated with Wachsler. (Dkts. 219-1, 223; McFarlane Dec. at ¶ 19).

The newly disclosed information also exposed significant gaps in Defendants' financial records. Wachsler's October 14 declaration confirmed that BMC's Citibank

account closed on January 18, 2024, and that its Flagstar account did not open until October 16, 2024. (Dkt. 218 ¶¶ 3, 4; McFarlane Dec. at ¶ 20). Neither account was therefore available to receive payments from Home Depot during the intervening nine months, raising further questions concerning the accounts through which Defendants received ice-melt revenues. Defendants have yet to produce the complete records of the additional accounts identified through the unredacted production.

Of particular significance, the Unredacted Records shed light on transactions revealed in business records produced by third party Kizewski Packaging Services LLC, Defendants' ice-melt packager. (McFarlane Dec. at ¶ 22 & Ex. 8). Documents from Kizewski revealed the involvement of a previously undisclosed entity, Northrock Minerals 2 LLC ("NRM2"), which made payments to Kizewski totaling approximately $250,000 during January and February 2026. (*Id.* at KIZEWSKI 0111-13). New Jersey corporate records identify Wachsler as a member or manager of NRM2, which was formed on October 19, 2022 and subsequently registered the alternate name "Northrock Minerals" for a distribution business. (McFarlane Dec. at ¶ 23 & Ex. 9).

These discoveries materially expanded the known scope of Defendants' financial operations and raised substantial questions concerning the relationships among BMC, Wachsler, NRM2, and the additional financial accounts. Plaintiffs have yet to obtain the underlying account records, determine the ownership and business purposes of all the newly identified accounts, trace the substantial transfers among them, or establish the full extent of NRM2's involvement in the manufacture, packaging, distribution, and sale of the accused products. These matters bear directly on the identity of the entities responsible for the accused infringement, the extent of

Defendants' sales and profits, and Plaintiffs' allegations concerning Wachsler's control of the related entities.

### E. The Newly Disclosed Evidence Requires Amendment and Additional Fact Discovery

The need for further discovery has arisen as the existing fact discovery period approaches its October 30, 2026 deadline. Defendants continue to invoke the August 31 "document discovery deadline" to resist Plaintiffs' timely discovery requests, while continuing to demand additional searches and document productions from Plaintiffs and seeking an extension to complete party depositions. (Dkts. 220 to 222). Plaintiffs brought these developments to the Court's attention on October 19, 2026, identifying both the newly discovered financial evidence and the need for additional discovery. (Dkts. 221, 223). The proposed TAC incorporates the recently discovered facts, adds NRM2 as a Defendant, and supplements Plaintiffs' existing allegations concerning Defendants' financial operations, common control, and knowing and willful infringement. The newly identified accounts, financial transactions, and corporate relationships require further investigation beyond the existing fact discovery deadline.[2]

[2] Plaintiffs respectfully submit that modification of the scheduling order under Rule 16(b)(4) will help end the near-daily cycle of letter motions and responses concerning putative discovery disputes that could and should have been resolved through good-faith cooperation between counsel. Defendants continue to invoke the August 31 document discovery cutoff to resist substantive responses to ASP's September 3, 2026 interrogatories and document requests, served almost two months before the October 30, 2026 fact discovery deadline, which include requests for information relating to BMC's financial accounts and Wachsler's relationship with the various Northrock entities. (McFarlane Dec. at ¶ 24 & Exs. 10, 11). Defendants maintain these objections while continuing to demand additional expansive document productions from Plaintiffs based on nonspecific search terms and a broadening list of custodians, further demonstrating the need for a clear, workable discovery schedule.

# ARGUMENT

## I. GOOD CAUSE EXISTS UNDER RULE 16(b)(4) TO PERMIT AMENDMENT BASED ON NEWLY DISCOVERED EVIDENCE.

When leave to amend a pleading is sought after a scheduling order's deadline for amendment, the good cause requirement of Rule 16 applies alongside Rule 15(a)(2)'s liberal amendment standard. *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 243-44 (2d Cir. 2007). The Second Circuit has explained that "[t]he primary consideration is whether the moving party can demonstrate diligence," although the Court may consider other factors. *Id.* at 244. Good cause exists where, despite diligent efforts, the moving party could not reasonably have met the applicable deadline. *Soroof Trading Development Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012). Where facts supporting amendment become available through discovery after the amendment deadline, courts recognize good cause when the moving party diligently pursued the information and acted promptly upon obtaining it. *See Port Authority Police Benevolent Ass'n, Inc. v. Port Authority of New York & New Jersey*, No. 15-cv-3526, 2016 WL 6083956 at *3 (S.D.N.Y. Oct. 17, 2016).

