**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WEATHER BRANDS LLC,<br><br>*Plaintiff and Counterclaim-Defendant,*<br><br>ALL SEASON POWER LLC,<br><br>*Intervenor-Plaintiff and Counterclaim-Defendant,*<br><br>-against-<br><br>BLUE MINERAL CORPORATION,<br>BARRY WACHSLER and JOHN DOES 1–10,<br><br>*Defendants and Counterclaim-Plaintiffs.* | No. 25-cv-2423 (DLC) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT AND MODIFY THE DISCOVERY SCHEDULE**

**GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**
Michael Steinmetz
Pranav Katti
225 Broadway, 37th Floor
New York, New York 10007
(212) 380-3623

*Attorneys for Defendants and Counterclaim-Plaintiffs*
*Blue Mineral Corporation and Barry Wachsler*

# TABLE OF CONTENTS

*PRELIMINARY STATEMENT* ........ *1*

*RELEVANT BACKGROUND* ........ *4*

I. The governing schedule and how it has already caused delay in this litigation. ........ 4

II. Plaintiffs already knew about the existence of NRM2 and decided to ignore it. ........ 5

III. Plaintiffs' lack of diligence in investigating the alleged discrepancies. ........ 8

IV. Plaintiffs fail to establish the relevance of NRM2 and the additional financial accounts to their claims or to justify NRM2's joinder as a defendant, particularly at this late stage in the litigation. ........ 10

*ARGUMENT* ........ *11*

I.Plaintiffs have not shown good cause for the amendments they propose. ........ 11

II. The claims Plaintiffs are clearly seeking to file are futile. ........ 16

*CONCLUSION* ........ *18*

*CERTIFICATE OF COMPLIANCE* ........ *20*

# TABLE OF AUTHORITIES

**Cases**

*Capak v. Epps,* 2020 U.S. Dist. LEXIS 63479, at *8–12 (2020)................................................ 13

*Delgado v. Donald J. Trump for President, Inc*., 2024 U.S. Dist. LEXIS 149062 (2024)........... 12

*ENT & Allergy Assocs., LLC v. Cont'l Cas. Co.*, 2022 U.S. Dist. LEXIS 37397, *32 (2022)..... 15

*Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)......................................................... 16

*Foman v. Davis*, 371 U.S. 178, 182 (1962)................................................................................... 15

*Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007)............................ 11

*Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)........................................ 15

*McDay v. Eckert*, 2024 U.S. Dist. LEXIS 67495, *7 (2024)........................................................ 12

*Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339–40 (2d Cir. 2000)................................ 11

*Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.,* 195 N.J. 457, 472 (2008)............. 16

*Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 511 (2013).......................................... 13

*Sherman v. Fivesky, LLC,* 2020 U.S. Dist. LEXIS 157998, *2-3................................................ 13

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 15

Fed. R. Civ. P. 15(a)(2)....................................................................................... 10, 11, 15, 17

Fed. R. Civ. P. 16(b)(4)........................................................................................................ passim

## PRELIMINARY STATEMENT

Plaintiffs Weather Brands LLC and All Season Power LLC ("ASP") (collectively, "Plaintiffs") seek leave to file a Third Amended Complaint ("TAC") and an extension of fact discovery nine months after the amendment deadline and on the final day of fact discovery, which is today, October 30, 2026. However, Plaintiffs cannot establish the good cause required under Rule 16 to justify these proposed amendments.

Plaintiffs disingenuously characterize their proposed amendments as a response to purportedly new information disclosed in Defendants' recently produced, unredacted financial records, allegedly revealing (1) the involvement of Northrock Minerals 2 LLC ("NRM2") in Defendants' ice melt business and (2) the existence of additional financial accounts that transacted with Defendants. ECF No. 228 at 8-10. Specifically, Plaintiffs seek to add NRM2 as a defendant based primarily on approximately $250,000 in payments it allegedly made to a third-party packaging company, Kizewski Packaging Services LLC ("Kizewski"), claiming that these payments could reveal NRM2's involvement in Defendants' ice-melt business. *Id.* at 9, 14. Plaintiffs thus seek to extend discovery to investigate NRM2's alleged involvement in Defendants' ice-melt business. *Id.* at 12. Separately, Plaintiffs also seek to extend the discovery deadline to examine those additional financial accounts that allegedly transacted with Defendants to determine the ownership and business purposes of those accounts. *Id.* at 8-9, 19-20.

