**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

WEATHER BRANDS LLC,

*Plaintiff and Counterclaim-Defendant,*

ALL SEASON POWER LLC,

*Intervenor-Plaintiff and Counterclaim-Defendant,*

v.

BLUE MINERAL CORPORATION, BARRY WACHSLER and JOHN DOES 1-10,

*Defendants and Counterclaim-Plaintiffs.*

**Civil Case No. 25-cv-2423-DLC-SLC**

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT AND TO MODIFY THE SCHEDULING ORDER

PRACTUS LLP

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff and Counterclaim-Defendant Weather Brands LLC*

PRACTUS LLP

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Attorneys for Intervenor-Plaintiff and Counterclaim-Defendant All Season Power LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT IN REPLY .......... 2

A Good cause exists under Rule 16(b)(4) because Plaintiffs diligently pursued the evidence supporting amendment. .......... 2

1. Plaintiffs' prior knowledge that NRM2 existed did not disclose any role in the accused ice-melt business. .......... 3

2. Plaintiffs diligently pursued financial discovery and promptly sought amendment following the October Production. .......... 5

B. Joinder permits adjudication of the parties participating in the same accused business. .......... 7

C. Defendants have failed to establish undue prejudice, and a revised schedule under Magistrate Judge supervision will manage additional fact discovery. .......... 10

CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amaya v. Roadhouse Brick Oven Pizza, Inc.*
285 F.R.D. 251 (E.D.N.Y. 2012) ........ 1, 7

*Arista Records LLC v. Doe 3*
604 F.3d 110 (2d Cir. 2010) ........ 9

*A.V.E.L.A., Inc. v. Est. of Monroe*
34 F. Supp. 3d 311 (S.D.N.Y. 2014) ........ 9, 10

*Block v. First Blood Assocs.*
988 F.2d 344 (2d Cir. 1993) ........ 11, 12

*Carroll v. Trump*
No. 22-cv-10016, 2023 WL 2006312 (S.D.N.Y. Feb. 15, 2023) ........ 10

*Kassner v. 2nd Ave. Delicatessen Inc.*
496 F.3d 229 (2d Cir. 2007) ........ 2, 7

*Lee v. HDR Glob. Trading Ltd.*
347 F.R.D. 633 (S.D.N.Y. 2024) ........ 8, 10

*Lucente v. Int'l Bus. Machines Corp.*
310 F.3d 243 (2d Cir. 2002) ........ 8

*Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*
No. 15-CV-3526, 2016 WL 6083956 (S.D.N.Y. Oct. 17, 2016) ........ 2, 3

*Richard A. Pulaski Const. Co. v. Air Frame Hangars, Inc.*
195 N.J. 457 (N.J. 2008) ........ 10

*Salomon v. Adderley Indus., Inc.*
960 F. Supp. 2d 502 (S.D.N.Y. 2013) ........ 7, 12

*Soroof Trading Dev. Co. v. GE Microgen, Inc.*
283 F.R.D. 142 (S.D.N.Y. 2012) ........ 2, 7

*United States v. Cont'l Ill. Nat'l Bank & Tr. Co.*
889 F.2d 1248 (2d Cir. 1989) ........ 11

**Statutes** **Page(s)**

15 U.S.C. § 1117(a) ........................................ 12

**Rules** **Page(s)**

Fed. R. Civ. P. 11 ........................................ 4

Fed. R. Civ. P. 12(b)(6) ........................................ 8

Fed. R. Civ. P. 15(a)(2) ........................................ 7, 11

Fed. R .Civ. P. 16(b)(4) ........................................ 2, 5, 10

Fed. R. Civ. P. 20 ........................................ 8

Fed. R. Civ. P. 20(a)(2) ........................................ 7

Plaintiff and Counterclaim-Defendant Weather Brands LLC ("Weather Brands") and Intervenor-Plaintiff and Counterclaim-Defendant All Season Power LLC ("ASP") (together, "Plaintiffs") respectfully submit this reply memorandum of law and the Second Declaration of Matthew McFarlane ("Second McFarlane Dec.") in further support of their Motion (Dkt. 228) and to respond to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File a Third Amended Complaint and Modify the Discovery Schedule ("Opp."). (Dkt. 234).