### A. Plaintiffs diligently pursued the evidence supporting amendment, which became available only after repeated judicial intervention.

Plaintiffs' efforts to obtain Defendants' financial records plainly establish diligence under Rule 16(b)(4). On May 31, 2026, Plaintiffs had served document requests seeking "all records of payments received by Defendants" from Home Depot and other customers, including bank statements, "from January 1, 2023 through the present." (McFarlane Dec. ¶ 10 & Ex. 5, RFP Nos. 3 and 4). Defendants did not produce those records. As discovery progressed, however, substantial discrepancies

among Defendants' sworn sales figures, QuickBooks records, and Home Depot's records produced in response to Plaintiffs' subpoena, emerged that raised serious questions concerning the accuracy of Defendants' reported sales and profits. This all culminated in Plaintiffs' motion to compel production of Defendants' bank records on September 10, 2026. (Dkt. 188). The Court ordered production of the bank records on September 14, 2026. (Dkt. 193). After obtaining an 18-day extension of time to comply, Defendants produced heavily redacted bank statements concealing account numbers, transfer counterparties, wire details, and entire transactions. Plaintiffs thus moved to compel production of the Unredacted Records, which the Court issued on October 13. (Dkt. 212, 217).

The Unredacted Records revealed transactions involving at least five additional financial accounts and substantial transfers among accounts associated with BMC, Wachsler, and related parties. (Dkt. 223). Examination of those transactions alongside third-party business records also disclosed material evidence concerning NRM2's participation in the accused ice-melt business. (*Id.*) These discoveries materially expanded Plaintiffs' understanding of Defendants' financial operations and provided the factual basis for the proposed amendments concerning previously unidentified accounts, related entities, financial arrangements, and willful infringement. Plaintiffs thus promptly brought these discoveries to the Court's attention while fact discovery remained open, establishing their diligence.

These circumstances closely parallel those in *Port Authority Police Benevolent Ass'n*, where the court recognized that good cause exists when material facts supporting the addition of defendants emerge through discovery after the amendment deadline. 2016 WL 6083956, at *5-7. The court found diligence where

delayed document production and subsequent discovery prevented the plaintiffs from obtaining the information necessary to identify additional defendants earlier. *Id.* Similarly, in *Salomon v. Adderley Industries, Inc.*, the court permitted amendment to add defendants whose potentially actionable involvement emerged through discovery after the scheduling deadline, finding that the plaintiffs' inability to name those parties earlier did not reflect a lack of diligence. 960 F. Supp. 2d 502, 507–08 (S.D.N.Y. 2013).

Plaintiffs' showing is particularly compelling because the delayed disclosure followed two orders of the Court compelling production of documents, with the second removing redacted information necessary to identify additional accounts and related business activity. Plaintiffs had pursued that information through discovery requests, conferences with counsel, and judicial intervention, obtaining the unredacted records only on October 13, 2026. Their diligent pursuit of the evidence, followed by prompt action upon obtaining it, establishes good cause under Rule 16(b)(4).

### B. Newly discovered evidence of Northrock Minerals 2 LLC's participation in the accused ice-melt business establishes good cause for its joinder.

The discovery of NRM2's financial involvement in Defendants' accused ice-melt operations provides a further basis for amendment. The original complaint concerned BMC, Wachsler, and the entity <u>NorthRock Minerals LLC</u>, not Northrock Minerals 2 LLC ("NRM2"). (Dkt. 1). The evidence developed through the compelled bank production and corroborating third-party discovery has now revealed, for the first

time, a solid connection between NRM2 and Defendants' ice-melt business, as a counterparty in financial transactions directly connected to the accused business.