It is more than clear that Plaintiffs will not be able to demonstrate good cause for making these amendments at this late stage in the litigation. First, the unredacted financial records produced in October did not reveal the existence of NRM2 or Kizewski for the first time. Plaintiffs' characterization of NRM2 as a newly discovered entity is directly contradicted by their own discovery demands. Steinmetz Decl. ¶ 2 & Ex. A. Indeed, on September 3, 2026, Plaintiffs

expressly identified NRM2 in an interrogatory requesting information concerning the history of Defendants' relationship with the entity. *Id.* Plaintiffs also subpoenaed Kizewski in May 2026. ECF No. 228 at 3. Thus, Plaintiffs were plainly aware of both NRM2's existence and Kizewski's potential relevance to NRM2 and this litigation well before Kizewski responded to the subpoena or Defendants produced the unredacted financial records. *Id.*

Additionally, ASP's recent production included key details, including deposition testimony and discovery responses, from the prior action, Northrock Management LLC f/k/a Northrock Minerals LLC v. Joseph Cohen and Snow Joe LLC, Case No. 24-cv-3155 (S.D.N.Y.) (the "Prior Action"), which further demonstrate Plaintiffs' prior knowledge of NRM2's existence. Notably, Snow Joe LLC is one of Plaintiff Weather Brands' predecessor companies, and the deposition testimony expressly addresses NRM2's existence, while the discovery requests specifically inquire into NRM2 and its ownership and control. Accordingly, these records further undermine Plaintiffs' characterization of NRM2 as a newly discovered entity, particularly given that the information was addressed in prior litigation involving Plaintiff Weather Brands' predecessor. Plaintiffs cannot establish the diligence required under Rule 16 by focusing solely on the October production while ignoring their prior knowledge of NRM2 illustrated by their earlier discovery requests and this prior case.

Further, Plaintiffs base the entirety of their arguments on a single event: the production of Home Depot records on August 18, 2026, which allegedly revealed discrepancies with financial records previously produced by Defendants. ECF No. 228 at 4-6. These purported discrepancies then prompted Plaintiffs to seek additional financial records, ultimately leading to Defendants' production of unredacted financial records in October, which Plaintiffs now rely upon as the basis for their motion for leave to file the TAC. *Id.* at 7-10. It is through this October production that

Plaintiffs claim to have first discovered NRM2's alleged involvement in Defendants' ice-melt business and the existence of additional financial accounts that allegedly transacted with Defendants. *Id.* However, what Plaintiffs conveniently fail to acknowledge is that, despite receiving the Home Depot records on August 18, 2026, they waited an entire month before taking any action to address the alleged discrepancies. *Id.* at 4-7; ECF No. 188 (motion to compel filed by Plaintiffs on September 10, 2026). This is simply not the diligence demanded by Rule 16.

Moreover, Plaintiffs request this substantial expansion of discovery without specifically identifying all of the allegedly relevant additional accounts at issue, referring to them only as "accounts include[ing] brokerage accounts at Charles Schwab associated with [Defendants], additional bank accounts, and accounts used to transfer substantial sums into and out of [Defendants' accounts]." ECF No. 228 at 8. Plaintiffs completely fail to establish any basis for believing these accounts have any connection to the alleged infringement. Indeed, Plaintiffs' failure to even identify these accounts raises the question of how they could possibly establish any connection between those accounts and the alleged infringement or establish the good cause required to extend the discovery deadline.

Lastly, Plaintiffs have failed to demonstrate that any claim against NRM2 would be legally sufficient. Their motion relies primarily on NRM2's alleged payments to Kizewski and Wachsler's relationship with NRM2, without identifying any specific infringing sales by NRM2, any use of Plaintiffs' asserted marks by NRM2, or any particular conduct by NRM2 constituting trademark infringement. *Id.* at 9, 14. Instead, Plaintiffs seek to infer NRM2's liability from its financial dealings with Kizewski and its relationship with the existing Defendants. However, these circumstances, without more, do not establish NRM2's direct participation in the alleged infringement or a sufficient basis for attributing Defendants' alleged conduct to NRM2.

Accordingly, Plaintiffs have failed to demonstrate either that the additional financial discovery they seek is sufficiently connected to their claims or that their proposed claims against NRM2 would withstand a motion to dismiss, further weighing against granting leave to amend.