**PRELIMINARY STATEMENT**

Defendants' opposition turns the discovery history of this case on its head. For months, Plaintiffs attempted to obtain core discovery concerning the business activities, financial arrangements, and knowing infringement of Defendants Barry Wachsler ("Barry" or "Wachsler") and Blue Mineral Corporation ("BMC"). Those subjects are directly relevant to Plaintiffs' existing claims of willful trademark infringement. Defendants have repeatedly resisted that relevant discovery (including the activities of Wachsler's business associate Ilana Lent) on relevance grounds. (*E.g.*, Dkts. 175, 189, 190, 220). Defendants now oppose Plaintiffs' proposed amendment to address the business arrangements revealed by the Court-ordered production of bank records and other information (the "October Production"). The October Production confirms the theory advanced in the original complaint that other entities are potentially liable for the claims asserted here. (*See* Dkt. 1).

Knowledge that Northrock Minerals 2 LLC ("NRM2") ***exists*** is far different from that entity's specific ***participation*** in conduct directly relevant to Plaintiffs' claims. *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 254 (E.D.N.Y. 2012) (finding that awareness of an entity's existence is not knowing "definitively" it

is a proper defendant). Defendants have represented to this Court that BMC was essentially a one-person ice-melt operation serving primarily Home Depot, with transactions recorded in QuickBooks. (Dkt. 115 at 4-8, 20-21). The October Production revealed newly disclosed accounts and substantial transfers through NRM2 which call that characterization into question and raise concrete questions about Defendants' infringing business activities.

Plaintiffs diligently pursued those subjects throughout discovery, establishing good cause under Rule 16(b)(4) to amend the scheduling order. The Court found that Defendants violated its production orders and ultimately compelled the October Production. (Second McFarlane Dec., Ex. 12 at 9:7-11:1; Dkt. 193, 217). Defendants delayed production for months and now argue that NRM2 should have been sued earlier. Having acted promptly upon receipt of new information, Plaintiffs have good cause to amend and join NRM2. The extent of NRM2's liability is for the merits.

## ARGUMENT IN REPLY

### A. Good cause exists under Rule 16(b)(4) because Plaintiffs diligently pursued the evidence supporting amendment.

Rule 16(b)(4) permits modification of a scheduling order for good cause, with the principal consideration being the moving party's diligence in seeing the information supporting amendment of a pleading. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243-44 (2d Cir. 2007). Good cause may be established where material facts concerning an additional party emerge through discovery after the amendment deadline. *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147-49 (S.D.N.Y. 2012); *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of New York & New Jersey*, No. 15-CV-3526, 2016 WL 6083956 at *5 (S.D.N.Y. Oct. 17, 2016)

(stating that courts "consistently" allow belated joinder on facts developed in discovery). The record here demonstrates Plaintiffs' continuing efforts to obtain financial and business records and their prompt response once those records disclosed NRM2's specific involvement in the accused ice-melt business.

#### 1. Plaintiffs' prior knowledge that NRM2 existed did not disclose any role in the accused ice-melt business.

Defendants' argument that Plaintiffs should have joined Northrock Minerals 2 LLC ("NRM2") earlier rests principally on their assertion that Plaintiffs knew of NRM2's existence before October 2026. (Opp. at 5-8, 12-14). Defendants cite Wachsler's November 2024 deposition in the prior *Northrock* Litigation, corporate formation records, and ASP's September 3, 2026 interrogatories. (Opp. at 5-6). However none of those disclosures established NRM2's actual participation in the accused infringing business.

Plaintiffs' opening memorandum referred to NRM2 as previously undisclosed, but to be clear, the relevant undisclosed subject matter was NRM2's ***financial and operational involvement in the accused business***. Plaintiffs do not dispute that NRM2's formation and existence were known. Knowledge that an entity exists does not establish knowledge of its role in conduct giving rise to a particular claim. *Port Auth.*, 2016 WL 6083956, at *6 n.4 (holding that a putative defendant's appearance "on a list, without more," does not establish a lack of diligence in failing to join it earlier, where the listing could not by itself support a viable claim). Before the October Production, Plaintiffs did not possess evidence that NRM2 had any role in the ice-melt business.