The unredacted bank records exposed transfers involving additional financial accounts beyond the two accounts Defendants were ordered to disclose. Those transactions, examined alongside records obtained from Kizewski Packaging Services LLC, Defendants' ice-melt packager, revealed that NRM2 made payments totaling approximately $250,000 for ice-melt packaging during January and February 2026. (Dkt. 223 at 1; McFarlane Dec. at ¶ 22 & Ex. 8 at KIZEWSKI 0111-13). New Jersey corporate records further establish Wachsler's relationship with NRM2. Together, this evidence supplies a factual basis for alleging NRM2's participation in the accused operations and investigating the financial relationships among BMC, Wachsler, and NRM2.

In *Soroof Trading*, the court permitted amendment to add a related corporate entity after discovery revealed material facts concerning its financial support, control, and relationship with the existing defendants. 283 F.R.D. at 148-49. The court recognized that subsequently developed evidence concerning corporate relationships could support amendment even where aspects of the proposed defendant's existence or involvement were previously known. *Id.* at 149.

The same principles apply here. The material facts supporting NRM2's joinder arose from financial transactions and corroborating business records establishing its involvement in the accused ice-melt operations. Plaintiffs diligently sought the underlying evidence, which became available through the recently compelled production and related third-party discovery. The proposed TAC incorporates those newly developed facts and permits adjudication of Plaintiffs' claims against the

entities implicated by the evidence. Plaintiffs' sustained discovery efforts, the delayed production of material financial information, and their prompt pursuit of amendment establish good cause under Rule 16(b)(4) to modify the scheduling order and permit filing of the proposed TAC.

## II. LEAVE TO FILE THE PROPOSED THIRD AMENDED COMPLAINT SHOULD BE GRANTED UNDER RULES 15(a)(2) AND 21.

Federal Rule of Civil Procedure 15(a)(2) directs courts to "freely give leave when justice so requires." The Supreme Court held that this mandate should be heeded absent a sufficient reason for denial, such as undue delay, bad faith, repeated failure to cure pleading deficiencies, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing amendment ordinarily bears the burden of establishing grounds for denial. *Kelly v. Communications Workers of America, AFL-CIO*, 697 F. Supp. 3d 193, 195 (S.D.N.Y. 2023).

Where amendment involves adding a defendant, Rules 20(a)(2) and 21 govern joinder. Rule 20(a)(2) permits defendants to be joined where the claims against them arise out of the same transaction, occurrence, or series of transactions or occurrences, and present at least one common question of law or fact. Rule 21 authorizes courts to add parties on just terms. These provisions are applied liberally to promote judicial economy and the efficient resolution of related claims. *Lee v. HDR Global Trading Ltd.*, 347 F.R.D. 633, 638-39 (S.D.N.Y. 2024). The standard governing the addition of parties under Rule 21 reflects the same liberality afforded amendments under Rule 15(a). *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 789 (S.D.N.Y. 2017).

### A. The proposed Third Amended Complaint satisfies Rule 15(a)(2), and Northrock Minerals 2 LLC's joinder is appropriate under Rules 20(a)(2) and 21.

The proposed TAC satisfies Rule 15(a)(2)'s liberal amendment standard. It concerns the same accused BLUE FIRE and FLAKES OF FIRE products, the same trademark infringement and unfair competition claims, and the same underlying ice-melt business. The additional allegations address the financial arrangements, corporate relationships, sales activity, and willfulness implicated by the evidence developed in discovery. They provide a more complete factual basis for adjudicating Plaintiffs' existing claims and the participation of an additional entity. Plaintiffs' diligence in seeking these amendments is established in Section I, and no circumstance identified in *Foman* warrants denial of leave.

NRM2's joinder also satisfies both requirements of Rule 20(a)(2). The proposed allegations concern NRM2's participation in the same accused ice-melt operations conducted by BMC and Wachsler, including financial transactions and payments for packaging the accused products. The claims therefore arise from a common series of transactions and present overlapping questions concerning infringement, the entities participating in the accused business, Wachsler's control, willfulness, and the extent of recoverable profits. These issues are sufficiently connected to warrant adjudication together. *See Lee*, 347 F.R.D. at 638-39.

Joinder will further promote judicial economy by permitting the Court to determine the respective responsibilities of the participating entities in a single action, based on substantially overlapping evidence and witnesses. Separate litigation against NRM2 would duplicate proceedings concerning the same accused

products and business operations and create a risk of inconsistent findings. Rules 20 and 21 favor resolving these related issues together.