For the reasons stated and those detailed below, Defendants oppose Plaintiffs' leave to file the TAC and the accompanying request to enlarge discovery. The Court should enforce the existing schedule and reject Plaintiffs' attempt to enlarge this trademark action through unsupported claims of evidence that Plaintiffs either previously knew of or failed to diligently pursue.

## RELEVANT BACKGROUND

### I. The governing schedule and how it has already caused delay in this litigation.

The deadline to amend pleadings or join parties was January 16, 2026. ECF No. 51. The July 10, 2026 scheduling order fixed August 31, 2026 for document discovery and October 30, 2026 for completion of fact discovery. ECF No. 118. Plaintiffs filed the present motion on October 20, 2026, more than nine months after the amendment deadline and just ten days before the close of fact discovery.

Importantly, this action was commenced nearly two ago, and the existing discovery deadlines were established after this Court had already accommodated the need for additional discovery following the intervention of All Season Power LLC ("ASP"). At the May 14, 2026 conference, the Court acknowledged that ASP's intervention would require additional discovery and indicated that a revised schedule would be established, expressly stating its expectation that this would be the "final schedule." ECF No. 115 at 84:10–21. The Court subsequently issued its July 10, 2026 scheduling order, extending fact discovery through October 30, 2026, and setting deadlines for expert discovery and summary judgment briefing. ECF No. 118 at 1–2. Despite this action having been pending for nearly two years, multiple extensions of discovery deadlines, and

the Court's express expectation that the revised schedule would be final, Plaintiffs now seek to further expand the scope of this litigation by adding yet another defendant and pursuing additional discovery. Granting Plaintiffs' motion would only further delay these prolonged proceedings and undermine the Court's established schedule, particularly where Plaintiffs have failed to demonstrate diligence in pursuing the information upon which their motion relies.

## II. Plaintiffs already knew about the existence of NRM2 and decided to ignore it.

Plaintiffs claim that the unredacted financial records produced in October revealed the existence of NRM2 for the first time, purportedly justifying both its addition as a defendant and further discovery into its involvement in Defendants' ice-melt business. Most critically, Plaintiffs' motion papers describe NRM2 as a "previously undisclosed entity" uncovered through the October financial productions. ECF No. 228 at 8-10. **That is patently false**. As detailed below, Plaintiffs' predecessor entity had already named NRM2, investigated its control, and questioned Mr. Wachsler about its formation in 2024. Plaintiffs therefore cannot omit that history and claim surprise to justify a third bite at the apple and another unjustified and unsanctioned financial investigation into Mr. Wachsler and the Blue Mineral Corporation.

Indeed, in the September 5, 2024 Answer to Second Amended Complaint with Counterclaims in the Prior Action, Snow Joe and Cohen alleged that Moshe Wechsler had created a "web of companies" to continue selling ice melt. *Northrock Mgmt. LLC v. Cohen*, No. 24-cv-3155 (JSR), ECF No. 42, Counterclaims ¶ 28; *see also* Steinmetz Decl. ¶8 & Ex. F. Footnote 3 expressly named "Northrock Minerals 2 LLC" and its New Jersey entity number. *Id.* ¶¶ 28–29 & n.3 (ASP359006–07).

Additionally, deposition testimony and discovery responses from the public Prior Action expressly addressed NRM2's existence, ownership, and management well before Plaintiffs'

alleged discovery of the entity in October 2026. Specifically, the deposition testimony included questions concerning NRM2. Steinmetz Decl. ¶6 & Ex. D Snow Joe and Cohen identified NRM2's October 19, 2022 formation, and asked whether he had created the company. Mr. Wachsler answered, "Yes, I did." *Id.,* Wachsler Dep. Tr. 214:21–24, 215:23–216:3. Thus, the formation date and Mr. Wachsler's connection to NRM2 were not facts first found in the October productions; **they were the subjects of direct, sworn examination nearly two years earlier**. *Compare id.*, *with* ECF No. 228 at 9.

Further, the September 16, 2024 requests for admission expressly identified NRM2 and sought confirmation that Moshe Wechsler was its sole member and manager, as well as information concerning who exercised decision-making authority over the entity. *Id.* ¶¶ 6-7 & Ex. D (Requests for Admission Nos. 34–35). This demonstrates that NRM2's existence and corporate structure were subjects of discovery in litigation involving Snow Joe LLC, Weather Brands' predecessor-in-interest. Accordingly, these records further undermine Plaintiffs' characterization of NRM2 as a newly discovered entity and raise substantial questions as to why Plaintiffs could not have investigated its potential relevance to this action earlier. Information concerning NRM2's existence was available more than two years before Plaintiffs' purported discovery of the entity in October 2026. Taken together, the pleading and targeted discovery establish that NRM2's alleged role in the ice-melt business and its control—not merely its existence—were already well researched in 2024.