The *Northrock* Litigation underscores why Plaintiffs could not have pleaded NRM2's role earlier. That suit was brought by Moshe Wechsler ("Moshe") to collect a debt from the August 2022 asset sale, and it turned on whether Moshe breached his non-compete by remaining in the ice-melt business he had sold to Plaintiffs' predecessor, Snow Joe LLC.[1] The suit did not adjudicate infringement of the marks conveyed, did not identify which entities Wachsler used to run the accused business, and did not examine the financial transactions now at issue. Judge Rakoff's decision resolved only that Moshe's participation in Wachsler's business was not proven. The court did not determine how Wachsler's business was organized, what any entity did, or whether NRM2's transactions related to ice-melt products. NRM2's role in the accused infringement was first revealed in the October Production.

Defendants' suggestion that a simple "Northrock" search of the New Jersey public corporation registry would have revealed NRM2 again misses the point. (Opp. at 8). A search hit confirms only that the entity exists, not that it participated in the accused ice-melt business. Contrary to Defendants' contention, Plaintiffs' unanswered interrogatories served on September 3, 2026 represent an attempt to determine the relevance of NRM2 beyond the entity's existence. (Opp. at 7). Interrogatory No. 3 sought a detailed account of Barry Wachsler's relationship with the Northrock entities and the capacities in which he acted on their behalf. Defendants objected and referred principally to materials from the earlier litigation,

[1] Plaintiffs object to Defendants' characterization of the *Northrock* Litigation as related to this action. Weather Brands originally named Moshe Wechsler, Northrock Minerals LLC, and Northrock Management LLC as defendants in this action. (Dkt. 1). Their counsel demanded dismissal and threatened Rule 11 sanctions based on Judge Rakoff's decision (Dkt. 236-6). (*See* Second McFarlane Dec., Ex. 13 at 1, 4). Plaintiffs subsequently dismissed those defendants without prejudice. (Dkt. 32).

which do not answer the interrogatory. (Dkt. 229-11 at 8-9). Interrogatory No. 4 requested identification of BMC's financial accounts and records. Defendants again objected and identified only two accounts, omitting the several additional accounts and substantial transfers among them now identified in the October Production. (*Id.* at 9-10).

Plaintiffs also pursued discovery from Kizewski, Defendants' ice-melt packaging supplier, beginning with a May 26, 2026 subpoena. (Opp. at 7-8). Kizewski produced records identifying NRM2's payments for packaging services associated with the accused products on October 9, 2026. (McFarlane Decl. ¶ 22 & Ex. 8). Those documents supplied Plaintiffs, for the first time, evidence of NRM2's actual participation in commercial transactions involving the accused ice-melt business, specifically confirmed by the October Production.

Because the evidence of NRM2's role in the accused business emerged only from the October Production, Plaintiffs could not have pleaded that role earlier, and their prompt motion establishes good cause under Rule 16(b)(4).

#### 2. Plaintiffs diligently pursued financial discovery and promptly sought amendment following the October Production.

Defendants separately argue that Plaintiffs failed to act diligently because three weeks elapsed between receiving Home Depot's production and a motion to compel bank records. (Opp. at 8-9). Defendants' "unexplained delay" argument disregards Plaintiffs' earlier discovery requests, the time reasonably required to analyze the discrepancies among Defendants' financial records, and importantly, the repeated judicial intervention required to obtain relevant documents.

Plaintiffs had sought Defendants' financial records long before receiving Home Depot's production. Weather Brands first requested information concerning sales of the accused products on January 30, 2026. On May 31, 2026, ASP served document requests expressly seeking records of payments received from Home Depot and other customers, including bank statements, for the period January 2023 to the present. (Dkt. 229, ¶¶ 6-10; Dkt. 229-5). Defendants have not produced those records. The financial discovery subsequently compelled by the Court was responsive to requests that had been served months before the August Home Depot production.