**B. The proposed amendment will cause no undue prejudice.**

Undue prejudice under *Foman* requires more than the prospect of additional litigation expense or discovery. The Second Circuit considers whether amendment would require significant additional resources, substantially delay resolution, or otherwise materially impair a party's position. *Block v. First Blood Associates*, 988 F.2d 344, 350–51 (2d Cir. 1993). The burden of undertaking additional discovery, standing alone, is insufficient to justify denying leave to amend. *United States v. Continental Illinois National Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989); *see also Kelly*, 697 F. Supp. 3d at 196.

The proposed TAC concerns the existing accused business and transactions involving the present Defendants. Much of the relevant evidence and testimony will overlap with discovery already undertaken. Although NRM2's addition and the newly disclosed financial information warrant supplemental discovery, that need is addressed by Plaintiffs' accompanying request to modify the discovery schedule. The Court can establish reasonable limits and deadlines that protect all parties while permitting the claims to be resolved on their merits. Any additional discovery resulting from NRM2's joinder is a manageable consequence of amendment, rather than undue prejudice. *See Lee*, 347 F.R.D. at 639–40.

Plaintiffs have established good cause under Rule 16(b)(4), the proposed amendments satisfy Rule 15(a)(2), and NRM2's joinder is appropriate under Rules 20(a)(2) and 21. Leave to file the TAC should therefore be granted.

## III. GOOD CAUSE EXISTS UNDER RULE 16(b)(4) TO MODIFY THE DISCOVERY SCHEDULE TO PERMIT ADDITIONAL FACT DISCOVERY.

Rule 16(b)(4) authorizes modification of a scheduling order for good cause and with the Court's consent. In determining whether good cause exists to extend or reopen discovery, courts in this judicial district consider six factors: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the nonmoving party would be prejudiced, (4) whether the moving party diligently pursued discovery within the established schedule, (5) whether the need for additional discovery was reasonably foreseeable, and (6) whether the additional discovery is likely to yield relevant evidence. *Carroll v. Trump*, No. 22-cv-10016, 2023 WL 2006312, at *7 (S.D.N.Y. Feb. 15, 2023). These considerations apply to requests to extend an existing discovery period as well as requests to reopen discovery after its expiration. *Marsh USA LLC v. Alliant Insurance Services, Inc.*, No. 25-cv-5470, 2026 WL 2364615, at *2-3 (S.D.N.Y. Aug. 14, 2026).

Diligence remains an important consideration, but the inquiry also accounts for developments that could not reasonably have been anticipated when the schedule was established. In *Marsh USA*, the court granted additional discovery where material information emerged late in the discovery period, the moving party acted promptly, and the requested discovery was sufficiently focused and likely to produce relevant evidence. *Id.* Courts also recognize that late-produced documents may warrant additional discovery to permit meaningful examination of their contents. *See Ciaramella v. Zucker*, No. 18-cv-6945, 2021 WL 4206779, at *1-2 (S.D.N.Y. Aug. 10, 2021).

### A. The newly disclosed financial evidence creates substantial discovery needs that could not reasonably have been addressed within the existing schedule.

The Rule 16 factors strongly favor modification here. Plaintiffs seek relief before the October 30, 2026 fact discovery deadline, no trial is imminent, and the additional discovery concerns financial activity directly relevant to the existing claims and the proposed TAC. As established in Section I, *supra*, Plaintiffs diligently pursued the underlying financial records, but the information giving rise to the present discovery needs became available only following the Court's October 13, 2026 Order compelling unredacted production. The necessity and scope of the additional investigation could not reasonably have been anticipated before those disclosures.

The required discovery is concrete and identifiable. Plaintiffs need to establish the ownership and control of the additional financial accounts, obtain records of transactions among BMC, Wachsler, NRM2, other potential entities and related parties, investigate NRM2's involvement in the accused business, and reconcile Defendants' reported sales against their banking records and third-party sales data. Supplemental third party depositions may be necessary to examine the individuals responsible for these transactions and business relationships.

This evidence is directly relevant to both liability and damages. Under 15 U.S.C. § 1117(a), Plaintiffs may seek recovery of Defendants' profits, subject to the applicable statutory and equitable requirements. Accurate identification of the revenues, expenses, transactions, and entities involved in the accused operations is therefore essential to a reliable accounting of the profits potentially attributable to infringement. The requested discovery is also necessary to permit Plaintiffs' damages

expert to evaluate Defendants' financial information on a complete and reliable factual record.