Nor was the earlier inquiry confined to identifying corporate entities: Indeed, Judge Rakoff expressly found that Snow Joe and Cohen had conducted "*extensive discovery* that included a review of Moshe's and Barry's *personal email and bank statements*," yet failed to connect the payments they challenged to the sale of the ice-melt business, the alleged non-compete violation,

or Moshe's involvement in Barry's business. Steinmetz Decl. ¶7 & Ex. E. The Court rejected the inferences drawn from those communications and transfers and dismissed Snow Joe and Cohen's counterclaims and third-party claims in their entirety. Ex. E at 22–23, 29.

Separately, Plaintiffs' own discovery demands also directly contradict their characterization of NRM2 as a newly discovered entity. Mr. Riley's October 2 declaration in support of Plaintiff's motion expressly identified Mr. Wachsler's November 1, 2024 deposition as a source for his statements. ECF No. 210 ¶ 3. ASP's September 3 interrogatories likewise named NRM2, demanded a detailed account of Mr. Wachsler's relationship with it, and revisited the September 7, 2022 SPS-account exchange Judge Rakoff had examined. Steinmetz Decl. ¶ 1 & Ex. A. Having relied on the prior deposition to support Riley's declaration and the prior communications to frame its discovery, ASP cannot credibly omit that same record from Plaintiffs' account of when and how they learned of the relationships underlying the proposed amendment.

Plaintiffs' third-party discovery efforts further undermine their claim of newly discovered information. On May 26, 2026, Plaintiffs served a subpoena on Kizewski, expressly requesting, among other things, information concerning payments made by third parties on Defendants' behalf. ECF No. 228 at 3. When considered alongside Plaintiffs' express identification of NRM2 in their September 3, 2026 interrogatories, it is clear that Plaintiffs had already considered NRM2 potentially relevant to this litigation and recognized the alleged significance of payments involving Kizewski. Thus, Plaintiffs' claim that a payment between these very entities, allegedly revealed for the first time in the October unredacted production, suddenly established NRM2's potential involvement in Defendants' business is particularly unpersuasive given their prior knowledge of and investigation into both NRM2 and Kizewski. See ECF No. 228 at 9, 14. Accordingly, although

the specific payments were allegedly not disclosed until October, it is more than clear that Plaintiffs had prior knowledge of NRM2 and decided to ignore it.

Notably, information concerning NRM2's very existence as a corporate entity is publicly available through the New Jersey Division of Revenue and Enterprise Services' business records database. Thus, Plaintiffs could have easily identified the entity through a basic search. In fact, a simple search of "Northrock" on the database reveals the existence of NRM2. Steinmetz Decl. ¶ 3 & Ex. B. Plaintiffs could not have exercised the diligence required by Rule 16 if a simple search of "Northrock" could have revealed the corporate identity of NRM2.

Accordingly, the Prior Action and Plaintiffs' own discovery efforts demonstrate that they were already aware of NRM2. Yet, despite this prior knowledge, Plaintiffs failed to sufficiently pursue these matters when they had the opportunity to do so. Rather than acknowledge their failure to diligently investigate information already known to them, Plaintiffs now attempt to use the October disclosure of payments between NRM2 and Kizewski to portray NRM2 as an entirely unknown entity whose involvement could not have been discovered earlier. *See* ECF No. 228 at 9, 13-15. Plaintiffs cannot disguise their lack of diligence as newly discovered evidence simply because the information they failed to adequately pursue was ultimately disclosed at a later date.

## III. Plaintiffs' lack of diligence in investigating the alleged discrepancies.

Following Plaintiffs' issuance of a subpoena to Home Depot on July 3, 2026, Home Depot produced the requested records on August 18, 2026. ECF No. 228 at 3-4. According to Plaintiffs, this production revealed discrepancies between Home Depot's records and financial records previously produced by Defendants. *Id.* at 4-7. Nevertheless, Plaintiffs waited nearly a month before seeking additional financial information from Defendants to address these alleged discrepancies. Specifically, Plaintiffs did not file their motion to compel until September 10, 2026,

and the Court did not grant that motion until September 14, 2026. ECF Nos. 188, 193. Such a delay is particularly significant given Plaintiffs' present contention that this information was apparently critical to determining the extent of Defendants' alleged infringement and the profits derived therefrom.