The significance of those requests became more apparent as Defendants' financial representations proved materially inconsistent. Defendants represented under oath that approximately 275,000 bags of BLUE FIRE (the accused infringing product) had been sold through March 2026. Defendants' QuickBooks records (produced after a Court order) reflected substantially greater sales during an earlier period, while Home Depot's independently produced records reflected still greater sales revenue than Defendants reported. (Dkt. 229-1 at ¶¶ 100-104 & Exs. AA-BB). Those discrepancies raised substantial questions concerning the accuracy and completeness of Defendants' reported revenues and profits from the accused products.

Plaintiffs moved to compel production of the bank records on September 10, 2026, (Dkt. 188), and the Court granted that motion on September 14. (Dkt. 193). After seeking and obtaining almost three additional weeks to comply, Defendants produced bank statements on October 6 with extensive redactions obscuring account numbers, transaction counterparties, transfer information, and other important information. Plaintiffs promptly challenged those redactions, (Dkts. 212, 216), and on October 13, the Court ordered Defendants to produce the unredacted records and

additional information. (Dkts. 217). Defendants provided that production and Barry Wachsler's supporting declaration on October 14, (Dkt. 218). Plaintiffs filed this motion for leave to amend to file the TAC within a week of the October Production. The record establishes a continuous course of discovery and diligence aimed at identifying the participants in the accused business and the disposition of its revenues. The time required to obtain that information, including through repeated court orders, is no basis to find a lack of diligence. *See Kassner*, 496 F.3d at 243-44.

Defendants' objection to allegations concerning earlier historical events lacks merit. (*See* Opp. at 15). The very authority Defendants invoke confirms that leave is appropriate where, as here, the movant developed the supporting facts through discovery after the amendment deadline. *See Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507-08 (S.D.N.Y. 2013).

**B. Joinder permits adjudication of the parties participating in the same accused business.**

Because Plaintiffs have shown good cause under Rule 16(b)(4), the liberal standard of Rule 15(a)(2) governs, under which leave to amend must be "freely give[n] when justice so requires" and the party opposing amendment bears the burden of establishing a recognized ground for denial such as undue prejudice or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Amaya*, 285 F.R.D. at 253. Joinder of NRM2 follows the same liberal standard. *Soroof,* 283 F.R.D. at 146-147.

The proposed joinder of NRM2 satisfies Rule 20(a)(2), which permits claims against multiple defendants arising from the same transaction or series of transactions where common questions of law or fact exist. Fed. R. Civ. P. 20(a)(2). The Rule permits joinder even where the respective liabilities of the parties to be

joined may differ. *Lee v. HDR Glob. Trading Ltd.*, 347 F.R.D. 633, 638-639 (S.D.N.Y. 2024) (finding that Rule 20 is "designed to encourage joinder" and claims "so logically connected that . . . judicial economy and fairness dictate" they be handled in one suit). Here, NRM2's alleged participation concerns precisely the same ice-melt products, packaging supplier, business operations, and financial activities underlying the existing infringement claims. Determining the respective roles of BMC, Wachsler, and NRM2 will involve discovery from substantially overlapping sources.

The proposed TAC alleges more than common ownership. It identifies Wachsler's ownership and control of NRM2, its corporate filing describing distribution activities, financial transactions involving affiliated accounts, and NRM2's payments concerning the packaging of Defendants' accused products. (Dkt. 229-1, ¶¶ 15-17, 22, 105-107). Taken together, those allegations provide a factual basis for pleading that NRM2 participated in the accused business operations.

Defendants argue that Plaintiffs have not identified an infringing sale or particular use of the asserted marks by NRM2. (Opp. at 16-18). That objection conflates the evidence presently available with what discovery will ultimately establish about responsibility for the accused conduct. The October Production supports a reasonable inference of NRM2's participation in product-related commercial activities. Further discovery should reveal a more precise allocation of responsibilities.

Defendants' futility argument misstates the standard. An amendment is futile only if the proposed pleading would not survive a motion under Rule 12(b)(6). *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). On that inquiry the Court accepts the proposed TAC's well-pleaded allegations as true, draws all

reasonable inferences in Plaintiffs' favor, and places the burden of establishing futility on the party opposing amendment. Plaintiffs need not prove NRM2's liability now, but instead plead facts sufficient to state a plausible claim for relief. The proposed TAC's allegations, including those concerning NRM2's payments to Kizewski and financial transactions involving the accused business, satisfy that standard. *A.V.E.L.A., Inc. v. Est. of Monroe*, 34 F. Supp. 3d 311, 319 (S.D.N.Y. 2014).