The circumstances readily satisfy the diligence, foreseeability, and relevance considerations recognized in *Marsh USA* and *Ciaramella*. Denying additional discovery would effectively prevent Plaintiffs from investigating material financial evidence obtained only after repeated judicial intervention.

**B. Defendants' inconsistent reliance on an interim document production deadline to deny discovery further supports modification of the discovery schedule.**

Modification is also warranted by the parties' continuing discovery impasse. Defendants have repeatedly invoked the August 31, 2026 document production deadline to resist substantive responses to ASP's interrogatories and requests for production served September 3, 2026, notwithstanding the October 30 deadline for fact discovery which the Court has permitted the parties to extend by consent. (Dkt. 164). Yet Defendants have continued to accept substantial document productions from Plaintiffs after this supposed "document discovery deadline," and in fact have continued to demand additional searches and productions, and sought further time to complete depositions. (Dkt. 220, 222, 222-1).

Defendants' selective reliance on an August 31, 2026 interim deadline has impeded Plaintiffs' efforts to obtain discovery concerning matters central to this litigation, including BMC's financial accounts, the nature and participation of the Northrock entities in the ice-melt business, and relevant communications and business relationships involving Defendants. The parties' continued exchange of documents after August 31 further demonstrates that the discovery process has, in practice, extended beyond that date. The Court's modification of the schedule would

establish clear, enforceable obligations for both sides and resolve the uncertainty that has contributed to repeated disputes over the permissible scope and timing of discovery.

These circumstances reinforce the need for relief under Rule 16(b)(4). A reasonable extension would permit Plaintiffs to obtain relevant evidence under a uniform schedule, rather than allowing Defendants to invoke an earlier production deadline selectively while continuing to demand further discovery from Plaintiffs.

### C. A reasonable extension will permit necessary discovery while minimizing prejudice and promoting judicial economy.

The remaining Rule 16 considerations likewise support relief. Plaintiffs seek a focused extension directed to specific financial records, related corporate activity, outstanding discovery requests, and necessary depositions. In *Marsh USA*, the court recognized that narrowly tailored supplemental discovery may be appropriate where its likely relevance outweighs the limited prejudice associated with an extension. 2026 WL 2364615, at *4-5. The discovery sought here can similarly be defined and supervised through reasonable deadlines without unnecessarily prolonging the litigation.

The timing of Plaintiffs' request substantially reduces any potential prejudice. Fact discovery remains open, and the parties have not yet completed the expert discovery process. Permitting the newly identified financial records and related testimony to be obtained now will allow that evidence to be incorporated into the parties' expert analyses in an orderly fashion, reducing the risk of supplemental reports, duplicative depositions, and additional disputes later in the litigation.

A revised schedule will also serve judicial economy. The parties' recurring disputes over document production, account information, and deposition scheduling have already required substantial attention from the Court. A defined period for completing the newly necessary discovery, with clear obligations applicable to both sides, will provide a more efficient means of bringing fact discovery to a close.

Plaintiffs therefore request modification of the scheduling order to permit supplemental fact discovery concerning NRM2, the newly identified financial accounts and transactions, the completeness of Defendants' sales and accounting records, and other outstanding discovery necessary to resolve the claims and defenses. (McFarlane Dec. at ¶ 25). Plaintiffs respectfully propose that the specific scope, deadlines, and procedures be established at the forthcoming status conference or following further submissions directed by the Court. Such relief will ensure that the parties can complete discovery on a materially accurate record while avoiding further piecemeal intervention.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant its motion for leave to file the TAC and for a revision to the existing scheduling order to accommodate necessary fact discovery concerning Defendants' ice-melt business and financial information relating to its ongoing sales accused infringing products.

Dated: New York, New York
October 20, 2026

Respectfully submitted,

PRACTUS LLP

*/s/ Matthew B. McFarlane*

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Attorneys for Intervenor-Plaintiff and Counterclaim-Defendant All Season Power LLC*

*/s/ Christopher A. Colvin*

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff and Counterclaim-Defendant Weather Brands LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum complies with the applicable word limit. Excluding the caption, signature block, and this certificate, this memorandum contains approximately 6,274 words, as counted by the word-processing software used to prepare it, which does not exceed the 8,750-word limit for a memorandum in support of a motion.

*/s/ Matthew B. McFarlane*
Matthew B. McFarlane