Given the substantial volume of financial documentation requested, Defendants sought an extension of time to comply with the Court's order on September 17, 2026, and subsequently produced the requested records on October 6, 2026. ECF Nos. 198. Plaintiffs then filed a second motion to compel, seeking the production of those same records in unredacted form. ECF No. 213. The Court granted that motion, and Defendants produced the unredacted records on October 13, 2026. ECF No. 217. It is this final production that Plaintiffs now falsely claim revealed, for the first time, NRM2's involvement in Defendants' business and the existence of additional financial accounts that allegedly transacted with Defendants. ECF No. 228 at 8-10, 13-15.

Accordingly, the entire sequence of discovery requests and subsequent productions upon which Plaintiffs now rely originated from the alleged discrepancies identified in the Home Depot records produced on August 18, 2026. *See* ECF No. 228 at 4-10. Yet, despite having these records in their possession, Plaintiffs waited nearly a month before taking action to address those discrepancies. ECF Nos. 188. Had Plaintiffs acted promptly and diligently upon receiving the Home Depot records, Defendants could have been called upon to produce the additional financial information substantially earlier, potentially allowing Plaintiffs to obtain and review the unredacted records well before the close of fact discovery. Plaintiffs cannot now rely on the timing of the October production to justify their belated amendments while ignoring their own failure to diligently pursue the information that led to that production in the first place.

**IV. Plaintiffs fail to establish the relevance of NRM2 and the additional financial accounts to their claims or to justify NRM2's joinder as a defendant, particularly at this late stage in the litigation.**

Plaintiffs fail to establish how the allegedly newly discovered financial information justifies adding NRM2 as a defendant or substantially expanding the scope of discovery. Plaintiffs contend that the October productions revealed NRM2's involvement in Defendants' accused ice-melt business and additional financial accounts potentially relevant to their claims. ECF No. 228 at 8-10. However, Plaintiffs offer little more than speculation concerning the significance of these transactions, without sufficiently explaining how they relate to the alleged infringement or establish a basis for imposing liability on NRM2. *Id.*

First, Plaintiffs rely primarily on approximately $250,000 in payments allegedly made by NRM2 to Kizewski during January and February 2026. ECF No. 228 at 9, 14. Plaintiffs further point to New Jersey corporate records identifying Wachsler as a member or manager of NRM2 and reflecting NRM2's registration of the alternate name "Northrock Minerals" for a distribution business. ECF No. 228 at 9. Yet, neither the existence of payments to Kizewski nor Wachsler's association with NRM2, standing alone, establishes that NRM2 engaged in the alleged trademark infringement. Plaintiffs do not identify any specific infringing sales made by NRM2, any allegedly infringing products sold or distributed by NRM2, or any particular use of Plaintiffs' asserted marks by NRM2. Rather, Plaintiffs ask the Court to infer NRM2's liability from its financial dealings with Kizewski and its corporate relationship with Wachsler. These circumstances do not establish that NRM2 participated in the allegedly infringing conduct underlying this action.

Second, Plaintiffs similarly fail to sufficiently establish the relevance of the additional financial accounts they seek to investigate. Plaintiffs claim that the unredacted records revealed at least five additional accounts, including brokerage accounts at Charles Schwab associated with

BMC and Wachsler, other bank accounts, and accounts used to transfer funds into and out of BMC. ECF No. 228 at 8. Plaintiffs emphasize that certain transfers involved substantial sums, including an approximately $800,000 transfer from BMC to another account associated with Wachsler. *Id.* However, the mere existence of additional financial accounts or substantial transfers does not establish that those transactions involved revenues from allegedly infringing products. Plaintiffs do not identify which of these transfers, if any, represent sales of accused products, how the brokerage accounts relate to the alleged infringement, or why transfers among accounts associated with Defendants necessarily reflect additional infringing activity. The amounts involved do not, by themselves, establish the relevance of these transactions to Plaintiffs' claims, much less justify extending the discovery deadline at this late stage of the litigation.

Accordingly, Plaintiffs have failed to demonstrate that the allegedly newly discovered transactions and financial accounts justify either adding NRM2 as a defendant or substantially expanding discovery. Rather than establishing a sufficient connection between this information and the alleged infringement, Plaintiffs seek to undertake additional discovery in the hope of uncovering such a connection. Plaintiffs' speculative assertions do not justify further expanding the scope of this litigation, particularly where doing so would require extending the discovery deadline despite the Court's prior indication that the existing schedule would be final, thereby causing further delays in proceedings that have already reached the close of fact discovery.