The Second Circuit expressly permits allegations made on information and belief where the relevant facts are peculiarly within Defendants' possession and control, or where known facts make the inference of liability plausible. *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Both circumstances are present here. Plaintiffs have identified specific payments by NRM2 for packaging the accused products (*see* Dkt. 238-1), together with Wachsler's ownership and control of NRM2 and financial transactions involving affiliated accounts. The precise functions performed by NRM2, the authority under which it acted, and the disposition of funds are matters reflected in records that Defendants have resisted producing.

Measured against those legal standards, the proposed claims are not futile. The TAC alleges that NRM2, an entity Wachsler formed, owns, or manages, made substantial payments to Kizewski for packaging accused products during January and February 2026, and that NRM2 was involved in financial transfers tied to the accused business. Those allegations plausibly place NRM2 within the accused ice-melt operation and support an inference that NRM2 participated in commercial activities involving the accused products. Defendants' demand to identify a specific "infringing sale" by NRM2 is premature and misplaced. (Opp. at 16-18). The facts allocating responsibility among Wachsler's entities remain largely in Defendants'

hands. Any unresolved questions concerning the exact nature and scope of NRM2's activities do not eliminate the reasonable inferences arising from the transactions alleged.

Plaintiffs' allegations also support their alter-ego or single-enterprise theory. New Jersey law permits disregard of the corporate form where one entity operates as a mere instrumentality of another and that domination is used to work a fraud, injustice, or evasion of law. *See A.V.E.L.A.*, 34 F. Supp. 3d at 320 (explaining that under New York law, disregard of the corporate form requires that the owner "dominated the entities with respect to the claimed [wrong]" and that "this domination was used 'to commit a fraud or wrong' that injured" the plaintiff); *Richard A. Pulaski Const. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 472 (N.J. 2008). More discovery is required to determine whether the arrangements alleged in the TAC warrant disregard of the corporate form.

Joinder would also promote effective relief. Excluding NRM2 risks requiring a separate proceeding concerning overlapping transactions and evidence, while leaving its potential responsibility outside the present judgment. *Lee*, 347 F.R.D. at 638-639 (noting that declining joinder would be an "imprudent waste of judicial resources").

### C. Defendants have failed to establish undue prejudice, and a revised schedule under Magistrate Judge supervision will manage additional fact discovery.

Plaintiffs' request to reopen or extend discovery is governed by the six factors to be weighed under Rule 16(b)(4): (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the nonmoving party would be prejudiced; (4) the moving party's diligence; (5) the foreseeability of the need for additional discovery; and (6) the likelihood that the discovery will yield relevant evidence. *Carroll v.*

*Trump*, No. 22-cv-10016, 2023 WL 2006312, at *7 (S.D.N.Y. Feb. 15, 2023). Those factors favor modification of the discovery schedule. No trial is imminent, as summary-judgment and pretrial submissions are not due until February 12, 2027. (Dkt. 118). Plaintiffs diligently pursued the financial records throughout fact discovery, and the need for discovery into NRM2 and the additional accounts was not foreseeable before the October Production disclosed them. That discovery is likely to yield relevant evidence, bearing directly on the identity of the entities operating the accused business. Only the second factor, Defendants' opposition, points the other way, and opposition alone cannot defeat good cause where every other factor aligns and Defendants identify no cognizable prejudice, as set out below.

Plaintiffs recognize the Court's expectation at the May 14 conference that the revised discovery schedule would be final. (*See* Opp. at 4). The October Production, obtained following the Court's September and October orders, disclosed material financial information, unknown when the Court set that schedule, that are significant and deserve to be investigated.