## ARGUMENT

### I. Plaintiffs have not shown good cause for the amendments they propose.

Plaintiffs invoke Rule 15's liberal amendment standard, but their motion comes more than nine months after the January 16, 2026 deadline to amend pleadings or join additional parties, and nearly two years after the filing of the initial complaint. Fact discovery is also now closed.

Accordingly, Plaintiffs must first establish good cause under Rule 16(b)(4) before the Court may permit the proposed amendments. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000). The primary consideration in determining good cause is whether the moving party exercised diligence and whether, despite such diligence, the proposed amendments could not reasonably have been pursued within the applicable deadline. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007). A party cannot satisfy that burden by invoking Rule 15 first and requiring its opponent to disprove prejudice. Rather, Plaintiffs bear the burden of demonstrating good cause for their untimely amendments, regardless of whether leave might otherwise be appropriate under Rule 15. *See Parker*, 204 F.3d at 340.

Plaintiffs fail to make that showing for a number of reasons. First, rather than explain why their proposed amendments and additional discovery could not have been pursued earlier, Plaintiffs recount their discovery requests, disputes over financial records, and the October 13, 2026 production of unredacted documents, treating that history as sufficient justification for the entirety of their proposed amendments and an extension of the discovery deadline. ECF No. 228 at 11-15. That chronology fails to account for Plaintiffs' prior knowledge of NRM2 and their delay in pursuing the financial records they now claim necessitate additional discovery.

Plaintiffs cannot possibly establish diligence in seeking to add NRM2 as a defendant when they had already identified NRM2 as potentially relevant to this litigation well before the October production. Most notably, NRM2's existence was expressly addressed in the Prior Action. Specifically, requests for admission dated September 16, 2024 expressly identified NRM2 and sought confirmation that Moshe Wechsler was its sole member and manager, as well as information concerning who exercised decision-making authority over the entity. Steinmetz Decl. ¶ 5 & Ex. C (Requests for Admission Nos. 34–35). Further, deposition testimony taken of

Defendant Barry Wachsler in November 2024 included questions concerning NRM2. *Id.* ¶ 8 & Ex. E. Thus, NRM2's existence and corporate structure were subjects of discovery in litigation involving Weather Brands' predecessor-in-interest as early as September 2024, more than two years before Plaintiffs now claim to have discovered the entity. Plaintiffs fail to explain why this information could not have been obtained or investigated earlier, particularly given their relationship to Snow Joe LLC and their subsequent production of these very discovery materials in this litigation.

Moreover, Plaintiffs' own discovery requests in this action demonstrate their actual knowledge of NRM2 before the October production. Specifically, Plaintiffs expressly identified NRM2 in their September 3, 2026 interrogatories, requesting information concerning Wachsler's relationship with the entity and its financial accounts. Steinmetz Decl. ¶ 1 & Ex. A Moreover, Plaintiffs had previously subpoenaed Kizewski in May 2026, expressly seeking information concerning payments made by third parties on Defendants' behalf. ECF No. 228 at 3. Thus, the October disclosure of financial transactions involving NRM2 does not explain why Plaintiffs failed to more diligently investigate an entity they had already identified or pursue the third-party payment information they had previously requested. Plaintiffs cannot establish good cause simply by characterizing a single transaction involving NRM2 as newly discovered while disregarding their prior knowledge NRM2. *See McDay v. Eckert*, 2024 U.S. Dist. LEXIS 67495, *7 (2024) (Plaintiff could not demonstrate could cause because their proposed amendments were based on facts already known to the Plaintiff); *see generally Delgado v. Donald J. Trump for President, Inc.*, 2024 U.S. Dist. LEXIS 149062 (2024).