Defendants contend that permitting amendment would "unnecessarily expand the scope of this litigation, prejudice Defendants, and further delay proceedings." (Opp. at 18). Defendants identify no specific prejudice beyond the additional discovery that would follow NRM2's joinder, however. Under Rule 15(a)(2), the relevant inquiry includes whether amendment would require Defendants to expend significant additional resources, substantially delay resolution, or otherwise impair their ability to defend the action. *Block v. First Blood Assocs.*, 988 F.2d 344, 350-51 (2d Cir. 1993). The need for additional discovery or litigation expense does not, standing alone,

establish undue prejudice. *United States v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989).

NRM2's joinder would require discovery into its participation in the same operations already at issue, including the Kizewski payments and its financial relationships with BMC and Wachsler. Much of that discovery should overlap with the financial and corporate records Plaintiffs have sought from Defendants throughout this litigation that Defendants will not produce. Defendants identify no witness whose testimony has become unavailable, no evidence lost because of the proposed amendment, and no additional claim requiring investigation of an unrelated course of conduct. *Block*, 988 F.2d at 351; *Salomon,* 960 F. Supp. 2d at 508 (confirming no undue prejudice where the same claims are asserted against a new party with added discovery alone insufficient to constitute prejudice). Defendants provide no basis to conclude that the requested discovery would impair their ability to defend the existing claims. (Opp. at 11, 16-18).

Defendants also rely on the expiration of the fact discovery deadline and the Court's prior scheduling orders. (Opp. at 11, 13-15, 18). Defendants cannot establish undue prejudice merely by invoking deadlines that expired before the evidence supporting joinder became available. *See Block*, 988 F.2d at 350-51.

Defendants suggest Plaintiffs have not tied the additional accounts to the accused business. (Opp. 10, 17). That connection was made in Plaintiffs' opening brief. (*See* Dkt. 228 at 8-9, 19-20). Plaintiffs seek additional discovery to reconcile Defendants' conflicting sales figures and trace the revenues of the accused ice-melt business. This is critical information directly relevant to the accounting of profits under 15 U.S.C. § 1117(a). Wachsler's certification for example shows that neither

disclosed account could have received Home Depot's payments during the nine-month gap between the closing of the Citibank account and the opening of the Flagstar account, and the accounts through which Defendants received ice-melt revenue in that period remains unknown. (Dkt. 218). That Plaintiffs cannot yet trace each transfer is a product of Defendants' redactions and their continued failure to produce the additional accounts' records, not an absence of relevance.

The Court can address the scope and timing of further discovery through a scheduling conference and a revised scheduling order. Plaintiffs have also requested referral to Magistrate Judge Cave for active supervision of outstanding discovery, including prompt resolution of disputes and firm compliance deadlines. (*See* Dkt. 237). This procedure would permit the necessary discovery concerning NRM2 and the accused business while allowing the Court to control its scope and duration.

Defendants have identified no undue prejudice sufficient to overcome the grounds for amendment. Plaintiffs respectfully request leave to file the TAC and a revised discovery schedule established following a scheduling conference, with Magistrate Judge Cave supervising the remaining discovery.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to file the proposed TAC, modify the discovery schedule to permit necessary discovery concerning the accused ice-melt business and NRM2's participation, and refer the remaining discovery to Magistrate Judge Cave for supervision.

Dated: New York, New York
November 4, 2026

Respectfully submitted,

PRACTUS LLP

*/s/ Matthew B. McFarlane*

Matthew B. McFarlane, Esq.
1014 W. 36th Street, Suite 103
Baltimore, MD 21211
(410) 657-8633
matthew.mcfarlane@practus.com

*Attorneys for Intervenor-Plaintiff and Counterclaim-Defendant All Season Power LLC*

*/s/ Christopher A. Colvin*

Christopher A. Colvin, Esq.
543 E. 17th Street
Brooklyn, NY 11226
(212) 619-5378
chris.colvin@practus.com

*Attorneys for Plaintiff and Counterclaim-Defendant Weather Brands LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this memorandum complies with the applicable word limit. Excluding the caption, signature block, and this certificate, this memorandum contains approximately 3,492 words, as counted by the word-processing software used to prepare it, which does not exceed the 3,500-word limit for a memorandum in support of a motion.

*/s/ Matthew B. McFarlane*
Matthew B. McFarlane