Separately, Plaintiffs cannot establish diligence in seeking additional financial discovery when their own delay in pursuing the Home Depot records contributed to the late production of

the information they now seek to investigate. Plaintiffs received Home Depot's production on August 18, 2026, which they claim revealed discrepancies in Defendants' financial records, but waited until September 10, 2026, to move to compel additional financial information. ECF No. 228 at 4-7. It was only after that motion and the subsequent production of unredacted financial records in October that Plaintiffs claim to have discovered "at least five" additional financial accounts requiring further investigation. *Id.* at 12. However, had Plaintiffs acted more diligently upon receiving the Home Depot records, they could have sought the additional financial information substantially earlier, potentially allowing them to identify and investigate both NRM2's financial involvement and the additional accounts before the close of fact discovery. This delay is particularly significant given that NRM2 had already been identified in Plaintiffs' September 3, 2026 interrogatories and had been the subject of discovery in the Prior Action dating back to September 2024. Plaintiffs cannot rely on the timing of the October production to justify further discovery without accounting for their own delay in pursuing the information that ultimately led to that production. "The good cause standard of Rule 16 is not satisfied when the proposed amendment rests on information that the party knew or should have known, in advance of the deadline." *Sherman v. Fivesky, LLC,* 2020 U.S. Dist. LEXIS 157998, *2-3 (2020 (internal quotations and citations omitted).

Importantly, Plaintiffs' own cited authorities further demonstrate why their failure to establish diligence is fatal to their motion. In *Salomon v. Adderley Industries, Inc.*, although the court permitted the addition of newly identified defendants, it denied leave to assert an additional cause of action under the Wage Theft Prevention Act because the plaintiffs failed to establish good cause for that amendment, having failed to address it in their supporting memorandum. *Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 511 (2013); *see also Capak v. Epps*, 2020 U.S. Dist.

LEXIS 63479, at *8–12 (2020) (finding that the plaintiff failed to establish good cause under Rule 16(b), in part, because the plaintiff did not exercise due diligence in discovering the party sought to be added as a defendant). Thus, *Salomon* makes clear that establishing good cause for one proposed amendment does not automatically justify other amendments for which diligence has not been demonstrated. Here, Plaintiffs selectively rely on *Salomon* to support their request to add NRM2 while overlooking that court's refusal to permit amendments unsupported by a showing of good cause. As demonstrated above, Plaintiffs have failed to establish diligence either in investigating NRM2, an entity they had previously identified, or in pursuing the financial information underlying their request for additional discovery.

Lastly, the Proposed Third Amended Complaint ("Proposed TAC") itself confirms that Plaintiffs' requested amendments extend well beyond the addition of NRM2 as a defendant or the information allegedly revealed by the October financial production, further undermining any showing of good cause. Specifically, the Proposed TAC introduces new allegations concerning Defendant Wachsler's conduct following the August 2022 asset sale, the transfer of the Home Depot vendor relationship, Ilana Lent's September 2022 consulting agreement and subsequent work, and communications and pricing decisions occurring in early 2023. ECF No. 229, Ex. 2 at 16-18. Plaintiffs fail to explain how the unredacted financial records produced in October 2026 revealed these historical events for the first time or why these matters could not have been investigated and raised earlier in the litigation. Accordingly, Plaintiffs cannot rely on the October production to establish good cause for amendments based on events occurring years earlier, particularly where they have offered no explanation for their failure to pursue those allegations before the discovery deadline. This failure is especially significant given that NRM2's existence was expressly addressed in the Prior Action as early as September 2024, further undermining

Plaintiffs' attempt to characterize the October production as the first opportunity to investigate the entity and its potential relationship to the alleged conduct.

Accordingly, Plaintiffs have failed to establish the diligence required under Rule 16 to justify their untimely amendments and requested discovery extension. Their prior knowledge of NRM2, failure to promptly pursue the financial information they now rely upon, and inability to explain why the additional allegations could not have been raised earlier demonstrate a lack of good cause. Plaintiffs cannot rely on the October production to justify substantially expanding this litigation when the underlying information was known or available well before that production. Accordingly, Plaintiffs' motion should be denied.

## II. The claims Plaintiffs are clearly seeking to file are futile.

Rule 15 permits denial of a legally insufficient amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'"). Relevant here, "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *ENT & Allergy Assocs., LLC v. Cont'l Cas. Co.*, 2022 U.S. Dist. LEXIS 37397, *32 (2022) (citing *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

Here, the claims Plaintiffs seek to assert against NRM2 are futile because their motion fails to allege facts sufficient to establish either NRM2's direct participation in the alleged infringement or a legally cognizable basis for attributing BMC's conduct to NRM2. Plaintiffs principally rely on NRM2's alleged payments to Kizewski, Wachsler's common ownership or control of the

entities, and financial transfers involving affiliated businesses. ECF No. 228 at 8-10, 14. However, Plaintiffs do not identify any specific infringing sales made by NRM2, any use of Plaintiffs' asserted marks by NRM2, or any particular conduct by NRM2 constituting trademark infringement.

Plaintiffs' Proposed TAC similarly fails to establish a sufficient basis for imposing liability on NRM2 under an alter-ego theory. Specifically, Plaintiffs allege that Wachsler operated BMC and affiliated entities as a single enterprise and transferred substantial sums between accounts. ECF No. 229 & Ex. 2 at 5-7, 31–32. However, common management, intercompany transfers, and NRM2's alleged payments to Kizewski do not, without additional facts demonstrating misuse of the corporate form, establish that NRM2 is liable for BMC's alleged infringement. Indeed, the Proposed TAC identifies BMC and NRM2 as New Jersey entities. *Id.* at 5–6. Under New York choice-of-law principles, the law of the state of incorporation generally governs whether corporate separateness may be disregarded. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Rather, the corporate form must have been used to perpetrate fraud or injustice, evade the law, or accomplish another recognized misuse. *See Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.,* 195 N.J. 457, 472 (2008) (internal quotations and citations omitted). Here, Plaintiffs identify no particular facts demonstrating that NRM2's corporate form was misused to perpetrate fraud or injustice, nor do they identify any specific infringing sales or conduct attributable to NRM2. Instead, Plaintiffs rely on the existence of financial relationships between affiliated entities to support both their proposed claims and their request for a broader accounting, without sufficiently connecting those transactions to the alleged infringement.

Moreover, Plaintiffs have failed to establish that additional discovery into the five identified financial accounts is relevant to their claims or reasonably likely to reveal actionable

conduct. Plaintiffs contend that the unredacted financial records revealed at least five additional accounts, including brokerage accounts, bank accounts, and accounts through which substantial funds were transferred to and from Defendants. ECF No. 228 at 8-9. However, Plaintiffs do not identify any specific transactions involving the allegedly infringing products, or any other connection between these accounts and the alleged trademark infringement. *Id.* Instead, Plaintiffs seek additional discovery to determine the ownership and business purposes of these accounts, trace financial transfers, and investigate whether the transactions reveal further involvement in the accused operations. *Id.* at 9, 19-20. Yet the mere existence of additional financial accounts and substantial transfers does not establish that those accounts were used in connection with infringing activity or provide a factual basis for asserting additional claims. To the extent Plaintiffs seek to use this discovery to establish further liability, they have not identified any specific infringing conduct or factual allegations sufficient to support a plausible claim under Rule 12(b)(6). Nor have Plaintiffs demonstrated a sufficient connection between these accounts and their existing claims to justify substantially expanding financial discovery at this late stage. Accordingly, Plaintiffs cannot justify extending discovery merely to investigate whether additional financial transactions might reveal some previously unidentified basis for liability.

Accordingly, Plaintiffs' failure to identify sufficient facts supporting a plausible claim against NRM2 renders the proposed amendment futile under Rule 15. Further, Plaintiffs' speculative assertions concerning the additional financial accounts do not justify expanding discovery absent a sufficient connection to the alleged infringement.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for leave to file a Third Amended Complaint and extend fact discovery. Plaintiffs have

failed to establish good cause under Rule 16(b)(4), as the Prior Action and their own discovery efforts demonstrate they were aware of NRM2 well before the October production and failed to diligently pursue the financial information they now claim warrants further discovery. Moreover, Plaintiffs have failed to establish a sufficient connection between the additional financial accounts and the alleged infringement or a legally sufficient basis for imposing liability on NRM2. Permitting the proposed amendments and additional discovery under these circumstances would unnecessarily expand the scope of this litigation, prejudice Defendants, and further delay proceedings despite the Court's previously established discovery schedule. Accordingly, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.

Dated: New York, New York
October 30, 2026

**GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**

By: *<u>/s/ Michael M. Steinmetz</u>*
Michael M. Steinmetz
225 Broadway, 37th Floor
New York, New York 10007
Tel.: (212) 380-3623
Email: ms@gs2law.com

Attorneys for Defendants and Counterclaim-Plaintiffs Blue Mineral *Corporation and Barry Wachsler*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that this memorandum contains 6,030 words, excluding the caption, tables of contents and authorities, signature blocks, and this certificate. The memorandum complies with the 8,750-word limit applicable to opposition memoranda.

Dated: October 30, 2026

*/s/ Michael M. Steinmetz*
Michael M. Steinmetz